# EXHIBIT "A"

OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF NEW YORK
REAL ESTATE FINANCE BUREAU

-----------------------------------------------------------------------X

In the Matter of the

Investigation by ERIC T. SCHNEIDERMAN,
Attorney General of the State of New York, of                    AOD No. 17-158

SHIROKIA DEVELOPMENT, LLC; SHIROKIA MEZZ
I, LLC; and Hong Qin Jiang;

                                Respondents.

-----------------------------------------------------------------------X

## ASSURANCE OF DISCONTINUANCE

The Office of the Attorney General of the State of New York ("OAG") commenced an

investigation pursuant to New York Executive Law ("Executive Law") § 63(12) and the Martin

Act, New York General Business Law ("G.B.L.") § 352–*et seq.*, regarding Respondents'

violations of the N.Y. Real Property Tax Law § 421-a, New York City Administrative Code

§ 26-501–*et seq.* (the Rent Stabilization Law) and New York Codes, Rules and Regulations, title

9, § 2520.1–*et seq.* (the Rent Stabilization Code). This Assurance of Discontinuance

("Assurance") contains the findings of the OAG's investigation and the relief agreed to by OAG

and Hong Qin Jiang, individually, and Shirokia Development, LLC and Shirokia Mezz I, LLC,

whether acting through its respective directors, officers, employees, representatives, agents,

affiliates, or subsidiaries (collectively, the "Parties").

## OAG's FINDINGS

**I.    The Parties**

    1.    Respondent Shirokia Development LLC is a New York limited liability company,

with a principal place of business at 142-32 38th Avenue, in Flushing, NY, 11354 that has acted

as sponsor of a real estate offering of newly-constructed condominium units at 142-32 38th Avenue, in Flushing, Queens, NY, under G.B.L. § 352-e and 13 N.Y.C.R.R. Part 20, which govern the offer of newly-constructed, vacant or non-residential condominiums to the public.

2.    Respondent Shirokia Mezz I LLC is a New York limited liability company that is the sole member of Respondent Shirokia Development LLC.

3.    Respondent Hong Qin Jiang is an individual and the sole principal member of Shirokia Mezz I LLC, which is the sole principal member of Shirokia Development LLC.

II.    Facts

4.    On August 21, 2007, Respondent Shirokia Development LLC ("Shirokia Development"), under the control of its then principals, which included Hong Qin Jiang, submitted to OAG an offering plan for a newly-constructed condominium containing twenty-three (23) residential units and four (4) commercial units at 142-28 38th Avenue in Flushing, NY (the "142-32 38th Avenue Property") to be named the Shirokia Tower Condominium (the "Shirokia Tower Plan").

5.    Shirokia Development applied for and was eventually approved for a N.Y. Real Property Tax Law ("Real Prop. Tax Law") § 421- exemption through the New York City Department of Housing Preservation & Development ("HPD").

6.    Pursuant to Real Prop. Tax Law" § 421-a, and upon application, certain newly-constructed multiple dwellings in the City of New York are eligible for a partial exemption from local property taxes.  See Real Prop. Tax Law § 421-a(2)(a)(i).

7.    Units in properties receiving a tax exemption under the § 421-a program are subject to local rent stabilization laws, unless the units are exempt from those laws due to ownership as a cooperative or condominium.  See Real Prop. Tax Law § 421(a)(2)(f).

8.     In New York City, the applicable local rent stabilization laws are the Rent Stabilization Law (the "RSL," codified at New York City Administrative Code § 26-501–*et seq.*) and the Rent Stabilization Code (the "RSC," codified at 9 N.Y.C.R.R. § 2520.1–*et seq.*).

9.     The RSL and the RSC provide that dwellings "owned as" cooperatives or condominiums are exempt from rent stabilization. *See* New York City Administrative Code ("N.Y.C. Admin. Code") § 26-504(a); 9 N.Y.C.R.R. § 2520.11(l).

10.     HPD is the local agency administering eligibility for tax exemptions under the § 421-a program and it has promulgated eligibility rules for the tax exemption. *See* 28 Rules of the City of New York ("RCNY") § 6-01–*et seq.*

11.     The HPD rules require that units receiving the tax exemption be subject to rent regulation and be registered with the New York State Department of Housing and Community Renewal ("DHCR"), unless the unit is exempt from regulation due to "condominium or cooperative status." *Id.* at § 6-02(g)(2) and (3).

12.     The Shirokia Tower Plan publically disclosed that the property was applying for an exemption of certain property taxes under Real Prop. Tax Law § 421-a. To qualify for the exemption, Shirokia Development had to complete a number of regulatory requirements and filings with DHCR and HPD. Discussed below, Shirokia Development indicated in its regulatory filings that it would operate as a condominium.

13.     During the building's construction in 2006, Shirokia Development and its principals submitted to HPD an application for a Preliminary Certificate of Eligibility ("PCE") for the § 421-a tax exemption for its property, which was assigned HPD docket number TEO6785.

14.    Respondents represented in its PCE application, inter alia, that it was authorized to make the application that the property was to be owned as a condominium.

15.    The Shirokia Tower Plan was accepted for submission by the OAG on August 21, 2007 and was given file number CD07-0534.

16.    In the Shirokia Tower Plan, Respondent Shirokia Development LLC represented that the property at 142-28 38th Avenue was vacant.

17.    The Shirokia Tower Plan was accepted for filing on August 22, 2008, thereby permitting the Respondents to offer for sale vacant units pursuant to the Plan.

18.    Respondent Shirokia Development entered into three contracts with one individual for the sale of three condominium units in the Shirokia Tower Condominium and was therefore able to declare the Shirokia Tower Plan effective, which it did on March 30, 2009.

19.    However, the contracts of sale for the three units never closed and Shirokia Tower Condominium ultimately failed to transfer title of a unit to at least one bona fide purchaser under the Shirokia Tower Plan. As such, under 13 N.Y.C.R.R. § 20.1(c)(6), the Shirokia Tower Plan was not "consummated," which means it was not a "condominium" as that term is defined by law.

20.    Despite the Shirokia Tower Condominium not being a legal condominium, Respondents filed a declaration of Condominium with the Department of Finance, who issued tax lots for the twenty-three (23) residential units and the four (4) commercial units. As discussed below, Respondents rented the residential units thereby causing them to become rent stabilized. At that point, Respondents should have terminated the declaration and merged the individual tax lots back into a single tax lot.

21.     On January 8, 2009, Shirokia Development received its permanent certificate of occupancy from the NYC Department of Buildings.

22.     On August 6, 2010, HPD granted the PCE. The PCE stated that upon issuance of a Final Certificate of Eligibility ("FCE"), the project would be entitled to an exemption from property taxes for 15 years.

23.     On August 11, 2010, HPD issued to Respondents the FCE. Under its rules, HPD required that Shirokia Development declare the condominium effective within fifteen (15) months after receiving its FCE, otherwise all units must be registered with HCR. Here, Shirokia Development never closed on any condominium sales and had the purchase agreements rescinded. Accordingly, Shirokia Development should have registered the rents with HCR.

24.     Instead of selling units, starting on March 1, 2009, Respondent Shirokia Development began renting units at the 142-28 38th Avenue property. All told, at least twenty (20) units were leased in the period from March 2009 until the Spring of 2011.

25.     In violation of the RSL, the RSC, and Real Property Tax § 421-a, Respondents failed to have these rents approved by HPD, and failed to register any of the rented units with DHCR as rent-stabilized.

26.     At some point during this time-frame, Respondent Shirokia Development was unable to meet its loan obligations and was sued in a state court foreclosure action.

27.     As a result, from April 1, 2011 until April 1, 2015, the 142-28 38th Avenue property was in the possession and control of a state court-appointed receiver, Craig Zim, Esq.

28.     While the 142-28 38th Avenue property was in receivership, many of the tenants either moved out on their own volition or were evicted by the receiver in housing court proceedings. The receiver also entered into some new leases with tenants.

29.     Shirokia Development eventually sought protection from its creditors in

bankruptcy court and reorganized under Chapter 11 of the Bankruptcy Code. *See In re Shirokia*

*Development, LLC*, No. 14-44373-nhl (E.D.N.Y. Bank.).

30.     Following the Bankruptcy Court's approval of its restructuring under Chapter 11

on March 18, 2015, Shirokia Development once again obtained control of the 142-28 38th

Avenue property on or about April 1, 2015.

31.     A few weeks later, on June 2, 2015, Shirokia Development filed an amendment

(the "Fourth Amendment") to the offering plan with the OAG in order to, once again, offer for

sale to the public condominium units. The Fourth Amendment represented that the building was,

at the time of filing, vacant.

32.     By letter dated September 15, 2015, the OAG advised Respondents that it had

made a preliminary determination that Respondents were in violation of the rent registration

requirements of Real Prop. Tax Law § 421-a (the "OAG's Letter") and accordingly rejected for

filing its pending Fourth Amendment to the offering plan.

33.     On November 24, 2015, Respondents and the OAG resolved the foregoing

through Assurance of Discontinuance ("AOD") No. 15-241, which, among other things,

permitted Respondents to file a new offering plan under Part 20 of the OAG's regulations so

long as the building remained vacant. Further, if Respondents rented apartments other than to

interim lessee purchasers, all apartments were to be registered with DHCR as rent-stabilized and

all tenants were to be given rent-stabilized leases. Moreover, Respondents agreed that if they

rented apartments, they would comply in the entirety with the Rent Stabilization Law, Rent

Stabilization Code and other applicable rent regulations and would not take any action to remove

or cause to be removed any tenant from the building by eviction or other means unless such

action complied with 9 NYCRR Part 2524. *See* AOD No. 15-241, annexed herewith as Exhibit A.

34. The AOD provided that any violation of the AOD would be *prima facie* evidence that Respondents had violated the underlying statutes and regulations, including but not limited to Real Prop. Tax Law § 421-a .

35. On or about March 17, 2016, Respondents' new lenders commenced a foreclosure proceeding in state court as a result of an alleged mortgage payment default. *See W Financial Fund v. Shirokia Dev. LLC, et al.*, Index No. 703179/2016 (Sup. Ct. Queens Cnty.).

36. On or about May 4, 2016, the OAG received a complaint that Respondents had been marketing units in the condominium. Such activity would be a violation of the Martin Act and a breach of AOD No. 15-241. As a result, the OAG opened an investigation into Respondents to determine whether Respondents had breached AOD No. 15-241 or violated the Martin Act, the N.Y. Real Property Tax Law § 421-a, New York City Administrative Code § 26-501–*et seq,* the Rent Stabilization Law or Rent Stabilization Code. .

37. On June 13, 2016, Shirokia Development, LLC submitted a new Part 20 offering Plan to the OAG pursuant to the terms of AOD No. 15-241. OAG issued to Respondents two rounds of deficiency comments concerning the plan, most recently on December 7, 2016. Respondents' counsel, Anthony Colombini, Esq., responded to some of the deficiency comments but had requested a 30 day extension on January 4, 2017. To date, no further communication by Mr. Colombini has occurred and this plan has neither been accepted for filing nor rejected by the OAG.

38. The OAG's investigation revealed evidence that Respondents violated AOD No 15-241 by filing an offering plan with the OAG despite not keeping the building vacant of

tenants. Moreover, the OAG's investigation revealed evidence that Respondents had violated AOD No 15-241 by having had tenants in occupancy (pursuant to written and oral leases) at the 142-28 38th Avenue property without complying with the Rent Stabilization Law and Rent Stabilization Code, including, but not limited to, failing to provide rent stabilized leases to the tenants; failing to register the legal regulated rents with HCR; failing to charge the legal regulated rents to the tenants; and evicting or otherwise removing tenants without complying with 9 NYCCR Part 2524. Respondents have also never calculated the rents with HPD.

39.    On August 17, 2016, Respondent Shirokia Mezz I LLC filed for Chapter 11 protection under the U.S. Bankruptcy Code to avoid an imminent foreclosure on its shares by its lender, 38th Avenue Mezz LLC, based upon an alleged default in mortgage payment(s) from Shirokia Development LLC to its mortgage lender W Financial Fund L.P. Several months later on December 9, 2016, Shirokia Development, LLC also filed for Chapter 11 protection under the U.S. Bankruptcy Code. The two matters are now consolidated and the proceedings are pending. *See In re Shirokia Development, LLC, et al,* No. 16-45568-nhl (E.D.N.Y. Bank.) ("Chapter 11 Bankruptcy Case").

40.    On June 6, 2017, OAG filed a Proof of Claim in the current Chapter 11 Bankruptcy Case for $910,750.00 representing the sum total of the real estate tax abatements improperly received by Respondents on the 23 residential units of the 142-28 38th Avenue property from 2012 to 2016. On July 25, 2017, Shirokia Development filed a motion objecting to the AOG's claim with a hearing scheduled on September 7, 2017 (the "Claim Objection Motion").

41.    As part of their Chapter 11 Bankruptcy Case, Respondents submitted a plan of Reorganization (the "Plan") in the chapter 11 case which allowed them to sell the 142-28 38th

Avenue property to SH 168, LLC in a private bankruptcy sale for $25,000,000.00 (the "Private Sale") by August 18, 2017. In the event of a private sale, the Plan provided that the proceeds of the sale would pay creditors in full. In the event the private sale did not close on or before August 18, 2017, the Plan provided that the property would be sold at a bankruptcy auction, with the proceeds, whatever they were, to be paid to creditors in order of priority. The Respondents represented at the hearing that they did not have sufficient funds to escrow a reserve for the entire amount of the AOG's disputed claim. The AOG and Respondents agreed to a reduced reserve in the amount of $150,000 which was subsequently deposited into escrow with bankruptcy counsel for Shirokia Development and Shirokia Mezz (the "$150,000 Escrow"), pending later resolution or adjudication of the AOG's claim

42.    Respondent Debtors also funded $150,000 Escrow that was placed into escrow to be paid to the OAG upon determination of its claim. The escrow payment was not in full satisfaction of OAG's claim and the OAG was still entitled to full payment of its claim upon determination of its amount and validity.

43.    In the course of settling OAG's claims through this Assurance, Respondent Jiang represented to the OAG that, other than the $150,000 Escrow, she did not have sufficient assets to satisfy the OAG's claims.

44.    Respondent Jiang also represented to the OAG that she would not financially benefit from the sale of the 142-28 38th Avenue property or otherwise be provided with any proceeds or value now or in the future from the sale of the property.

45.    OAG explicitly relied upon the representations by Respondent Jiang in paragraphs 43 and 44 above when it agreed to enter into this Assurance.

46.    OAG finds that Respondents' foregoing actions and omissions are in violation of Executive Law § 63(12), the Martin Act, N.Y. Real Property Tax Law § 421-a, the Rent Stabilization Law, and the Rent Stabilization Code.

47.    Respondents admit to the OAG findings above and that their actions violated the statutory provisions cited above.

48.    The OAG finds the relief and agreements contained in this Assurance are appropriate and in the public interest.

THEREFORE, the OAG is willing to accept this Assurance pursuant to Executive Law § 63(15), in lieu of commencing a statutory proceeding for violations of Executive Law § 63(12), the Martin Act, N.Y. Real Property Tax Law § 421-a, the Rent Stabilization Law, and the Rent Stabilization Code based on the conduct described above during January 8, 2009 through June 6, 2017.

IT IS HEREBY UNDERSTOOD AND AGREED, by and between the Parties:

**RELIEF**

49.     In consideration of the making and execution of this Assurance, Respondents and its principals agree to be permanently restrained and enjoined, commencing on the date this Assurance is accepted and counter-signed by the OAG, from engaging in any securities-related business or activity, directly or indirectly, as principal, broker or agent, or otherwise including, but not limited to: marketing, selling or offering for sale to the public within the State, directly or indirectly, any securities constituting participation interests or investments in real estate, including, but not limited to syndications and cooperative interests in realty, as governed by N.Y. G.B.L § 352-e-*et seq.*, issued or to be issued. Respondents shall not conceal or in any way obscure their identity, role, investment in, or ownership interest in connection with any securities constituting participation interests or investments in real estate, including, but not limited to syndications and cooperative interests in realty.

50.     Respondents shall not engage, or attempt to engage, in violations of any applicable laws, including but not limited to Article 23-A of the New York General Business Law, Executive Law, or any other law, regulation or rule relating to the public offer of securities constituting participation interests or investments in real estate, including, but not limited to syndications and cooperative interests in realty, in or from the State of New York and agree to not violate any provision of the Rent Stabilization Laws and Rent Stabilization Code, and expressly agrees and acknowledges that any such conduct is a violation of the Assurance, and that the OAG thereafter may commence the civil action or proceeding contemplated in paragraph 38, *supra*, in addition to any other appropriate investigation, action, or proceeding.

51.     Respondents agree that the Part 20 offering plan submitted for filing on June 13,

2016 (Plan ID CD 16-0185) is deemed withdrawn. Respondents also agree to submit an

application to the OAG to abandon the Part 20 offering plan submitted for filing August 21, 2007

(Plan ID CD 07-0534) within thirty (30) days of the date of this Assurance and to make all

reasonable efforts to effectuate the abandonment of the offering plan.

52.     Respondents shall retain all records relating to its obligations hereunder until at

least December 31, 2022.  During that time, Respondents shall, upon thirty (30) days written

notice from the OAG, provide all documentation and information necessary for OAG to verify

and implement compliance with this Assurance, including any representations made therein.

     a.   Respondent expressly agrees and acknowledges that a default in the performance

of any obligation under the above paragraph is a violation of the Assurance, and

that the OAG thereafter may commence the civil action or proceeding

contemplated in paragraph 38, *supra*, in addition to any other appropriate

investigation, action, or proceeding, and that evidence that the Assurance has been

violated shall constitute prima facie proof of the statutory violations described in

paragraph 38, pursuant to Executive Law § 63(15).

53.     Respondents Shirokia Development, LLC and Shirokia Mezz I, LLC shall make a cash payment of $150,000.00 by official bank check, payable to the New York City Department of Finance (the "City"), or such other entity as may be designated in writing by the City, acting through HPD, as partial restitution (the "Restitution Funds") for the property tax exemption Respondents received under Section 421-a during the period of time that they were out of lawful compliance with that law at the 142-28 38th Avenue property. The City, acting by and through HPD, shall use the Restitution Funds to finance projects for "persons of low income" and "families of low income," as defined in N.Y. Private Housing Finance Law § 2(19). Payment of the amount in this paragraph shall be made within 5 days of signing of this Assurance.

54.     In the event that the Private Sale closes and Respondents do not default on any other terms of the plan in the Chapter 11 Bankruptcy Case, Respondent Hong Qin Jiang shall make a cash payment of $200,000.00 in satisfaction of OAG's claim in the following manner:

   a.   Twelve (12) monthly installment payments of $5,000, due no later than the fifth (5th) day of each month, commencing September 2017; and

   b.   A payment of $140,000 on September 1, 2018, being the end of the twelve (12) month period.

    c. Each payment shall be by official bank check, payable to the New York City

Department of Finance (the "City"), or such other entity as may be designated in

writing by the City, acting through HPD, as partial restitution (the "Restitution

Funds") for the property tax exemption Respondents received under Section 421-a

during the period of time that they were out of lawful compliance with that law at

the 142-28 38th Avenue property  The City, acting by and through HPD, shall

use the Restitution Funds to finance projects for "persons of low income" and

"families of low income," as defined in N.Y. Private Housing Finance Law

§ 2(19).

    d. Time is of the essence for each payment and no default shall be deemed de

minimus.

    e. In the event the payments set forth in paragraphs 53 and 54 are made, they will be

accepted by the OAG in full satisfaction of all N.Y. Real Property Tax Law

§ 421-a monetary claims against the Respondents.

    55.    In the event that the Private Sale fails to close or for any other reason the 142-28

38th Avenue property is sold at a bankruptcy auction as directed under the Plan, OAG shall be

deemed to have an Allowed Claim in the chapter 11 case in the amount of $910,750 net any

payments previously remitted to OAG under this Assurance.

    56.    Respondent Hong Qin Jiang shall personally execute and deliver, at the time of

the execution and delivery of this Assurance, the accompanying Affidavit for Judgment by

Confession (attached hereto as Exhibit B), confessing judgment for the amount of $400,000.00,

which will be held in escrow by the OAG.

    a. In the event of a Private Sale and Respondent Hong Qin Jiang defaults on any payments specified in the preceding paragraph 54, OAG after service of a 10 day notice of default and opportunity to cure shall have the right to immediately file the Confession of Judgment held in escrow in order to obtain a judgment against Respondent Jiang and collect upon any and all unpaid amounts from paragraph 55.

    b. In the event of a bankruptcy auction and the proceeds of Debtors' estate paid to OAG specified in the preceding paragraph 53 shall be less than $400,000, OAG shall have the right to immediately file the Confession of Judgment held in escrow in order to obtain a judgment against Respondent Jiang and collect upon the judgment of $400,000 minus any monies distributed to the OAG from the Debtor's estate.

57.    All payments discussed in this Assurance shall be delivered to the attention of AAG Nicholas Minella, State of New York, Office of the Attorney General, Real Estate Finance Bureau, 120 Broadway, 23rd Floor, New York, NY 10271 and shall reference Assurance No. 17-158.

58.    Respondents agree to withdraw the Claim Objection Motion within ten (10) business days from the date of this Assurance. Respondents further agree that the OAG's claim in the Chapter 11 Bankruptcy Case is valid and collectable as detailed in this Assurance.

59.    In the event that the Chapter 11 Bankruptcy Case is withdrawn, dismissed or otherwise not completed, the OAG, at its sole discretion, may void this Assurance upon five (5) days written notice to Respondents' counsel.

60. Pursuant to N.Y. C.P.L.R. § 8303(a)(6), Respondents shall pay to the State of New York a statutory penalty of $2,000.00 for each and every default in the performance of any obligation under this Assurance occurring after the effective date of the Assurance.

61. Respondent expressly agrees and acknowledges that a default in the performance of any non-monetary obligation of this Assurance is a prima facie breach of the Assurance, and that the OAG thereafter may commence the civil action or proceeding contemplated in paragraph 38, *supra*, in addition to any other appropriate investigation, action, or proceeding, and that evidence that the Assurance has been violated shall constitute prima facie proof of the statutory violations described in paragraph 46, pursuant to Executive Law § 63(15).

### MISCELLANEOUS

62. In any subsequent investigation, civil action, or proceeding by the OAG to enforce this Assurance, for violations of the Assurance, or if the Assurance is voided pursuant to paragraph 55, Respondents expressly agree and acknowledge:

   a. that any statute of limitations or other time-related defenses are tolled from and after the effective date of this Assurance;

   b. that the OAG may use statements, documents or other materials produced or provided by the Respondent prior to or after the effective date of this Assurance;

   c. that any civil action or proceeding must be adjudicated by the courts of the State of New York, and that Respondent irrevocably and unconditionally waives any objection based upon personal jurisdiction, inconvenient forum, or venue.

63. If a court of competent jurisdiction determines that Respondents have violated the Assurance, Respondents shall pay to OAG the reasonable costs, if any, of obtaining such

determination and of enforcing this Assurance, including without limitation legal fees, expenses, and court costs.

64.    This Assurance is not intended for use by any third party in any other proceeding.

65.    All terms and conditions of this Assurance shall continue in full force and effect on any successor, assignee, or transferee of Respondents. Respondents shall cause this Assurance to be adopted in any such transfer agreement. No party may assign, delegate, or otherwise transfer any of its rights or obligations under this Assurance without the prior written consent of OAG.

66.    Nothing contained herein shall be construed as to deprive any person of any private right under the law.

67.    Any failure by the Attorney General to insist upon the strict performance by Respondent of any of the provisions of this Assurance shall not be deemed a waiver of any of the provisions hereof, and the Attorney General, notwithstanding that failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Assurance to be performed by the Respondent.

68.    All notices, reports, requests, and other communications pursuant to this Assurance must reference Assurance No. 17-158, and shall be in writing and shall, unless expressly provided otherwise herein, be given by hand delivery; express courier; or electronic mail at an address designated in writing by the recipient, followed by postage prepaid mail, and shall be addressed as follows:

>    *If to any or all of the Respondents:*
>
>    William Kaplan, Esq.
>    Fox Horan & Camerini LLP
>    825 Third Avenue, 12th Floor

New York, New York 10022
(212) 480-4800

*If to the OAG:*

Bureau Chief
Real Estate Finance Bureau
Office of the Attorney General
120 Broadway, 23rd Floor
New York, New York 10271
(212) 416-8100

69.     The OAG has agreed to the terms of this Assurance based on, among other things, the representations made to OAG by Respondents and their counsel and OAG's own factual investigation as set forth in Findings, paragraphs 1-44 above. Respondents represent and warrant that neither it nor its counsel has made any material representations to the OAG that are inaccurate or misleading. If any material representations by Respondents or their counsel are later found to be inaccurate or misleading, this Assurance is voidable by the OAG in its sole discretion.

70.     No representation, inducement, promise, understanding, condition, or warranty not set forth in this Assurance has been made to or relied upon by the Respondents in agreeing to this Assurance.

71.     The Respondents represent and warrant, through their signatures below, that the terms and conditions of this Assurance are duly approved, and execution of this Assurance is duly authorized.

### General Principles

72.     Unless a term limit for compliance is otherwise specified within this Assurance, the Respondents' obligations under this Assurance are enduring. Nothing in this Agreement

shall relieve Respondents of other obligations imposed by any applicable state or federal law or regulation or other applicable law.

73.    Nothing contained herein shall be construed to limit the remedies available to the OAG in the event that the Respondents violate the Assurance after its effective date.

74.    This Assurance may not be amended except by an instrument in writing signed on behalf of the Parties to this Assurance.

75.    In the event that any one or more of the provisions contained in this Assurance shall for any reason be held by a Justice of the New York Supreme Court to be invalid, illegal, or unenforceable in any respect, in the sole discretion of the OAG, such invalidity, illegality, or unenforceability shall not affect any other provision of this Assurance.

76.    Respondents acknowledge that they have entered this Assurance freely and voluntarily and upon due deliberation with the advice of counsel.

77.    Respondents acknowledge that they have fully read and understood the contents of this Assurance and have had the opportunity to have its contents translated into the language of their native fluency in order to so comprehend its duties and obligations. An affidavit of translation is attached to the Assurance, as Exhibit C.

78.    This Assurance shall be governed by the laws of the State of New York without regard to any conflict of laws principles.

79.    The Assurance and all its terms shall be construed as if mutually drafted with no presumption of any type against any party that may be found to have been the drafter.

80.    This Assurance may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same agreement.

81.    Electronic and photocopied signatures shall be accepted and considered original.

82.    The effective date of this Assurance shall be as of the date that the OAG accepts it

and executes.

Accepted:  New York, New York
           August 21, 2017

                              **ERIC T. SCHNEIDERMAN**
                              Attorney General of the
                              State of New York

                              By: _____
                                  Nicholas A Minella
                                  Assistant Attorney General
                                  Real Estate Finance Bureau

HONG QIN JIANG

_____
Hong Qin Jiang

STATE OF _New York_ )
                                      )   ss.:
COUNTY OF _Queens_ )

On this _21_ day of August, 2017, Hong Qin Jiang, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, appeared before the undersigned and acknowledged to me that he/she executed the within instrument by his/her signature on the instrument.

Sworn to before me this
_21st_ day of _August_, 2017

_____
NOTARY PUBLIC

KEVIN TUNG
Notary Public, State of New York
No. 02TU6029766
Qualified in Queens County
Commission Expires on _3/30/2022_

<u>SHIROKIA DEVELOPMENT, LLC</u>

By: _____

Hong Qin Jiang
Authorized Signatory

STATE OF __New York__ )
                                          )     ss.:
COUNTY OF __Queens__ )
                          st

On this __21__ day of August, 2017, Hong Qin Jiang, known personally to me to be the Authorized Signatory of Shirokia Development, LLC, appeared before the undersigned and acknowledged to me that he/she, as such officer and being authorized so to do, executed the within instrument for the purposes therein set forth, on behalf of the RESPONDENT Shirokia Development, LLC, by his/her signature on the instrument as such officer.

Sworn to before me this

__21__ st day of __August__, 2017            _____

NOTARY PUBLIC

KEVIN TUNG
Notary Public, State of New York
No. 02TU6029766
Qualified in Queens County
Commission Expires on  8/30/2022

SHIROKIA MEZZ I, LLC

By: _____

Hong Qin Jiang
Authorized Signatory

STATE OF _New York_ )
                                        )    ss.:
COUNTY OF _Queens_ )

On this _21st_ day of August, 2017, Hong Qin Jiang, known personally to me to be the
Authorized Signatory of Shirokia Mezz I, LLC, appeared before the undersigned and
acknowledged to me that he/she, as such officer and being authorized so to do, executed the
within instrument for the purposes therein set forth, on behalf of the RESPONDENT Shirokia
Mezz I, LLC, by his/her signature on the instrument as such officer.

Sworn to before me this

_21st_ day of _August_, 2017

_____
NOTARY PUBLIC

KEVIN TUNG
Notary Public, State of New York
No. 02TU6029766
Qualified in Queens County
Commission Expires on _8/30/2022_

# Exhibit A

OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF NEW YORK
REAL ESTATE FINANCE BUREAU
------------------------------------------------------------------------X

In the Matter of the

Investigation by ERIC T. SCHNEIDERMAN,
Attorney General of the State of New York, of                    AOD No. 15-241

SHIROKIA DEVELOPMENT, LLC; Xi Liang Liu; Hong
Qin Jiang;

                                    Respondents.
------------------------------------------------------------------------X

### ASSURANCE OF DISCONTINUANCE

Pursuant to New York Executive Law ("Executive Law") § 63(12) and the Martin Act,

New York General Business Law ("G.B.L.") § 352 *et seq.*, ERIC T. SCHNEIDERMAN,

Attorney General of the State of New York (the "NYAG") has investigated the conduct of

Shirokia Development, LLC, Xi Liang Liu, Hong Qin Jiang, and Wing Fung Chau (together

"Respondents") in connection with their obligations under the Martin Act and receipt of certain

tax benefits.

This Assurance of Discontinuance ("Assurance") contains the findings of the NYAG's

investigation and the relief agreed to by the NYAG and the Respondents.

### FINDINGS

**I.     The Respondents**

1.      Respondent Shirokia Development LLC is a New York limited liability company,

with a principal place of business at 142-32 38th Avenue, Flushing, NY, that has acted as

sponsor of a real estate offering of newly-constructed condominium units at 142-32 38th

Avenue, in Flushing, Queens, NY, under G.B.L. § 352-e and 13 N.Y.C.R.R. Part 20, which govern the offer of newly-constructed, vacant or non-residential condominiums to the public.

2.   The condominium at 142-32 38th Avenue is referred to by the name Shirokia Tower Condominium.

3.   Respondent Xi Liang Liu is an individual and managing member of Shirokia Development LLC.

4.   Respondent Hong Qin Jiang is an individual and a member of Shirokia Development LLC.

~~5.   Respondent Wing Fung Chau is an individual and a member of Shirokia Development LLC.~~  *EFB*

## II.   Marketing and Selling Newly-Constructed, Vacant of Non-Residential Condominiums under the Martin Act

6.   A sponsor of a condominium offering in the State of New York is required to file with the NYAG an offering plan that must disclose the detailed terms of the transaction to prospective purchasers.  *See* G.B.L. § 352-e(1)(b).

7.   Pursuant to the Martin Act, and in accordance with the regulations that govern the public offering of newly constructed, vacant or non-residential condominiums (the "Part 20 Regulations"), no offer or sale of real estate securities shall be made until an offering plan is filed with the NYAG.  *See* G.B.L. § 352-e(5); 13 N.Y.C.R.R. § 20.2(e).

8.   A sponsor may market for sale units once the offering plan is accepted for filing by the NYAG under the Part 20 Regulations, but it may not close the sale of any units until the offering plan is declared effective.  *See* 13 N.Y.C.R.R. § 20.2(e).

9.      Pursuant to the Part 20 Regulations, prior to declaring an offering plan effective, bona fide purchasers must have signed purchase agreements for at least 15% of the units in the building. *Id.* at § 20.3(q)(3).

10.     Pursuant to the Part 20 Regulations, following a declaration of effectiveness by the sponsor and the acceptance of the amendment by the NYAG either confirming or declaring that the offering plan has been declared effective, an offering plan is consummated when the declaration of condominium is recorded and transfer of title of a condominium unit to at least one purchaser under the offering plan occurs. *See* 13 N.Y.C.R.R. § 20.1(c)(6).

11.     Under the Part 20 Regulations, the sponsor is required to amend its offering plan within forty-five (45) days following the closing of the first unit to disclose, to the extent available: (i) the date and place of the title closing for the first unit; (ii) the date of issuance of the temporary or permanent certificate of occupancy; (iii) the date of filing of the declaration of condominium and the date separate real estate tax assessments were made; (iv) if applicable, the amount of any reserve fund or working capital fund accounts; (v) a list of all the unsold units held by sponsor; (vi) the names of the members of the board of managers and their relationship to the sponsor; and (vii) the date of the first meeting of the unit owners (the "Post-Closing Amendment"). *See Id.* at § 20.5(f).

III.    **Martin Act Protections for Tenants in Occupancy**

12.     G.B.L. § 352-eeee and its governing regulations apply to conversions of residential rental buildings to condominium ownership in the City of New York.

13.     G.B.L. § 352-eeee and 13 N.Y.C.R.R. Part 23 mandate that certain rights and protections be provided to residential tenants in occupancy in buildings upon conversion to

condominium ownership. These protections include: (i) prohibitions on certain types of evictions; (ii) limitations on unconscionable rent increases; (iii) prohibitions on tenant harassment; (iv) special protections for tenants who are senior citizens or are disabled; and (v) special rights to purchase under the conversion offering plan. *See* G.B.L § 352-eeee, *et seq.* 13 N.Y.C.R.R. § 23.3, *et seq.*

## IV.    Respondents' Legal Obligations under Section 421-a of the Real Property Tax Law

14.    Pursuant to N.Y. Real Property Tax Law ("Real Prop. Tax Law") § 421-a, and upon application, certain newly-constructed multiple dwellings in the City of New York are eligible for a partial exemption from local property taxes. *See* Real Prop. Tax Law § 421-a(2)(a)(i).

15.    Units in properties receiving a tax exemption under the § 421-a program are subject to local rent stabilization laws, unless the units are exempt from those laws due to ownership as a cooperative or condominium. *See* Real Prop. Tax Law § 421(a)(2)(f).

16.    In New York City, the applicable local rent stabilization laws are the Rent Stabilization Law (the "RSL," codified at New York City Administrative Code § 26-501 *et seq.*) and the Rent Stabilization Code (the "RSC," codified at 9 N.Y.C.R.R. § 2520.1 *et seq.*).

17.    The RSL and the RSC provide that dwellings "owned as" cooperatives or condominiums are exempt from rent stabilization. *See* New York City Administrative Code ("N.Y.C. Admin. Code") § 26-504(a); 9 N.Y.C.R.R. § 2520.11(l).

18.    The New York City Department of Housing Preservation & Development ("HPD") is the local agency administering eligibility for tax exemptions under the § 421-a

program and it has promulgated eligibility rules for the tax exemption. *See* 28 Rules of the City

of New York ("RCNY") § 6-01 *et seq.*

19.     The HPD rules require that units receiving the tax exemption be subject to rent

regulation and be registered with the New York State Department of Housing and Community

Renewal ("DHCR"), unless the unit is exempt from regulation due to "condominium or

cooperative status." *Id.* at § 6-02(g)(2) and (3).

## V.    The Application Process for the Section 421-a Tax Exemption

20.     The application process for a tax exemption under the § 421-a program requires a

developer to submit to HPD an application for a Preliminary Certificate of Eligibility ("PCE")

and then an application for a Final Certificate of Eligibility ("FCE"). *Id.* at § 6-02(g)(2).

21.     Upon the PCE's implementation by New York City's Department of Finance

("DOF"), the property will be exempt from real property taxation on the new assessed value

resulting from construction of the eligible multiple dwelling, but will continue to pay taxes on

the value of the land and improvements that were on the real property prior to commencement of

the new multiple dwelling's construction.

22.     The application for a PCE must be submitted after construction begins but before

either a temporary certificate of occupancy ("TCO") or a permanent certificate of occupancy

("PCO") is issued for the property by the New York City Department of Buildings. *Id.* at § 6-

05(b).

23.     The application for a PCE must contain either:

[a] statement of intention that the owner will register all rental units with [DHCR] prior
to initial occupancy and will offer initial leases of not less than two years to tenants of
such stabilized units, or such shorter term as the tenant requests,

or

a statement that the multiple dwelling is to be owned as a cooperative or condominium. *Id.* at § 6-05(b)(2).

24.     The developer must then file an application for an FCE prior to the first taxable status date following the completion of construction. *Id.* In New York City, January 5 of each year is the taxable status date. *See* New York City Charter § 1507. Under HPD rules, construction is deemed complete upon the issuance of either a TCO for all of the residential portions of the building or a PCO for the entire building. *See* 28 RCNY § 6-01(c).

## VI.     Respondent's Condominium Offering Plan

25.     On August 21, 2007, Respondent Shirokia Development LLC ("Shirokia Development"), under the control of its principals, submitted to NYAG an offering plan for a newly-constructed condominium containing twenty-three (23) residential units at 142-28 38th Avenue in Flushing, NY to be named the Shirokia Tower Condominium (the "Shirokia Tower Plan").

26.     The Shirokia Tower Plan was accepted for submission by the NYAG on August 21, 2007 and was given file number CD07-0534.

27.     In the Shirokia Tower Plan, Respondent Shirokia Development LLC represented that the property at 142-28 38th Avenue was vacant.

28.     The Shirokia Tower Plan was accepted for filing on August 22, 2008, thereby permitting the Respondents to offer for sale vacant units pursuant to the Plan.

29.     Respondent Shirokia Development entered into three contracts with one individual for the sale of three condominium units in the Shirokia Tower Condominium and was therefore able to declare the 90 Clay Street Plan effective, which it did on March 30, 2009.

30.     However, the contracts of sale for the three units never closed and Shirokia Tower Condominium ultimately failed to transfer title of a condominium unit to at least one bona fide purchaser under the Shirokia Tower Plan. As such, under 13 N.Y.C.R.R. § 20.1(c)(6), the Shirokia Tower Plan was not consummated.

31.     On January 8, 2009, Shirokia Development received its permanent certificate of occupancy from the NYC Department of Buildings.

32.     Shortly thereafter, starting on March 1, 2009, Respondent Shirokia Development began renting units at the 142-28 38th Avenue property. Rents collected ranged from approximately $1800.00–$2800.00 per unit, per month. All told, at least twenty (20) units were leased in the period from March 2009 until the spring of 2011.

33.     Although the rents were purportedly below the maximum that would have been permitted by HPD, Respondents failed to have its rents approved by HPD, and failed to register any of the rented units with DHCR as rent-stabilized, despite being required to do so by the RSL, the RSC, and Real Prop. Tax Law § 421-a, as explained above in Part IV.

34.     Respondent Shirokia Development was unable to meet its loan obligations and was threatened with foreclosure.

35.     In addition, Shirokia Development sought protection from its creditors in bankruptcy court and reorganized under Chapter 11 of the Bankruptcy Code.

36.     From April 1, 2011 until April 1, 2015, the 142-28 38th Avenue property was in the possession and control of a court-appointed receiver, Craig Zim, Esq.

37.     While the 142-28 38th Avenue property was in receivership, many of the tenants either moved out on their own volition or were evicted by the receiver in housing court proceedings. The receiver also entered into some new leases with tenants.

38.     Following the Bankruptcy Court's approval of its restructuring under Chapter 11 on March 18, 2015, Respondent Shirokia Development once again obtained control of the 142-28 38th Avenue property on or about April 1, 2015.

39.     A few weeks later, on June 2, 2015, Respondent Shirokia Development filed an amendment (the "Fourth Amendment") to the offering plan with the NYAG in order to once again offer for sale to the public condominium units. The Fourth Amendment represented that the building is currently vacant.

## VII.   Respondents' Tax Exemption under § 421-a & the NYAG's Investigation

40.     In 2006, Respondent Shirokia Development and its principals submitted to HPD an application for a PCE for a § 421-a tax exemption on the 142-28 38th Avenue property, consisting of twenty three (23) total dwelling units (apartments). Respondents' building was assigned HPD docket number: TEO6785. Respondents also represented that it was authorized to make the application for a tax exemption under Section 421-a on behalf of all persons or entities that currently held fee title to the property. Construction was estimated to be completed in November 2008.

41.     Respondents also represented that the property was to be owned as a condominium.

42.     On August 6, 2010, HPD issued to Respondents a PCE for a § 421-a exemption applicable to the 142-28 38th Avenue property. The PCE granted a construction period

exemption from property taxes and indicated that upon issuance of the FCE, the project would be entitled to an exemption from property taxes for 15 years.

43.     On August 11, 2010, HPD issued to Respondents an FCE for a Section 421-a exemption applicable to the property at 142-28 38th Avenue.

44.     Though it had filed an effectiveness amendment with the NYAG on February 13, 2009, because no sales closed, Respondent Shirokia Development did not *de jure* declare the Shirokia Tower Plan effective within the fifteen (15) month period after receiving its FCE.

45.     Respondents have not registered the units at the 142-28 38th Avenue property with DHCR.

46.     By letter dated September 15, 2015, the NYAG advised Respondents that it had made a preliminary determination that Respondents are in violation of the rent registration requirements of Real Prop. Tax Law § 421-a (the "NYAG's Letter") and accordingly rejected for filing its pending Fourth Amendment to the offering plan.

47.     After its investigation, the NYAG finds that Respondent Shirokia Development's foregoing conduct violates § 421-a of the Real Prop. Tax Law, Chapter 6 of Title 28 of the Rules of the City of New York, and N.Y. Executive Law §63(12).

### PROSPECTIVE RELIEF

WHEREAS, the Respondents neither admit nor deny the NYAG's Findings set forth above; and

WHEREAS, the NYAG is willing to accept the terms of this Assurance pursuant to Executive Law § 63(15) and to discontinue its investigation; and

WHEREAS, the Respondents are willing to accept the obligations imposed by this Assurance;

THEREFORE, IT IS HEREBY UNDERSTOOD AND AGREED by and between the Respondents and the NYAG that:

A.      Respondents agree that it or its successors may file a new offering plan pursuant to the Part 20 Regulations, including resubmission of the June 2015 plan previously filed (but rejected for filing), so long as the building remains vacant, and will not commence any sales activity until an offering plan is accepted for filing, and any unrelated parties acquiring the premises at 142-28 38th Avenue, Flushing, New York will not be prohibited from filing an offering plan pursuant to the Part 20 Regulations, so long as the building remains vacant;

B.      Respondents agree that that any unit leased before consummation of a new offering plan it files will be rented only to interim lessees that will have the rights and obligations set forth in Part 20.3(n) and the new offering plan shall so disclose;

C.      In the event that Respondents or their successors (to the extent Respondents have any control over their successors) do not file a new offering plan and decide to rent apartments, all apartments shall be registered with DHCR within fifteen (15) business days as rent-stabilized housing and all tenants will be given rent-stabilized leases set at initial rents previously determined by HPD.  Respondents further agrees to comply in the entirety with the RSL, RSC, and applicable regulations with regard to all such units to the extent it participates in such renting.

D.      All correspondence related to this Assurance must reference Assurance No. 15-241;

E.       Respondents shall not hereafter make or take part in a public offering or sale in or from the State of New York of any securities, as governed by G.B.L. § 352-e, *et seq.*, unless and until there shall have been an offering plan accepted for filing by the NYAG, an offering statement or prospectus that is kept current in conformity with law and with the NYAG's regulations, or the Respondents have received an exemption from filing from the NYAG or a no-action letter is issued by the NYAG;

F.       Respondents shall not violate any provision of Article 23-A of the New York General Business Law, the Executive Law or any other law, regulation or rule relating to the public offering of securities in or from the State of New York;

G.       Respondents shall not violate the terms and conditions of N.Y. Real Prop. Tax Law § 421-a or any regulations or rules pertaining thereto, nor any of the terms and conditions of the RSC or RSL and the current § 421-a exemption will remain in effect so long as Respondents or their successors operate in accordance with the law;

H.       As to any residential tenants of the 142-28 38th Avenue property, Respondents shall comply with RSC, 9 NYCRR Parts 2524, and so long as such tenants continue to pay the rent to which the landlord is entitled, Respondents shall not take any action to remove or cause to be removed any tenant from the 142-28 38th Avenue property by action to evict or other means unless such action complies with 9 NYCRR Part 2524;

I.       Respondents shall comply with RSC, 9 NYCRR Part 2525.5 and shall not interfere with or disturb the comfort, repose, peace or quiet of any tenant in the use of the property, or take any action with the intent to cause the tenant to vacate the housing

accommodation; nor shall Respondents take any action to cause or attempt to cause any tenant to enter into a surrender agreement or to waive any rights under the RSL or RSC;

J.      In consideration of the making and execution of this Assurance, Respondents agree that they will pay eighty-five thousand dollars and zero cents ($85,000.00) by official bank check, payable to the State of New York in penalties, fees and costs in the manner set forth herein:

      a.   An initial payment of seventeen thousand dollars and zero cents ($17,000.00) shall be due and payable immediately upon execution of this Assurance; and

      b.   The remaining balance of sixty-eight thousand dollars and zero cents ($68,000.00) shall be due and payable no later than five (5) calendar days following Respondents' receipt of refinancing from any lender, which in no case will occur beyond 90 days of the date of this Assurance.

      c.   In the event that Respondents are unable to secure refinancing within 90 days of the date of this Assurance, Respondents shall immediately pay the outstanding balance of sixty-eight thousand dollars and zero cents ($68,000.00).

K.      Respondents agree that they shall be jointly and severally liable for delivery of the payments set forth in paragraph J above;

### III.   MISCELLANEOUS

L.      The NYAG has agreed to the terms of this Assurance based on, among other things, the representations made to the NYAG by Respondents and its counsel and the NYAG's own factual investigation as set forth in the Findings above.  To the extent that any material

representations are later found to be inaccurate or misleading, this Assurance is voidable by the NYAG in his sole discretion.

M.      No representation, inducement, promise, understanding, condition, or warranty not set forth in this Assurance has been made to or relied upon by Respondents in agreeing to this Assurance.

N.      Respondents represent and warrant, through the signatures below, that the terms and conditions of this Assurance are duly approved, and execution of this Assurance is duly authorized. Respondents shall not take any action or make any statement denying, directly or indirectly, the propriety of this Assurance or expressing the view that this Assurance is without factual basis. Nothing in this paragraph affects Respondents' (i) testimonial obligations or (ii) right to take legal or factual positions in defense of litigation or other legal proceedings to which the NYAG is not a party.

O.      This Assurance may not be amended except by an instrument in writing signed on behalf of all the parties to this Assurance, and any purported amendment of this Assurance that is not memorialized in a writing signed by all parties shall be deemed null and void.

P.      This Assurance shall be binding on and inure to the benefit of the parties to this Assurance and their respective successors and assigns, provided that no party, other than the NYAG, may assign, delegate, or otherwise transfer any of the NYAG's rights or obligations under this Assurance without the prior written consent of the NYAG.

Q.      In the event that any one or more of the provisions contained in this Assurance shall for any reason be held to be invalid, illegal, or unenforceable in any respect, in the sole

discretion of the NYAG such invalidity, illegality, or unenforceability shall not affect any other provision of this Assurance.

R.    To the extent not already provided under this Assurance, Respondents shall, upon request by the NYAG, provide reasonable documentation and information necessary for the NYAG to verify compliance with this Assurance.

S.    All notices, reports, requests, and other communications to any party pursuant to this Assurance shall be in writing and shall be directed as follows:

> If to any or all of the Respondents:
>
> > Shirokia Development, LLC
> > 142-32 38th Avenue
> > Flushing, NY 11354
>
> *with a copy to:*
>
> William Kaplan, Esq.
> Fox Horan & Camerini LLP
> 825 Third Avenue, 12th Floor
> New York, New York 10022
> (212) 480-4800
>
> *If to the NYAG:*
>
> > Bureau Chief
> > Real Estate Finance Bureau
> > Office of the Attorney General
> > 120 Broadway, 23rd Floor
> > New York, New York 10271
> > (212) 416-8100

T.    Acceptance of this Assurance by the NYAG shall not be deemed approval by the NYAG of any of the practices or procedures referenced herein, and Respondents shall make no representation to the contrary.

U.    Pursuant to New York Executive Law § 63(15), evidence of a violation of this Assurance shall constitute *prima facie* proof of violation of the applicable law in any action or proceeding thereafter commenced by the NYAG.

V.    If a court of competent jurisdiction finally determines that Respondents have breached this Assurance, Respondents shall pay to the NYAG the cost, if any, of such determination and of enforcing this Assurance, including without limitation legal fees, expenses, and court costs.

W.    The NYAG finds the relief and agreements contained in this Assurance appropriate and in the public interest. The NYAG is willing to accept this Assurance pursuant to New York Executive Law § 63(15), in lieu of commencing a statutory proceeding. This Assurance shall be governed by the laws of the State of New York without regard to any conflict of laws principles.

X.    Nothing contained herein shall be construed as to deprive any person of any private right under the law.

Y.    This Assurance may be executed in one or more counterparts, by either original signature or signature transmitted by facsimile transmission or electronic mail, and each copy so executed shall be deemed an original.

IN WITNESS WHEREOF, this Assurance is executed by the Respondents and the NYAG as of November __, 2015.

**ERIC T. SCHNEIDERMAN**
Attorney General of the
State of New York

By: _____
Erica F. Buckley
Bureau Chief
Real Estate Finance Bureau

By: _____
Jeffrey R. Rendin
Special Counsel
Real Estate Finance Bureau


**SHIROKIA DEVLOPMENT, LLC**
a New York limited liability company

By: _____
Managing Principal
Print name: Hong Qin Jiang

_____
Xi Liang Liu

_____
Hong Qin Jiang

# Exhibit B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

PEOPLE OF THE STATE OF NEW YORK, by
ERIC T. SCHNEIDERMAN,
Attorney General of the State of New York,

Index No. _____

Plaintiff,

– against –

HONG QIN JIANG,

**AFFIDAVIT OF**
**CONFESSION OF**
**JUDGMENT** _____

Defendant.

STATE OF NEW YORK    )
                                          ) ss.:
COUNTY OF NEW YORK  )

HONG QIN JIANG, being duly sworn, deposes and says:

1.    I am the individual named above.

2.    I reside at _36-20   210 Street, Bayside. NY 11361._

3.    I hereby confess judgment against myself and authorize entry thereof in Queens

County, New York, and in any county in which I own property, in favor of plaintiff the People of

the State of New York in the sum of Four Hundred Thousand Dollars ($400,000.00).

4.    This confession of judgment is for a debt justly due to the plaintiff, the People of

the State of New York, arising out of the acts set forth in the attached Assurance of

Discontinuance ("Assurance") dated August __, 2017 (Exhibit A). As a result of the conduct

described in the Assurance, I violated New York Executive Law § 63(12), the Martin Act, New

York General Business Law ("G.B.L.") § 352–*et seq.*, the N.Y. Real Property Tax Law § 421-a,

the New York City Administrative Code § 26-501–*et seq.* (the Rent Stabilization Law), and the

New York Codes, Rules and Regulations, title 9, § 2520.1–*et seq.* (the Rent Stabilization Code).

when I violated another Assurance of Discontinuance with the People of the State of New York,

AOD No 15-241, dated November 24, 2015, by filing an offering plan with the Office of the

Attorney General of the State of New York ("OAG") regarding a building located at 142-28 38th

Avenue, Flushing Queens and representing that said building was vacant, despite not maintaining

it vacant of tenants. Moreover, I also violated AOD No 15-241 and the above stated laws by

having tenants in occupancy (pursuant to written and oral leases) at the same building without

complying with the Rent Stabilization Law and Rent Stabilization Code, including, but not

limited to, failing to provide rent stabilized leases to the tenants; failing to register the legal

regulated rents with HCR; failing to charge the legal regulated rents to the tenants; and evicting

or otherwise removing tenants without complying with 9 NYCCR Part 2524.

     5.     I authorize entry of judgment against me in Queens County, in the State of New

York without further notice in the amount of Four Hundred Thousand Dollars ($400,000.00) at

any time.

     6.     I acknowledge that I have fully read and understood the contents of this Affidavit

of Confession of Judgment and have had the opportunity to have its contents translated into my

language of native fluency so that I understand its duties and obligations. An affidavit of

translation is attached as an exhibit to the Assurance.

By: _____
    HONG QIN JIANG

On this 21st day of August , 2017, before me personally came HONG QIN
JIANG, to me known, who being by me duly sworn, did depose and say that she resides in the
County of Queens , State of New York and is the person who executed this instrument.

_____         [NOTARY SEAL]

KEVIN TUNG
Notary Public, State of New York
No. 02TU6029765
Qualified in Queens County
Commission Expires on 3/1/...

Exhibit C

## AFFIDAVIT OF TRANSLATION

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF _Queens_     )

____Jin Wu Yu____, being duly sworn, deposes and says:

1.    I am employed by _____ _N/A_ _____, located at

____ _N/A_ ____, New York.

2.    I am fully conversant with the Mandarin/Cantonese languages which I
read, speak and write fluently.  Upon information and belief, HONG QIN JIANG does
not understand English well enough to read the attached Assurance of Discontinuance
and Affidavit of Confession of Judgment.

3.    I have translated the Assurance of Discontinuance and Affidavit of
Confession of Judgment attached hereto, from English to ____ _Chinese_ ____, and have
read the same to her in ____ _Chinese_ ____, which were then executed by HONG QIN
JIANG on the ____ day of August, 2017.

4.    HONG QIN JIANG has related to me that she fully understands the
contents of both instruments.

Dated: August _21_, 2017
        _Queens_____, New York

_____
[Name]   Jin Wu Yu

Sworn to before me this
_21st_ day of August, 2017

_____                                    [SEAL]
NOTARY PUBLIC

XIANFENG ZOU
Notary Public, State of New York
No. 02ZO6003642
Qualified in Queens County
Commission Expires February 23, 20__

# EXHIBIT "B"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

SHIROKIA DEVELOPMENT LLC,
SHIROKIA MEZZ I, LLC

                    Debtors.
-------------------------------------------------------X

Post-Confirmation
Chapter 11
Lead Case No. 16-45568 (NHL)
(Jointly Administered)

## ORDER AUTHORIZING AND APPROVING
## ASSURANCE OF DISCONTINUANCE STIPULATION

**UPON** the Notice of Presentment dated October 19, 2017 and it appearing that adequate

notice having been given to all parties-in-interest, and no objections having been received; it is

hereby

**ORDERED**, that the Assurance of Discontinuance, a copy of which is annexed hereto as

Exhibit "A", is hereby approved in all respects; and it is further

**ORDERED**, that the Debtors and their authorized representatives are hereby authorized,

empowered, and directed to perform such obligations as are required under the Assurance of

Discontinuance.