Respectfully submitted to:

**The Honorable District Attorney,
Queens County**

125-01 Queens Boulevard
Kew Gardens, New York 11415

And

**The Honorable United States Bankruptcy Court of
East District New York**

271-C Cadman Plaza E #1595,
Brooklyn, NY 11201

And

**The Honorable Office of the Attorney General
Real Estate Finance Bureau**

28 Liberty Street, 15th Floor
New York, NY 10005

**Request for Criminal Investigation**

Against

Xiliang Liu, JinWu Yu, AiGuang Chen

Request submitted by:

Jing Huang

Saturday, October 30, 2021

## SHORT SUMMARY

In or about October 2004, Jiang and Liu formed Shirokia Development LLC ("Shirokia") and were the equity owners of the company. In or about May 2005, Shirokia purchased a piece of real property located at 142-32 38th Avenue, Flushing (the "Property"), on which the Condo Building has been built. In or about 2007, Shirokia submitted an offering plan to the Office of the Attorney General of New York ("OAG") for approval to convert the building to a condominium. In connection with the condominium application, Shirokia also submitted for and eventually approved for New York City real estate tax exemption. In the process of applying for condominium approval and real estate tax exemption, the OAG investigated Shirokia's business transactions and found that Shirokia was not in compliance with the rent registration requirement and New York state rent Stabilization Law, Rent Stabilization Code, and other applicable rent regulations.

In December 2015, Shirokia entered into loan agreements with W Financial Fund, LP ("WFF") in the sums of $18,000,000 (the "First Loan") and $4,000,000 (the "Second Loan") respectively. In March 2016, WFF commenced a foreclosure action. In December 2016, Shirokia filed for Chapter 11 petition pursuant to the U.S. Bankruptcy Code to avoid an imminent foreclosure of the Property by WFF. The OAG submitted an claim of $910,750.00 in the bankruptcy proceeding. The Bankruptcy Court (Hon. Carla E. Craig, U.S.B.J.) approved the Chapter 11 Plan, which provides, inter alia, that the "Debtors shall have until August 18, 2017 to close on the private sale of a portion of the Property pursuant to a pending contract of sale with SH 168, LLC for $25,000,000." As part of Debtor"s bankruptcy Plan, Shirokia, Jiang and Liu entered into an Assurance of Discontinuance with the OAG by which Shirokia agreed to pay and paid the full amount of the liability of $910,750 and Shirokia and Jiang agreed not to

engaged in any securities-related business or activities involving marketing, selling or offering for sale to the public in New York any securities constituting participation interests or investments in real estate. In reality, Jiang and Liu would like to buy the building back, but because of Assurance of Discontinuance with the OAG and Liu had previously lied to the OAG, they both were unable to buy back. Lin, is a personal friend of Jiang and Liu, assisted the buy back (via a new company called SH 168 LLC with Lin as 100% sole owner). Legally, Lin owned 100% of the share, but in reality, Jiang and Liu were the equity owners of the company. On August 14, 2018, Lin executed a "Resolution on Zhi Rong Lin's Capacity with SH 168 LLC" (the "Resolution").  Lin certified in the Resolution that he had not invested in the LLC, had not managed the LLC, had not been a member or Manager and was not responsible for its operations.

Currently, SH168 LLC filed for Chapter 11 petition pursuant to the U.S. Bankruptcy again. Based on the facts submitted, all parties involved lied to the Office of the New York State Attorney General and the United States Bankruptcy Court of New York. They fool the system by illegal loopholes.

I respectfully request that District Attorney of Queens County and United States Bankruptcy Court of New York investigate the criminal activity of the parties involved.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

A.  The Parties: Jiang, Huang, Liu, Yu, Chen, and Lin ..................................

B.  Shirokia and the Property ..............................................................

C.  Chapter 11 Plan and the Private Sale of the Property ...........................

D.  The Purchase of the Property by the LLC for $25,000,000 ....................

E.  The Resolution on Zhi Rong Lin's Capacity with SH 168 LLC ...............

F.  Yu's Civil Action against Jiang and the Forged Membership
    Transfer Agreement and Assignment Agreements ...............................

G.  Lin's Relationship with Chen and Yu .............................................

H.  Ten Dollar ($10.00) Consideration for the Purported Transfer ..............

I.  Jiang's Continued Management of the LLC post 10/24/2018 .................

J.  Liu's Divorce Action against Jiang ................................................

K.  Clear Signs of Forgery of Lin's Signatures .....................................

L.  Lin's Action for Declaratory Judgment ("Second Action") ....................

M.  Jiang Affidavit of August 8, 2020 ................................................

N.  Evidence of Liu's Falsification of Jiang Affidavit of August 8, 2020 ..................

O.  Request for Criminal Investigation ...............................................

## PRELIMINARY STATEMENT

JING HUANG ("**Huaug**"), for and on behalf of her biological mother HONG QIN

JIANG ("**Jiang**") who is mentally incapacitated, and ZHI RONG LIN ("**Lin**"), respectfully

request that the District Attorney's Office investigate a criminal activity committed by JIN WU

YU ("**Yu**"), AIGUANG CHEN ("**Chen**"), and XI LIANG LIU ("**Liu**") in falsifying a written

instrument conveying membership interests in SH 168 LLC (the "**LLC**") which holds title to a

piece of property located in Queens County with a fair market value of about $30,000,000.

### A. The Parties: Jiang, Huang, Liu, Yu, Chen, and Lin

1.    Jiang, a female, born on ███████████ is a resident of Queens County.

2.    Huang, a female, born on ███████████ is Jiang's biological daughter from

Jiang's first marriage.

3.    Huang residing 36-20 210th Street, Bayside, New York.

4.    In or about 2005, Jiang was re-married to Liu, born on 1965,  in Flushing, New

York.

5.    Presently, Jiang and Liu live together in an apartment of a condo building known

as 142-28 38th Avenue, Unit 11A (the "Condo Building").

6.    Jiang was diagnosed of schizophrenia in China in or about October, 2019.  Jing

has taken her mother to see a psychiatrist who prescribed Benztropine and Risperidone to Jiang.

While the prescription drugs helped stabilize Jiang's conditions, she still showed signs of

difficulties in recollecting events and sometimes confusion.

7.    Yu, born ██████ is Liu's biological son from Liu's prior marriage and

currently resides at 38 Kensington Cir, Manhasset NY 11030.

8.    Chen, born ███████ is a business associate of Liu and Yu and currently

resides at 147-11 3rd Avenue, Whitestone, NY 11357.

9.    Lin, born ███████ is a personal friend of Jiang and Liu and currently resides

at 2784 E. 16th Street, Brooklyn, NY 11235.

### B. Shirokia and the Property

10.    In or about October 2004, Jiang and Liu formed Shirokia Development LLC

("Shirokia") and were the equity owners of the company.

11.    In or about May 2005, Shirokia purchased a piece of real property located at 142-

32 38th Avenue, Flushing (the "Property"), on which the Condo Building has been built.

12.    Thereafter, Shirokia constructed the Property for a condominium building of

eleven (11) stories, containing twenty-three (23) residential units, four (4) commercial units,

and forty-seven (47) parking spaces.

13.    In or about 2007, Shirokia submitted an offering plan to the Office of the

Attorney General of New York ("OAG") for approval to convert the building to a

condominium.  In connection with the condominium application, Shirokia also submitted for

and eventually approved for New York City real estate tax exemption.

14.    In the process of applying for condominium approval and real estate tax

exemption, the OAG investigated Shirokia's business transactions and found that Shirokia was

not in compliance with the rent registration requirement and New York state rent Stabilization

Law, Rent Stabilization Code, and other applicable rent regulations.

## C.  **Chapter 11 Plan and the Private Sale of the Property**

15.    In December 2015, Shirokia entered into loan agreements with W Financial Fund, LP ("WFF") in the sums of $18,000,000 (the "First Loan") and $4,000,000 (the "Second Loan") respectively.

16.    In March 2016, WFF commenced a foreclosure action asking to foreclose on the First Loan and the Second Loan.

17.    In December 2016, Shirokia filed for Chapter 11 petition pursuant to the U.S. Bankruptcy Code to avoid an imminent foreclosure of the Property by WFF.

18.    The OAG submitted an claim of $910,750.00 in the bankruptcy proceeding which the OAG represented was the sum total of the real estate tax abatements improperly received by Shirokia.

19.    Shirokia filed a motion in the bankruptcy court objecting to the OAG's claim.

20.    On June 21, 2017, the debtor submitted an amended Chapter 11 Plan of Reorganization (the "Plan") which provides, *inter alia*, that the "Debtors shall have the right to sell the Property pursuant to a private sale, provided such private sale shall be conditioned upon the payment in full of all unclassified and classified claims" (the "Private Sale").

21.    The Private Sale of the Property would serve the best interest of the creditors of Shirokia because it would pay in full of all unclassified and classified claims.

22.    By order dated August 9, 2017, the Bankruptcy Court (Hon. Carla E. Craig, U.S.B.J.) approved the Chapter 11 Plan, which provides, *inter alia*, that the "Debtors shall have until August 18, 2017 to close on the private sale of a portion of the Property pursuant to a pending contract of sale with SH 168, LLC for $25,000,000."

23. As part of Debtor's bankruptcy Plan, Shirokia and Jiang entered into an Assurance of Discontinuance with the OAG dated August 21, 2017 by which Shirokia agreed to pay and paid the full amount of the liability of $910,750 and Shirokia and Jiang agreed not to engaged in any securities-related business or activities involving marketing, selling or offering for sale to the public in New York any securities constituting participation interests or investments in real estate. A true copy of the OAG Assurance of Discontinuance is submitted herein as **Exhibit 1**.

### D. The Purchase of the Property by the LLC for $25,000,000

24. In preparation for the Private Sale, Jiang obtained Lin's agreement to form a company to participate in the Private Sale to purchase the Property.

25. Therefore, on June 28, 2017, Lin formed SH 168, LLC (the "LLC") using his home address as the registration address of the LLC.

26. Lin also signed an initial Operating Agreement on June 29, 2017, which designated him as the sole member of the LLC, holding 100% of the membership interest therein, and the Managing Member of the LLC. A true copy of the Operating Agreement dated June 29, 2017 is submitted herein as **Exhibit 2**.

27. On August 22, 2017, the LLC purchased the Property.

28. Lin, on behalf of the LLC, executed at the closing a mortgage agreement with MIOF Credit LLC for the amount of $15,000,000.

29. In addition to the mortgage proceeds, Jiang personally contributed the sum of $5,000,000 to the LLC for the purchase and paid all closing related costs. Liu also contributed to the purchase price of the Property.

- 4 -

30.    Attorney William X. Zou, Esq., 136-20 38th Avneue, Suite 10D, Flushing, NY 11354, (718) 661-9562, xfzou@aol.com, represented the LLC in connection with the LLC's purchase of the Property from Shirokia and advised the LLC and Lin on the closing related documents including the LLC formation and Operating Agreement.

### E.  The Resolution on Zhi Rong Lin's Capacity with SH 168 LLC

31.    After the closing, Jiang mainly managed the affairs of the operations of the LLC and maintained the Condo Building.

32.    On August 14, 2018, Lin executed a "Resolution on Zhi Rong Lin's Capacity with SH 168 LLC" (the "Resolution").  Lin certified in the Resolution that he had not invested in the LLC, had not managed the LLC, had not been a member or Manager and was not responsible for its operations.  A true copy of the Resolution is submitted herein as **Exhibit 3.**

33.    Lin, however, did not sign any formal membership interest and, despite the Resolution, Lin remained and still is the sole member of the LLC with 100% membership interest of the LLC.

### F.  Yu's Civil Action against Jiang and the Forged Membership Transfer Agreement and Assignment Agreements

34.    On or about March 13, 2019, Yu, individually and on behalf of the LLC, commenced a civil action in the Supreme Court of the State of New York, Queens County, against Jiang, Index No. 704356/2019, for a declaratory judgment that Jiang is not a member of the LLC and for accounting (the "First Action").  A true copy of the Complaint is submitted herein as **Exhibit 4**.

35.    In the First Action, Yu alleges that "[o]n or about October 24, 2018, Mr. Lin transferred all his membership interest to YU and Mr. Aiguang Chen with 74% to YU and 26% to Mr. Aiguang Chen." Yu also moved for an restraining order and preliminary injunctions to

- 5 -

enjoin Jiang from interfering with the business of the LLC, from collecting rent or additional rent payments from the LLC's tenants, and for a stay of certain summary proceedings commenced by Jiang on behalf of the LLC in the Civil Court of the City of New York, Housing Part, against certain tenants of the LLC.

36.    Jiang, through counsel, opposed the motion.

37.    By order dated August 20, 2019 (Doc. No. 84), the Court, Hon. Cheree A. Buggs, J.S.C., granted Yu's motion for injunctions and a stay.  However, because Yu did not move to fix the amount of an undertaking, Yu has abandoned the injunction order.

38.    In support of his motion for injunctions, Yu stated under oath in his affidavit dated February 29, 2019, *inter alia*, that "[o]n or about October 24, 2018, Mr. Lin transferred all his membership interests to me and Mr. Aiguang Chen with 74% to me and 26% to Mr. Aiguang Chen.  Annexed hereto as Exhibit H is a copy of a Membership Purchase Agreement of SH 168."

39.    Yu attached a copy of the alleged Membership Purchase Agreement to his affidavit, which is reproduced and submitted herein as **Exhibit 5**.

40.    In opposition to Yu's motion for preliminary injunctions, Jiang's attorney submitted, *inter alia*, an affidavit made by Lin sworn to the 16th day of April, 2019, a true copy of which is submitted herein as **Exhibit 6**.

41.    Lin stated in the Affidavit that he **never signed** the purported Membership Purchase Agreement, or the purported Assignment and Transfer of Membership Interest to Yu or Chen respectively as Exhibit A attached thereto purportedly transferring 74% of his interest to YU and 26% of his interest to Chen respectively.  (**Ex. 6, ¶ 3**)

42.    In opposition to Yu's motion for preliminary injunctions, Jiang's attorney also submitted, *inter alia*, an affidavit made by Jiang, a true copy of which is submitted herein as **Exhibit 7**.

43.    Jiang stated in her affidavit that she is the true member of SH 168 LLC.

44.    Neither Yu nor Chen has disputed Lin's submission that he forged Lin's signatures on the Membership Purchase Agreement and on the attached Assignments and Transfers of Membership Interest.

### G. Lin's Relationship with Chen and Yu

45.    Lin, prior to becoming aware of the forged Membership Purchaser Agreement, never knew who Defendant Chen was and, to date, has never met or seen Chen before.

46.    Lin, at the time of the purported Membership Purchase Agreement of October 24, 2018, knew that Defendant Yu was Liu's son from his prior marriage, had limited contact with Yu regarding the business of the Property, and never had any interaction of personal nature.

47.    Lin had never had any meetings or discussions regarding his sale and Defendants Yu and Chen's purchase of his interest in the LLC.

### H. Ten Dollar ($10.00) Consideration for the Purported Transfer

48.    At the time of the purported Membership Purchase Agreement of October 24, 2018, the Property was worth about **$30,000,000**, with a fair market net equity of about **$15,000,000**.

49.    However, the forged Membership Purchase Agreement provides that Lin transferred his 100% interest in the LLC to Defendants Yu and Chen for a total consideration of Ten ($10.00) dollars.

- 7 -

50.     Lin did not receive any monetary payment from either Yu or Chen for the purported membership purchase, not even the nominal $10.00.

51.     There is a complete absence of any consideration running to Lin.

### I. Jiang's Continued Management of the LLC post 10/24/2018

52.     Despite the purported Membership Purchase Agreement, Jiang, with the knowledge of Lin, continued, without any interruption from either Yu or Chen, to perform her duties of management of the LLC, including serving notices to the LLC's tenants upon their default.

53.     On or about December 4, 2018, Jiang, on behalf of Shirokia (mistakenly), through counsel, issued seven (7) Ten (10) Day Notice to Quit upon about seven tenants leasing premises from the Property.

54.     On or about December 13, 2018, Jiang, on behalf of the LLC, through counsel, re-issued the Ten (10) Day Notice to Quit upon the tenants leasing premises from the Property.

55.     On or about January 14, 2019, Jiang, on behalf of the LLC, through counsel, commenced seven (7) summary proceedings in the Civil Court of the City of New York, County of New York, to evict about seven tenants of the LLC.

56.     Yu was fully aware of Jiang's continued management of the LLC, the issuance of the Ten Day Notice to Quit on December 4, 2018 and then on December 13, 2018.

57.     Yu did not file the civil action seeking injunctions and stay until March 13, 2019.


### J. Liu's Divorce Action against Jiang

58.     At the time of the purported Membership Purchase Agreement of October 24, 2018, Liu and Jiang had been separated because of Liu's domestic violence and physical abuse of Jiang.  Numerous police complaints had been filed against Liu.

59.     In or about March 2019, several months after his son forged Lin's signature to make a non-existent Membership Purchase Agreement, Liu filed a divorce action against Jiang without identifying the Property as a marital asset.

60.     The forged Membership Purchase Agreement was a scheme conceived and carried out by Liu, Yu, and Chen to deprive Jiang's ownership interest in the Property and to steal the Property from Jiang in broad daylight.

### K.  Clear Signs of Forgery of Lin's Signatures

61.     Upon closer look, the forged signatures are distinctly different from Lin's genuine signatures even to an untrained eye, for example, the ending upward stroke in the letter "g," the connection between the two letters "z" and "h," the connection between the two letters "o" and "n," the letter "r," and the connection between the letters "n" and "g."

62.     A side-by-side comparison of the forged signatures with Lin's genuine signatures shows as follows:

Forged signatures of Lin



Zhi Rong Lin
Membership Purchase Transfer 10/24/2018

Lin's genuine signatures



Zhi Rong Lin
Mortgage Agreement 8/22/2017



Zhi Rong Lin
Assignment and Transfer (74%) 10/24/2018



Zhi Rong Lin
Mortgage & Security Agreement 8/22/2017

- 9 -

_Zhi Rong Lin_
_____
Zhi Rong Lin
Assignment and Transfer (26%) 10/24/2018

_Zhi Rong Lin_
_____
Zhi Rong Lin
Operating Agreement 6/29/2017

## L. Lin's Action for Declaratory Judgment ("Second Action")

63.      On March 9, 2020, Lin, individually and on behalf of the LLC, filed the an action in the Supreme Court, Queens County, against Yu and Chen (the "Second Action"), the alleged transferees of Lin's membership interest in the LLC, seeking a judgment declaring that the Membership Purchase Agreement was forged and, therefore, void *ab initio* as a matter of law, and permanent injunctive relief. A true copy of the Summons and Complaint filed on March 9, 2020 is submitted herein as **Exhibit 8.**

64.      In connection with the filing of the Second Action, Lin on behalf of the LLC also filed a Notice of Pendency on the ground Yu and Chen are not members of the LLC.

65.      By Notice dated June 18, 2020, Yu and Chen, through their attorney, William X. Zou, Esq., moved to dismiss the complaint pursuant to CPLR 3211(a)(1), (3), (4), and (7) and moved to cancel the Notice of Pendency.

66.      By Notice dated July 14, 2020, Lin and the LLC cross-moved for consolidation of the two actions, stay of the First Action pending the Court's adjudication of the Second Action, and preliminary injunctions against Yu and Chen.

## M. Jiang Affidavit of August 8, 2020

67.      In opposition to Lin and the LLC's cross-motion, Liu submitted an affidavit made the 17th of August, 2020 ("Liu Aff."). Liu also submitted an Affidavit of Jiang which appeared to be made on the 8th day of August, 2020 ("Jiang Aff.") A true copy of the Liu Affidavit to which the Jiang Affidavit is attached is submitted herein as **Exhibit 9.**

- 10 -

## O.  **Request for Criminal Investigation**

68.    Based on the facts submitted, JING HUANG respectfully request that District

Attorney of Queens County and United States Bankruptcy Court of New York investigate the

criminal activity of illegal buy back purchase (private sale), the falsifying membership transfer

agreement and the parties involved that lied to the Office of the New York State Attorney

General and the United States Bankruptcy Court of New York.

Respectfully submitted,

Dated: Queens, New York
          October 30, 2021

By:  Jing Huang
3620 210th Street
Bayside NY 11361

# EXHIBIT 1

OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF NEW YORK
REAL ESTATE FINANCE BUREAU
-----------------------------------------------------------------X

In the Matter of the

Investigation by ERIC T. SCHNEIDERMAN,
Attorney General of the State of New York, of                    AOD No. 15-241

SHIROKIA DEVELOPMENT, LLC; Xi Liang Liu; Hong
Qin Jiang;

                              Respondents.
-----------------------------------------------------------------X

## ASSURANCE OF DISCONTINUANCE

Pursuant to New York Executive Law ("Executive Law") § 63(12) and the Martin Act,

New York General Business Law ("G.B.L.") § 352 *et seq.*, ERIC T. SCHNEIDERMAN,

Attorney General of the State of New York (the "NYAG") has investigated the conduct of

Shirokia Development, LLC, Xi Liang Liu, Hong Qin Jiang, and Wing Fung Chau (together

"Respondents") in connection with their obligations under the Martin Act and receipt of certain

tax benefits.

This Assurance of Discontinuance ("Assurance") contains the findings of the NYAG's

investigation and the relief agreed to by the NYAG and the Respondents.

## FINDINGS

**I.      The Respondents**

1.      Respondent Shirokia Development LLC is a New York limited liability company,

with a principal place of business at 142-32 38th Avenue, Flushing, NY, that has acted as

sponsor of a real estate offering of newly-constructed condominium units at 142-32 38th

Avenue, in Flushing, Queens, NY, under G.B.L. § 352-e and 13 N.Y.C.R.R. Part 20, which govern the offer of newly-constructed, vacant or non-residential condominiums to the public.

2.     The condominium at 142-32 38th Avenue is referred to by the name Shirokia Tower Condominium.

3.     Respondent Xi Liang Liu is an individual and managing member of Shirokia Development LLC.

4.     Respondent Hong Qin Jiang is an individual and a member of Shirokia Development LLC.

5.     ~~Respondent Wing Fung Chau is an individual and a member of Shirokia Development LLC.~~

## II.     Marketing and Selling Newly-Constructed, Vacant of Non-Residential Condominiums under the Martin Act

6.     A sponsor of a condominium offering in the State of New York is required to file with the NYAG an offering plan that must disclose the detailed terms of the transaction to prospective purchasers. *See* G.B.L. § 352-e(1)(b).

7.     Pursuant to the Martin Act, and in accordance with the regulations that govern the public offering of newly constructed, vacant or non-residential condominiums (the "Part 20 Regulations"), no offer or sale of real estate securities shall be made until an offering plan is filed with the NYAG. *See* G.B.L. § 352-e(5); 13 N.Y.C.R.R. § 20.2(e).

8.     A sponsor may market for sale units once the offering plan is accepted for filing by the NYAG under the Part 20 Regulations, but it may not close the sale of any units until the offering plan is declared effective. *See* 13 N.Y.C.R.R. § 20.2(e).

9.      Pursuant to the Part 20 Regulations, prior to declaring an offering plan effective, bona fide purchasers must have signed purchase agreements for at least 15% of the units in the building. *Id.* at § 20.3(q)(3).

10.     Pursuant to the Part 20 Regulations, following a declaration of effectiveness by the sponsor and the acceptance of the amendment by the NYAG either confirming or declaring that the offering plan has been declared effective, an offering plan is consummated when the declaration of condominium is recorded and transfer of title of a condominium unit to at least one purchaser under the offering plan occurs. *See* 13 N.Y.C.R.R. § 20.1(c)(6).

11.     Under the Part 20 Regulations, the sponsor is required to amend its offering plan within forty-five (45) days following the closing of the first unit to disclose, to the extent available: (i) the date and place of the title closing for the first unit; (ii) the date of issuance of the temporary or permanent certificate of occupancy; (iii) the date of filing of the declaration of condominium and the date separate real estate tax assessments were made; (iv) if applicable, the amount of any reserve fund or working capital fund accounts; (v) a list of all the unsold units held by sponsor; (vi) the names of the members of the board of managers and their relationship to the sponsor; and (vii) the date of the first meeting of the unit owners (the "Post-Closing Amendment"). *See Id.* at § 20.5(f).

**III.    Martin Act Protections for Tenants in Occupancy**

12.     G.B.L. § 352-eeee and its governing regulations apply to conversions of residential rental buildings to condominium ownership in the City of New York.

13.     G.B.L. § 352-eeee and 13 N.Y.C.R.R. Part 23 mandate that certain rights and protections be provided to residential tenants in occupancy in buildings upon conversion to

condominium ownership.  These protections include: (i) prohibitions on certain types of evictions; (ii) limitations on unconscionable rent increases; (iii) prohibitions on tenant harassment; (iv) special protections for tenants who are senior citizens or are disabled; and (v) special rights to purchase under the conversion offering plan.  *See* G.B.L § 352-eeee, *et seq.* 13 N.Y.C.R.R. § 23.3, *et seq.*

## IV.    Respondents' Legal Obligations under Section 421-a of the Real Property Tax Law

14.    Pursuant to N.Y. Real Property Tax Law ("Real Prop. Tax Law") § 421-a, and upon application, certain newly-constructed multiple dwellings in the City of New York are eligible for a partial exemption from local property taxes.  *See* Real Prop. Tax Law § 421-a(2)(a)(i).

15.    Units in properties receiving a tax exemption under the § 421-a program are subject to local rent stabilization laws, unless the units are exempt from those laws due to ownership as a cooperative or condominium.  *See* Real Prop. Tax Law § 421(a)(2)(f).

16.    In New York City, the applicable local rent stabilization laws are the Rent Stabilization Law (the "RSL," codified at New York City Administrative Code § 26-501 *et seq.*) and the Rent Stabilization Code (the "RSC," codified at 9 N.Y.C.R.R. § 2520.1 *et seq.*).

17.    The RSL and the RSC provide that dwellings "owned as" cooperatives or condominiums are exempt from rent stabilization.  *See* New York City Administrative Code ("N.Y.C. Admin. Code") § 26-504(a); 9 N.Y.C.R.R. § 2520.11(l).

18.    The New York City Department of Housing Preservation & Development ("HPD") is the local agency administering eligibility for tax exemptions under the § 421-a

program and it has promulgated eligibility rules for the tax exemption. *See* 28 Rules of the City

of New York ("RCNY") § 6-01 *et seq.*

19.     The HPD rules require that units receiving the tax exemption be subject to rent

regulation and be registered with the New York State Department of Housing and Community

Renewal ("DHCR"), unless the unit is exempt from regulation due to "condominium or

cooperative status." *Id.* at § 6-02(g)(2) and (3).

## V.     The Application Process for the Section 421-a Tax Exemption

20.     The application process for a tax exemption under the § 421-a program requires a

developer to submit to HPD an application for a Preliminary Certificate of Eligibility ("PCE")

and then an application for a Final Certificate of Eligibility ("FCE"). *Id.* at § 6-02(g)(2).

21.     Upon the PCE's implementation by New York City's Department of Finance

("DOF"), the property will be exempt from real property taxation on the new assessed value

resulting from construction of the eligible multiple dwelling, but will continue to pay taxes on

the value of the land and improvements that were on the real property prior to commencement of

the new multiple dwelling's construction.

22.     The application for a PCE must be submitted after construction begins but before

either a temporary certificate of occupancy ("TCO") or a permanent certificate of occupancy

("PCO") is issued for the property by the New York City Department of Buildings. *Id.* at § 6-

05(b).

23.     The application for a PCE must contain either:

[a] statement of intention that the owner will register all rental units with [DHCR] prior
to initial occupancy and will offer initial leases of not less than two years to tenants of
such stabilized units, or such shorter term as the tenant requests,
    or

a statement that the multiple dwelling is to be owned as a cooperative or condominium. *Id.* at § 6-05(b)(2).

24.     The developer must then file an application for an FCE prior to the first taxable status date following the completion of construction. *Id.* In New York City, January 5 of each year is the taxable status date. *See* New York City Charter § 1507. Under HPD rules, construction is deemed complete upon the issuance of either a TCO for all of the residential portions of the building or a PCO for the entire building. *See* 28 RCNY § 6-01(c).

**VI.    Respondent's Condominium Offering Plan**

25.     On August 21, 2007, Respondent Shirokia Development LLC ("Shirokia Development"), under the control of its principals, submitted to NYAG an offering plan for a newly-constructed condominium containing twenty-three (23) residential units at 142-28 38th Avenue in Flushing, NY to be named the Shirokia Tower Condominium (the "Shirokia Tower Plan").

26.     The Shirokia Tower Plan was accepted for submission by the NYAG on August 21, 2007 and was given file number CD07-0534.

27.     In the Shirokia Tower Plan, Respondent Shirokia Development LLC represented that the property at 142-28 38th Avenue was vacant.

28.     The Shirokia Tower Plan was accepted for filing on August 22, 2008, thereby permitting the Respondents to offer for sale vacant units pursuant to the Plan.

29.     Respondent Shirokia Development entered into three contracts with one individual for the sale of three condominium units in the Shirokia Tower Condominium and was therefore able to declare the 90 Clay Street Plan effective, which it did on March 30, 2009.

30.    However, the contracts of sale for the three units never closed and Shirokia Tower Condominium ultimately failed to transfer title of a condominium unit to at least one bona fide purchaser under the Shirokia Tower Plan.  As such, under 13 N.Y.C.R.R. § 20.1(c)(6), the Shirokia Tower Plan was not consummated.

31.    On January 8, 2009, Shirokia Development received its permanent certificate of occupancy from the NYC Department of Buildings.

32.    Shortly thereafter, starting on March 1, 2009, Respondent Shirokia Development began renting units at the 142-28 38th Avenue property.  Rents collected ranged from approximately $1800.00–$2800.00 per unit, per month.  All told, at least twenty (20) units were leased in the period from March 2009 until the spring of 2011.

33.    Although the rents were purportedly below the maximum that would have been permitted by HPD, Respondents failed to have its rents approved by HPD, and failed to register any of the rented units with DHCR as rent-stabilized, despite being required to do so by the RSL, the RSC, and Real Prop. Tax Law § 421-a, as explained above in Part IV.

34.    Respondent Shirokia Development was unable to meet its loan obligations and was threatened with foreclosure.

35.    In addition, Shirokia Development sought protection from its creditors in bankruptcy court and reorganized under Chapter 11 of the Bankruptcy Code.

36.    From April 1, 2011 until April 1, 2015, the 142-28 38th Avenue property was in the possession and control of a court-appointed receiver, Craig Zim, Esq.

37.    While the 142-28 38th Avenue property was in receivership, many of the tenants either moved out on their own volition or were evicted by the receiver in housing court proceedings. The receiver also entered into some new leases with tenants.

38.    Following the Bankruptcy Court's approval of its restructuring under Chapter 11 on March 18, 2015, Respondent Shirokia Development once again obtained control of the 142-28 38th Avenue property on or about April 1, 2015.

39.    A few weeks later, on June 2, 2015, Respondent Shirokia Development filed an amendment (the "Fourth Amendment") to the offering plan with the NYAG in order to once again offer for sale to the public condominium units. The Fourth Amendment represented that the building is currently vacant.

## VII.    Respondents' Tax Exemption under § 421-a & the NYAG's Investigation

40.    In 2006, Respondent Shirokia Development and its principals submitted to HPD an application for a PCE for a § 421-a tax exemption on the 142-28 38th Avenue property, consisting of twenty three (23) total dwelling units (apartments). Respondents' building was assigned HPD docket number: TEO6785. Respondents also represented that it was authorized to make the application for a tax exemption under Section 421-a on behalf of all persons or entities that currently held fee title to the property. Construction was estimated to be completed in November 2008.

41.    Respondents also represented that the property was to be owned as a condominium.

42.    On August 6, 2010, HPD issued to Respondents a PCE for a § 421-a exemption applicable to the 142-28 38th Avenue property. The PCE granted a construction period

exemption from property taxes and indicated that upon issuance of the FCE, the project would be entitled to an exemption from property taxes for 15 years.

43.    On August 11, 2010, HPD issued to Respondents an FCE for a Section 421-a exemption applicable to the property at 142-28 38th Avenue.

44.    Though it had filed an effectiveness amendment with the NYAG on February 13, 2009, because no sales closed, Respondent Shirokia Development did not *de jure* declare the Shirokia Tower Plan effective within the fifteen (15) month period after receiving its FCE.

45.    Respondents have not registered the units at the 142-28 38th Avenue property with DHCR.

46.    By letter dated September 15, 2015, the NYAG advised Respondents that it had made a preliminary determination that Respondents are in violation of the rent registration requirements of Real Prop. Tax Law § 421-a (the "NYAG's Letter") and accordingly rejected for filing its pending Fourth Amendment to the offering plan.

47.    After its investigation, the NYAG finds that Respondent Shirokia Development's foregoing conduct violates § 421-a of the Real Prop. Tax Law, Chapter 6 of Title 28 of the Rules of the City of New York, and N.Y. Executive Law §63(12).

<u>**PROSPECTIVE RELIEF**</u>

WHEREAS, the Respondents neither admit nor deny the NYAG's Findings set forth above; and

WHEREAS, the NYAG is willing to accept the terms of this Assurance pursuant to Executive Law § 63(15) and to discontinue its investigation; and

WHEREAS, the Respondents are willing to accept the obligations imposed by this Assurance;

THEREFORE, IT IS HEREBY UNDERSTOOD AND AGREED by and between the Respondents and the NYAG that:

A.      Respondents agree that it or its successors may file a new offering plan pursuant to the Part 20 Regulations, including resubmission of the June 2015 plan previously filed (but rejected for filing), so long as the building remains vacant, and will not commence any sales activity until an offering plan is accepted for filing, and any unrelated parties acquiring the premises at 142-28 38th Avenue, Flushing, New York will not be prohibited from filing an offering plan pursuant to the Part 20 Regulations, so long as the building remains vacant;

B.      Respondents agree that that any unit leased before consummation of a new offering plan it files will be rented only to interim lessees that will have the rights and obligations set forth in Part 20.3(n) and the new offering plan shall so disclose;

C.      In the event that Respondents or their successors (to the extent Respondents have any control over their successors) do not file a new offering plan and decide to rent apartments, all apartments shall be registered with DHCR within fifteen (15) business days as rent-stabilized housing and all tenants will be given rent-stabilized leases set at initial rents previously determined by HPD.  Respondents further agrees to comply in the entirety with the RSL, RSC, and applicable regulations with regard to all such units to the extent it participates in such renting.

D.      All correspondence related to this Assurance must reference Assurance No. 15-241;

E.    Respondents shall not hereafter make or take part in a public offering or sale in or from the State of New York of any securities, as governed by G.B.L. § 352-e, *et seq.*, unless and until there shall have been an offering plan accepted for filing by the NYAG, an offering statement or prospectus that is kept current in conformity with law and with the NYAG's regulations, or the Respondents have received an exemption from filing from the NYAG or a no-action letter is issued by the NYAG;

F.    Respondents shall not violate any provision of Article 23-A of the New York General Business Law, the Executive Law or any other law, regulation or rule relating to the public offering of securities in or from the State of New York;

G.    Respondents shall not violate the terms and conditions of N.Y. Real Prop. Tax Law § 421-a or any regulations or rules pertaining thereto, nor any of the terms and conditions of the RSC or RSL and the current § 421-a exemption will remain in effect so long as Respondents or their successors operate in accordance with the law;

H.    As to any residential tenants of the 142-28 38th Avenue property, Respondents shall comply with RSC, 9 NYCRR Parts 2524, and so long as such tenants continue to pay the rent to which the landlord is entitled, Respondents shall not take any action to remove or cause to be removed any tenant from the 142-28 38th Avenue property by action to evict or other means unless such action complies with 9 NYCRR Part 2524;

I.    Respondents shall comply with RSC, 9 NYCRR Part 2525.5 and shall not interfere with or disturb the comfort, repose, peace or quiet of any tenant in the use of the property, or take any action with the intent to cause the tenant to vacate the housing

accommodation; nor shall Respondents take any action to cause or attempt to cause any tenant to enter into a surrender agreement or to waive any rights under the RSL or RSC;

J.      In consideration of the making and execution of this Assurance, Respondents agree that they will pay eighty-five thousand dollars and zero cents ($85,000.00) by official bank check, payable to the State of New York in penalties, fees and costs in the manner set forth herein:

   a.  An initial payment of seventeen thousand dollars and zero cents ($17,000.00) shall be due and payable immediately upon execution of this Assurance; and

   b.  The remaining balance of sixty-eight thousand dollars and zero cents ($68,000.00) shall be due and payable no later than five (5) calendar days following Respondents' receipt of refinancing from any lender, which in no case will occur beyond 90 days of the date of this Assurance.

   c.  In the event that Respondents are unable to secure refinancing within 90 days of the date of this Assurance, Respondents shall immediately pay the outstanding balance of sixty-eight thousand dollars and zero cents ($68,000.00).

K.      Respondents agree that they shall be jointly and severally liable for delivery of the payments set forth in paragraph J above;

## III.    MISCELLANEOUS

L.      The NYAG has agreed to the terms of this Assurance based on, among other things, the representations made to the NYAG by Respondents and its counsel and the NYAG's own factual investigation as set forth in the Findings above. To the extent that any material

representations are later found to be inaccurate or misleading, this Assurance is voidable by the NYAG in his sole discretion.

M.    No representation, inducement, promise, understanding, condition, or warranty not set forth in this Assurance has been made to or relied upon by Respondents in agreeing to this Assurance.

N.    Respondents represent and warrant, through the signatures below, that the terms and conditions of this Assurance are duly approved, and execution of this Assurance is duly authorized. Respondents shall not take any action or make any statement denying, directly or indirectly, the propriety of this Assurance or expressing the view that this Assurance is without factual basis. Nothing in this paragraph affects Respondents' (i) testimonial obligations or (ii) right to take legal or factual positions in defense of litigation or other legal proceedings to which the NYAG is not a party.

O.    This Assurance may not be amended except by an instrument in writing signed on behalf of all the parties to this Assurance, and any purported amendment of this Assurance that is not memorialized in a writing signed by all parties shall be deemed null and void.

P.    This Assurance shall be binding on and inure to the benefit of the parties to this Assurance and their respective successors and assigns, provided that no party, other than the NYAG, may assign, delegate, or otherwise transfer any of the NYAG's rights or obligations under this Assurance without the prior written consent of the NYAG.

Q.    In the event that any one or more of the provisions contained in this Assurance shall for any reason be held to be invalid, illegal, or unenforceable in any respect, in the sole

discretion of the NYAG such invalidity, illegality, or unenforceability shall not affect any other provision of this Assurance.

      R.     To the extent not already provided under this Assurance, Respondents shall, upon request by the NYAG, provide reasonable documentation and information necessary for the NYAG to verify compliance with this Assurance.

      S.     All notices, reports, requests, and other communications to any party pursuant to this Assurance shall be in writing and shall be directed as follows:

> If to any or all of the Respondents:
>
> > Shirokia Development, LLC
> > 142-32 38th Avenue
> > Flushing, NY 11354
>
> *with a copy to:*
>
> William Kaplan, Esq.
> Fox Horan & Camerini LLP
> 825 Third Avenue, 12th Floor
> New York, New York 10022
> (212) 480-4800
>
> *If to the NYAG:*
>
> > Bureau Chief
> > Real Estate Finance Bureau
> > Office of the Attorney General
> > 120 Broadway, 23rd Floor
> > New York, New York 10271
> > (212) 416-8100

      T.     Acceptance of this Assurance by the NYAG shall not be deemed approval by the NYAG of any of the practices or procedures referenced herein, and Respondents shall make no representation to the contrary.

U.      Pursuant to New York Executive Law § 63(15), evidence of a violation of this Assurance shall constitute *prima facie* proof of violation of the applicable law in any action or proceeding thereafter commenced by the NYAG.

V.      If a court of competent jurisdiction finally determines that Respondents have breached this Assurance, Respondents shall pay to the NYAG the cost, if any, of such determination and of enforcing this Assurance, including without limitation legal fees, expenses, and court costs.

W.      The NYAG finds the relief and agreements contained in this Assurance appropriate and in the public interest. The NYAG is willing to accept this Assurance pursuant to New York Executive Law § 63(15), in lieu of commencing a statutory proceeding. This Assurance shall be governed by the laws of the State of New York without regard to any conflict of laws principles.

X.      Nothing contained herein shall be construed as to deprive any person of any private right under the law.

Y.      This Assurance may be executed in one or more counterparts, by either original signature or signature transmitted by facsimile transmission or electronic mail, and each copy so executed shall be deemed an original.

IN WITNESS WHEREOF, this Assurance is executed by the Respondents and the NYAG as of November __, 2015.

**ERIC T. SCHNEIDERMAN**
Attorney General of the
State of New York

By: _____
Erica F. Buckley
Bureau Chief
Real Estate Finance Bureau

By: _____
Jeffrey R. Rendin
Special Counsel
Real Estate Finance Bureau


**SHIROKIA DEVLOPMENT, LLC**
a New York limited liability company

By: _____
Managing Principal
Print name: Hong Qin Xiang

_____
Xi Liang Liu

_____
Hong Qin Xiang

# EXHIBIT 2

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM
NYSCEF DOC. NO. 14

INDEX NO. 704356/2019

RECEIVED NYSCEF: 03/13/2019

OPERATING AGREEMENT

OF

SH 168, LLC

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM

NYSCEF DOC. NO. 14

INDEX NO. 704356/2019

RECEIVED NYSCEF: 03/13/2019

OPERATING AGREEMENT
OF
SH 168, LLC

THIS ~~FIRST AMENDMENT TO THE FIRST AMENDED AND RESTATED~~ OPERATING AGREEMENT (the "*First Amendment to the First Amended and Restated Operating Agreement*") of SH 168, LLC (the "*Company*") is entered into as of June 2_9_ , 2017 by and among ZHI RONG LIN, residing at 2784 East 16 Street, Brooklyn, NY 11235 (collectively, the "*Member(s)*") and the Company. In consideration of the covenants, conditions and agreements contained herein, the parties hereto hereby agree as follows:

WHEREAS, the Company was formed under the New York Limited Liability Company Law (the "*Act*") upon the filing, on June 28, 2017 of Articles of Organization with the New York Secretary of State (the "*Secretary of State*") pursuant to the Act; and

WHEREAS, each Member agrees to make a capital contribution to the Company in exchange for the interest percentage and the Units set forth on Schedule A; and

WHEREAS, the parties desire to set forth their agreement with respect to (a) the business of the Company, (b) the conduct of the Company's affairs, and (c) the rights, powers, preferences, limitations and responsibilities of the Members of the Company;

WHEREAS, The Members desire to impose certain restrictions upon the sale, transfer, negotiation, assignment, pledge or other disposition or encumbrance of the Interest and to effect certain provisions for the governance of the Company, as hereinafter set forth.

NOW THEREFORE, in consideration of mutual agreement and covenants herein expressed, and for other good and valuable considerations, the receipt of which is hereby acknowledged, the above named members entered into the following agreement:

1.      **Allocation of Membership Interest and Voting Right.**

The percentages of the Membership Interest are allocated as follows:

Zhi Rong Lin. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .100%

The voting right is determined by the percentages of the ownership. The Majority shall be 67% of the ownership. The Majority (67%) of the percentage of the ownership shall prevail in the company decision making process for the company except that on important issues, such as entering into a contract involving more than $1,000,000.00, or the sale or dissolution of Company shall require 67% majority. Each and every member's voting right shall be the same as his or her percentage of ownership of membership interests in the Company unless otherwise provided herein.

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM

NYSCEF DOC. NO. 14

INDEX NO. 704356/2019

RECEIVED NYSCEF: 03/13/2019

2.    **Admission of Additional Members.** Except as otherwise expressly provided in this Agreement, no additional members may be admitted to the Company through issuance by the company of a new interest in the Company without the prior written consent of the Majority of Members.

3.    **Term.** The term of the Company commences on the date as shown in the filing receipt of the company and shall continue perpetually unless sooner terminated as provided in this Agreement.

4.    **Managing Members.** The Managing Members / Managers shall consist of two (2) persons (the "Managing Member" or "Manager"). During the first Four (4) years of this Agreement, the Members vote for the election of the following persons as Managing Members / Managers:  Zhi Rong Lin.

5.    **Capital Contributions**

    5.1    Initial Contributions. The Members initially shall contribute to the Company capital as described in Schedule A attached to this Agreement. The balance of the purchase price shall be paid by other Members pursuant to their percentages.

    5.2    Additional Contributions. No Member shall be obligated to make any additional contribution to the Company's capital without the prior written consent of Majority of the Members. Once it is determined that additional contribution is required, all Members shall make such additional contribution accordingly, failure of which will result in the forfeiture of the membership interest of such non-complying Member in the following manner: such non-complying member shall be allowed 10 days to sell his, her or its membership interests and if additional contribution is not made to the Company on the 12th day, the Company may buy out such non-complying Member's membership interest at half of its, his or her initial contributions.

    5.3    No Interest on Capital Contributions. Members are not entitled to interest or other compensation for or on account of their capital contributions to the Company except to the extent, if any, expressly provided in this Agreement.

6.    **Allocation of Profits and Losses; Distributions**

    6.1    Profits/Losses. The Company's net profits or net losses shall be determined on a quarterly basis and shall be allocated to the Members in proportion to each Member's relative capital interest in the Company as set forth in Paragraph 1 of this Agreement as amended from time to time in accordance with U.S. Department of the Treasury Regulation 1.704-1.

    6.2    Distributions. The Members shall determine and distribute available funds annually or at more frequent intervals as they see fit. Available funds, as referred to herein, shall mean the net cash of the Company available after appropriate provision for expenses and liabilities, as determined by the Managers. Distributions in liquidation of

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM

INDEX NO. 704356/2019

NYSCEF DOC. NO. 14

RECEIVED NYSCEF: 03/13/2019

the Company or in liquidation of a Member's interest shall be made in accordance with the positive capital account balances pursuant to U.S. Department of the Treasury Regulation 1.704.1(b)(2)(ii)(b)(2). To the extent a Member shall have a negative capital account balance, there shall be a qualified income offset, as set forth in U.S. Department of the Treasury Regulation 1.704.1(b)(2)(ii)(d).

6.3     No Right to Demand Return of Capital. No Member has any right to any return of capital or other distribution except as expressly provided in this Agreement. No Member has any drawing account in the Company.

7.     Indemnification

The Company shall indemnify any person who was or is a party defendant or is threatened to be made a party defendant, pending or completed action, suit or proceeding, whether civil, criminal, administrative, or investigative (other than an action by or in the right of the Company) by reason of the fact that he is or was a Member of the Company, Manager, employee or agent of the Company, or is or was serving at the request of the Company, against expenses (including attorney's fees), judgments, fines, and amounts paid in settlement actually and reasonably incurred in connection with such action, suit or proceeding if the Members determine that he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interest of the Company, and with respect to any criminal action proceeding, has no reasonable cause to believe his/her conduct was unlawful. The termination of any action, suit, or proceeding by judgment, order, settlement, conviction, or upon a plea of "no lo Contendere" or its equivalent, shall not in itself create a presumption that the person did or did not act in good faith and in a manner which he reasonably believed to be in the best interest of the Company, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his/her conduct was lawful.

The Members of the Company shall indemnify the Company and other Members against the damages, expenses (including attorney's fees), judgments, fines, and amounts paid in settlement actually and reasonably incurred in connection with any action, suit or proceeding if the Members fail to act in good faith and in a manner he reasonably believed to be in or opposed to the best interest of the Company and other Members, and with respect to any criminal action proceeding, has reasonable cause to believe his/her conduct was unlawful. The Members of the Company agree and covenant not to use the Company business to guarantee their personal business.

8.     Powers and Duties of Managers

8.1     Management of Company

8.1.1     The Managing Members, within the authority granted by the Act and the terms of this Agreement shall have the complete power and authority to manage and operate the Company and make all decisions affecting its business and affairs. The

INDEX NO. 704356/2019

**FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM**

NYSCEF DOC. NO. 14

RECEIVED NYSCEF: 03/13/2019

Managing Members shall keep the management and/or operating system on the record and transparent.

      8.1.2   Except as otherwise provided in this Agreement, all decisions and documents relating to the management and operation of the Company shall be made and executed by a Majority in interest of the Members.

      8.1.3   Third parties dealing with the Company shall be entitled to rely conclusively upon the power and authority of a Majority in interest of the Members to manage and operate the business and affairs of the Company.

    8.2   Decisions by Members. Whenever in this Agreement reference is made to the decision, consent, approval, judgment, or action of the Members, unless otherwise expressly provided in this Agreement, such decision, consent, approval, judgment, or action shall mean a Majority of the Members.

    8.3   Withdrawal by a Member. A Member has no power to withdraw from the Company, except as otherwise provided in Paragraph 6 of this Agreement.

## 9.   Salaries, Vacation, Reimbursement, Payment of Expenses and Meetings

    9.1   Organization Expenses. All expenses incurred in connection with organization of the Company will be paid by the Company.

    9.2   Legal and Accounting Services. The Company may obtain legal and accounting services to the extent reasonably necessary for the conduct of the Company's business.

    9.3   Members Meeting. The Members of the Company shall hold a Members meeting once a month, the place and time of which shall be notified by the Managing Member. The Managing Member is responsible to keep the Company minutes and send via electronic mail to the other Members.

    9.4   Salaries and compensation of Managing Members shall be determined by the Majority of members.

## 10.   Books of Account, Accounting Reports, Tax Returns, Fiscal Year, Banking

    10.1   Method of Accounting. The Company will use the method of accounting previously determined by the Members for financial reporting and tax purposes.

    10.2   Fiscal Year; Taxable Year. The fiscal year and the taxable year of the Company is the calendar year.

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM

NYSCEF DOC. NO. 14

INDEX NO. 704356/2019

RECEIVED NYSCEF: 03/13/2019

10.3    Capital Accounts. The Company will maintain a Capital Account for each Member on a cumulative basis in accordance with federal income tax accounting principles.

10.4    Banking. All funds of the Company will be deposited in a separate bank account or in an account or accounts of a savings and loan association in the name of the Company as determined by a Majority of the Members. Company funds will be invested or deposited with an institution, the accounts or deposits of which are insured or guaranteed by an agency of the United States government. All expenses and checks shall be authorized and signed by Zhi Rong Lin.

10.5    Bookkeeping. Zhi Rong Lin is in charge of the business accounting and book keeping.

11.    Transfer of Membership Interest

11.1    Sale or Encumbrance Prohibited. Except as otherwise permitted in this Agreement, no Member may voluntarily or involuntarily transfer, sell, convey, encumber, pledge, assign, or otherwise dispose of (collectively, "Transfer") an interest in the Company without the prior written consent of a majority of the other nontransferring Members determined on a per capita basis.

11.2    Right of First Refusal. Notwithstanding Paragraph11.1, a Member may transfer all or any part of the Member's interest in the Company (the "Interest") as follows:

11.2.1    The Member desiring to transfer his or her Interest first must provide written notice (the "Notice") to the other Members, specifying the price and terms on which the Member is prepared to sell the Interest (the "Offer").

11.2.2    For a period of 30 days after receipt of the Notice, the Members may acquire all, but not less than all, of the Interest at the price and under the terms specified in the Offer. If the other Members desiring to acquire the Interest cannot agree among themselves on the allocation of the Interest among them, the allocation will be proportional to the Ownership Interests of those Members desiring to acquire the interest.

11.2.3    Closing of the sale of the Interest will occur as stated in the Offer; provided, however, that the closing will not be less than 45 days after expiration of the 30-day notice period.

11.2.4    If the other Members fail or refuse to notify the transferring Member of their desire to acquire all of the Interest proposed to be transferred within the 30-day period following receipt of the Notice, then the Members will be deemed to have waived their right to acquire the Interest on the terms described in the Offer, and the transferring Member may sell and convey the Interest consistent with the Offer to any other person or entity; provided, however, that notwithstanding anything in Paragraph

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM

NYSCEF DOC. NO. 14

INDEX NO. 704356/2019

RECEIVED NYSCEF: 03/13/2019

11.2 to the contrary, should the sale to a third person be at a price or on terms that are more favorable to the purchaser than stated in the Offer, then the transferring Member must reoffer the sale of the Interest to the remaining Members at that other price or other terms; provided, further, that if the sale to a third person is not closed within six months after the expiration of the 30-day period describe above, then the provisions of Paragraph 11.2 will again apply to the Interest proposed to be sold or conveyed.

       11.2.5  Notwithstanding the foregoing provisions of Paragraph 11.2, should the sole remaining Member be entitled to and elect to acquire all the Interests of the other Members of the Company in accordance with the provisions of Paragraph 11.2, the acquiring Member may assign the right to acquire the Interests to a spouse, lineal descendent, or an affiliated entity if the assignment is reasonably believed to be necessary to continue the existence of the Company as a limited liability company.

    11.3  Substituted Parties. Any transfer in which the Transferee becomes a fully substituted Member is not permitted unless and until:

       (1)  The transferor and assignee execute and deliver to the Company the documents and instruments of conveyance necessary or appropriate in the opinion of counsel to the Company to effect the transfer and to confirm the agreement of the permitted assignee to be bound by the provisions of this Agreement; and

       (2)  The transferor furnishes to the Company an opinion of counsel, satisfactory to the Company, that the transfer will not cause the Company to terminate for federal income tax purposes or that any termination is not adverse to the Company or the other Members.

    11.4  Death, Incompetency, or Bankruptcy of Member. On the death, adjudicated incompetence, or bankruptcy of a Member, unless the Company exercises its rights under Paragraph 11.5, the successor in interest to the Member (whether an estate, bankruptcy trustee, or otherwise) will receive only the economic right to receive distributions whenever made by the Company and the Member's allocable share of taxable income, gain, loss, deduction, and credit (the "Economic Rights") unless and until a majority of the other Members determined on a per capita basis admit the transferee as a fully substituted Member in accordance with the provisions of Paragraph 11.3.

       11.4.1  Any transfer of Economic Rights pursuant to Paragraph 11.4 will not include any right to participate in management of the Company, including any right to vote, consent to, and will not include any right to information on the Company or its operations or financial condition. Following any transfer of only the Economic Rights of a Member's Interest in the Company, the transferring Member's power and right to vote or consent to any matter submitted to the Members will be eliminated, and the Ownership Interests of the remaining Members, for purposes only of such votes, consents, and participation in management, will be proportionately increased until such time, if any, as the transferee of the Economic Rights becomes a fully substituted Member.

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM

NYSCEF DOC. NO. 14

INDEX NO. 704356/2019

RECEIVED NYSCEF: 03/13/2019

12.    **Dissolution and Winding Up of the Company**

12.1    Dissolution. The Company will be dissolved on the happening of any of the following events:

12.1.1 Sale, transfer, or other disposition of all or substantially all of the property of the Company;

12.1.2 The agreement of all of the Members;

12.1.3 By operation of law; or

12.1.4 The death, incompetence, expulsion, or bankruptcy of a Member, or the occurrence of any event that terminates the continued membership of a Member in the Company, unless there are then remaining at least the minimum number of Members required by law and all of the remaining Members, within 120 days after the date of the event, elect to continue the business of the Company.

12.2    Winding Up. On the dissolution of the Company (if the Company is not continued), the Members must take full account of the Company's assets and liabilities, and the assets will be liquidated as promptly as is consistent with obtaining their fair value, and the proceeds, to the extent sufficient to pay the Company's obligations with respect to the liquidation, will be applied and distributed, after any gain or loss realized in connection with the liquidation has been allocated in accordance with Paragraph 6 of this Agreement, and the Members' Capital Accounts have been adjusted to reflect the allocation and all other transactions through the date of the distribution, in the following order:

12.2.1 To payment and discharge of the expenses of liquidation and of all the Company's debts and liabilities to persons or organizations other than Members;

12.2.2 To the payment and discharge of any Company debts and liabilities owed to Members; and

12.2.3 To Members in the amount of their respective adjusted Capital Account balances on the date of distribution; provided, however, that any then-outstanding Default Advances (with interest and costs of collection) first must be repaid from distributions otherwise allocable to the Defaulting Member pursuant to Paragraph 13.2.3.

13.    **Omitted Intentionally.**

14.    **Relative Employees.** No relatives of the Members are allowed to work for the Company without written consent by a Majority in interest of the Members.

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM

INDEX NO. 704356/2019
RECEIVED NYSCEF: 03/13/2019

NYSCEF DOC. NO. 14

15.    **Amendments.**    Amendments to this Agreement may be proposed by any Member. A proposed amendment will be adopted and become effective as an amendment only on the written approval of all of the Members.

16.    **Governing Law.** This Agreement and the rights and obligations of the parties under it are governed by and interpreted in accordance with the laws of the State of New York (without regard to principles of conflicts of law).

17.    **Entire Agreement; Modification.** This Agreement constitutes the entire understanding and agreement between the Members with respect to the subject matter of this Agreement. No agreements, understandings, restrictions, representations, or warranties exist between or among the members other than those in this Agreement or referred to or provided for in this Agreement. No modification or amendment of any provision of this Agreement will be binding on any Member unless in writing and signed by all the Members.

18.    **Attorney Fees.** In the event of any suit or action to enforce or interpret any provision of this Agreement (or that is based on this Agreement), the prevailing party is entitled to recover, in addition to other costs, reasonable attorney fees in connection with the suit, action, or arbitration, and in any appeals. The determination of who is the prevailing party and the amount of reasonable attorney fees to be paid to the prevailing party will be decided by the court or courts, including any appellate courts, in which the matter is tried, heard, or decided.

19.    **Further Effect.** The parties agree to execute other documents reasonably necessary to further effect and evidence the terms of this Agreement, as long as the terms and provisions of the other documents are fully consistent with the terms of this Agreement.

20.    **Severability.** If any term or provision of this Agreement is held to be void or unenforceable, that term or provision will be severed from this Agreement, the balance of the Agreement will survive, and the balance of this Agreement will be reasonably construed to carry out the intent of the parties as evidenced by the terms of this Agreement.

21.    **Captions.** The captions used in this Agreement are for the convenience of the parties only and will not be interpreted to enlarge, contract, or alter the terms and provisions of this Agreement.

22.    **Notices.** All notices required to be given by this Agreement will be in writing and will be effective when actually delivered or, if mailed, when deposited as certified mail, postage prepaid, directed to the addresses first shown above for each Member or to such other address as a Member may specify by notice given in conformance with these provisions to the other Members.

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM

NYSCEF DOC. NO. 14

INDEX NO. 704356/2019

RECEIVED NYSCEF: 03/13/2019

23.   **Preparer.** Each party represents that he or she has carefully read this agreement and understands its provisions. They all acknowledge that it is a fair agreement, and is not the result of any fraud, duress, overreaching, coercion, or undue influence exercised by any party upon the other or by any other person or persons upon either. Each party has been advised that he/she should each be represented by his/her own counsel.

IN WITNESS WHEREOF the parties have executed this Operating Agreement on the day first set forth above.

SH 168, LLC

Name:  Zhi Rong Lin
Title:   Organizer / Managing Member
          Manager

THE INITIAL MEMBER:

Zhi Rong Lin

Name:   Zhi Rong Lin
Title:  Managing Member / Manager

INDEX NO. 704356/2019

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM
NYSCEF DOC. NO. 14

RECEIVED NYSCEF: 03/13/2019

SCHEDULE A
TO THE
OPERATING AGREEMENT OF
SH 168, LLC

| Date | Member's name | Member's address | Aggregate Capital Contribution | Interest Percentage | Units |
|------|---------------|------------------|-------------------------------|--------------------|-------|
| 6/29/2017 | Zhi Rong Lin | | As per percentage | 100% | 100 |

# EXHIBIT 3

FILED: QUEENS COUNTY CLERK 06/03/2019 04:31 PM

NYSCEF DOC. NO. 33

INDEX NO. 704356/2019

RECEIVED NYSCEF: 06/03/2019

## Resolution on Zhi Rong Lin's Capacity with SH 168 LLC

In re: SH 168, LLC

To whom it may concern:

This is to certify that I helped file Articles of Incorporation for SH 168, LLC in June 2017 with the State of New York and that I did not invest in SH 168, LLC or manage SH 168, LLC.

I agree to continue to assist SH 168 LLC until the end of August 2018 and then resign from all positions with SH 168 LLC.

I further certify that I am not member or manager of SH 168, LLC and that I am not responsible for the business operation and liability of SH 168, LLC.

Xi Liang Liu and Hong Qin Jiang consent to this resolution.

Zhi Rong Lin

Xi Liang Liu

Hong Qin Jiang

Acknowledgement

State of New York  )

FILED: QUEENS COUNTY CLERK 06/03/2019 04:31 PM

NYSCEF DOC. NO. 33

INDEX NO. 704356/2019

RECEIVED NYSCEF: 06/03/2019

County of Queens )SS:

On the 24 of August 2018 before me, the undersigned, personally appeared,  Zhi Rong Lin , Xi Liang Liu and Hong Qin Jiangpersonally known to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that they executed same in their capacities, and that by their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s),   acted, executed the instrument.

Notary public

# EXHIBIT 4

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM

NYSCEF DOC. NO. 1

INDEX NO. 704356/2019

RECEIVED NYSCEF: 03/13/2019

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-----------------------------------------------------------------X
JINWU YU and SH 168, LLC

                              Plaintiffs,

        -against-

HONG QIN JIANG,

                    Defendant,

-----------------------------------------------------------------X

Index No.:
Date of Purchase:
Plaintiff designates Queens
County as the place of trial
The basis of venue is
CPLR §503

**SUMMONS**

TO THE ABOVE NAMED DEFENDANTS:

      **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated: Queens, New York
       March 11, 2019

                                 /s/ William X. Zou

                                 By: William X. Zou, Esq.
                                 Law office of Xian Feng Zou
                                 Attorney for Plaintiffs
                                 136-20 38th Avenue, Suite 10D
                                 Flushing, NY 11354
                                 (718) 661-9562

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM
NYSCEF DOC. NO. 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

------------------------------------------------------------X

JINWU YU, and SH 168, LLC,

                Plaintiffs,

     -against-

HONG QIN JIANG,

              Defendant,

------------------------------------------------------------X

Index No.:

**VERIFIED COMPLAINT**

Plaintiffs herein, by and through their attorney, Law Offices of Xian Feng Zou, do hereby allege as follows:

## THE PARTIES

1.    That at all times herein mentioned, Plaintiff Jinwu Yu ("WU") is a resident of the County of Queens, State of New York.

2.    Plaintiff SH 168, LLC ("SH168") is a limited liability company duly incorporated in the State of New York.

3.    That at all times herein mentioned, SH168 is the owner of a building located at 142-28/30 38th Avenue, Flushing, NY 11354 (the "Premises").

4.    Upon information and belief, Defendant Hong Qin Jiang ("JIANG") is a resident of the State of New York.

5.    The Court has jurisdiction over the subject matter of this action and the parties. The matter in controversy exceeds $25,000.00, exclusive of interest and costs and Plaintiff and Defendant reside in New York State.

6.    Venue is proper in the designated county, as one or more of the parties reside in and/or maintain a place of business in Queens County.

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM
NYSCEF DOC. NO. 1

## FACTS COMMON TO ALL COUNTS

7.  In or about August 2016, on behalf of a legal entity Shirokia Development LLC (the "Debtor"), the Defendant filed a chapter 11 petition with the U.S. Bankruptcy Court for the Eastern District of New York.

8.  Pursuant to a bankruptcy Court Order Confirming Debtor's First Amended Joint Chapter 11 Plan of Reorganization Pursuant to 11 U.S.C. Section 1129, the Debtor sold its property located at 142-28 /32 38 Avenue, Flushing, NY 11354 (the "Premises") to Plaintiff SH 168 for the sum of $25,000,000.00 on August 22, 2017.

9.  The Premises consists of 23 residential apartments, 4 commercial / community facility units and 47 parking spaces. It was approved as a condominium building in or about August 2007 as Shirokia Tower Condominium. However, due to Defendant's repeated violation of the New York Executive Law ("Executive Law") §63(12) and the Martin Act, New York General Business Law § 352, N.Y. Real Property Tax Law and New York City Administrative Codes, the Office of the Attorney General of the State of New York (the "OAG") conducted at least two investigations and found the Defendant in violations and revoked the approval of condominium.

10.  As part of the Debtor's bankruptcy Plan, Defendant personally and the Debtor entered into an Assurance of Discontinuance with the OAG on August 21, 2017.

11.  In such Assurance, it is clear that the OAG filed a Proof of Claim in the sum of $910,750.00. In order to induce the OAG's consent to sell the Premises to Plaintiff SH 168, LLC herein and to reduce its Proof of Claim, the Defendant herein represented to the OAG that "(i)n the course of settling OAG's claims through this Assurance, Respondent Jiang represented to the OAG that, other than the $150,000

INDEX NO. 704356/2019
FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 03/13/2019

Escrow, she did not have sufficient assets to satisfy the OAG's Claims", that "(r)espondent Jiang also represented to the OAG that she would not financially benefit from the sale of the 142-28 38th Avenue property or otherwise be provided with any proceeds or value now or in the future from any the sale of the property", that "OAG explicitly relied upon the representations by Respondent Jiang in paragraphs 43 and 44 above when it agreed to enter into this Assurance."

12.    Paragraphs 49 and 50 of the Assurance actually enjoin and restrain the Defendant permanently from engaging in marketing, selling or offering for sale to the public any securities constituting participation interests or investments in real estate, including condominium or cooperative apartments which SH 168, LLC is trying to reinstate its condominium approval.

13.    Therefore, after the sale of the Premises to Plaintiff SH 168 LLC, Defendant not only did not and does not have any interests in the Plaintiff SH 168 LLC, it is also against her own representations to the OAG's office.

14.    However, on or about December 4, 2018, the Defendant delusionally acted as the member of the Debtor, Shirokia Development LLC, and issued about seven (7) Ten (10) Day Notice to Quit upon about 7 tenants in the Premises.

15.    Plaintiffs had to engage a counsel to write to the Defendant. After Plaintiffs' counsel wrote her a letter and provided her a copy of the Deed showing the sale, her counsel agreed to withdraw such notices.

16.    Surprisingly after such withdrawal, the Defendant again illusively claimed that she is a member of SH 168 LLC and commenced seven (7) summary proceedings in

the Civil Court of the City of New York, County of Queens to evict about 7 tenants in the Premises.

17.    Such proceedings have been adjourned to March 18, 2019 for this Court to adjudicate an Order to Show Cause for a stay.

18.    The Defendant did not and does not have any authority to act on behalf of SH 168 LLC. She was not and is not a member, nor was she or is she an officer of SH 168, LLC.

19.    When the Debtor sold the Premises to Plaintiff SH 168 LLC, SH 168 LLC was owned solely by Mr. Zhi Rong Lin, he signed the RP-5217 NYC form, Affidavit of Compliance with Smoke Detector Requirement, NYC DEP Customer Registration Form for Water and Sewer Billing on behalf of SH 168 LLC as its member.

20.    When Plaintiff SH 168 LLC bought the Premises, it also took a mortgage in the sum of $15,000,000.00 from MIOF Credit 1 LLC, Mr. Lin signed the mortgage agreement on behalf of SH 168 LLC.

21.    The Filing Receipt and Articles of Organization of SH 168, LLC all show Mr. Lin as the Incorporator and Organizer.

22.    The FEIN issued by the Department of the Treasury Internal Revenue Service shows Mr. Lin as the sole member.

23.    The initial Operating Agreement of SH 168, LLC shows Mr. Lin as the member owning 100% membership interests as of June 29, 2017.

24.    On or about October 24, 2018, Mr. Lin transferred all his membership interests to YU and Mr. Aiguang Chen with 74% to YU and 26% to Mr. Aiguang Chen.

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM
NYSCEF DOC. NO. 1

INDEX NO. 704356/2019
RECEIVED NYSCEF: 03/13/2019

25.    Subsequently, Mr. Chen and YU entered into a First Amended and Restated Operating Agreement of SH 168, LLC on October 24, 2018 to reflect Mr. Lin is no longer member, and that SH 168, LLC is owned by YU and Mr. Aiguang Chen with 74% owned by YU and 26% by him.

26.    Based upon foregoing, it is evidently clear that the Defendant was not and is not a member of SH 168, LLC, has no authority to act on behalf of SH 168, LLC.

## AS AND FOR THE FIRST CAUSE OF ACTION

27.    Plaintiffs repeat and reallege each and every allegation as set forth in the previous paragraphs above as if fully restated hereat.

28.    Plaintiffs pray for an order declaring the Defendant is not a member of Plaintiff SH 168, LLC and has no authority to act on behalf of Plaintiff SH 168, LLC.

29.    Plaintiffs pray for an order of injunction enjoining and restraining the Defendant from taking any action on behalf of Plaintiff SH 168, LLC.

30.    All actions or proceedings commenced by Defendant in the name of SH 168, LLC should be stayed.

## AS AND FOR THE SECOND CAUSE OF ACTION

31.    Plaintiffs repeat and reallege each and every allegation as set forth in the previous paragraphs above as if fully restated hereat.

32.    Under the disguise of SH 168, LLC, the Defendant has been attempting to collect rent from some of the tenants at the Premises and has in fact collected some rent under false pretense, she should be ordered to account for them and turn them over to SH 168, LLC.

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM

NYSCEF DOC. NO. 1

INDEX NO. 704356/2019

RECEIVED NYSCEF: 03/13/2019

33.    Defendant has been misrepresenting to tenants at the Premises that she is the sole member of SH 168, LLC with the sole intention to steal monies from the tenants and SH 168 LLC. Her misrepresentation has caused confusion and disturbance to the tenants and subjected the Plaintiff to irreparable harm to its goodwill and reputation. Some tenants refused to pay rent, some tenants expressed intention to move out. If the tenants move out, it will be difficult for the Plaintiff to find suitable acceptable tenants. Tenants' complaints about SH 168, LLC will irreparably damage and harm SH 168, LLC's goodwill and reputation causing it difficult to rent out its apartments and other units.

34.    Plaintiffs pray for an order compelling the Defendant to full accounting of rent collected by her and turnover of such rent to the Plaintiff SH 168, LLC.

35.    The Plaintiffs lack adequate remedy at law.

36.    Plaintiffs' attempts to stop the Defendant has been futile.

**WHEREFORE,** Plaintiffs demand judgment as follows:

1.    Against the Defendant and in favor of all Plaintiffs for the amount of the damages sustained by all Plaintiffs as a result of the Defendant's actions in a sum to be determined at trial but believed to be no less than $500,000.00;

2.    Compel the Defendant to provide full accounting of the rent and turnover of rent collected by her from the Plaintiffs' tenants;

3.    Grant the Plaintiffs injunctive relief as follows:

1)    Enjoining and restraining the Defendant or any third party acting on her behalf or in concert with her from acting on behalf of the Plaintiff SH 168, LLC or to interfering with the business of SH 168, LLC in any manner;

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM
NYSCEF DOC. NO. 1

INDEX NO. 704356/2019
RECEIVED NYSCEF: 03/13/2019

2)      Enjoining and restraining Defendant or any third party acting on her behalf or in concert with her from collecting rent or additional rent payment from any tenants, occupants, lessees, licensees or anybody occupying any space or unit located at the building known as 142-28/30 38 Avenue, Flushing, NY 11354 (the "Premises");

3)      Staying any and all summary proceedings commenced by the Defendant under the name of SH 168, LLC, during the pendency of this action, including but not limited to the following seven (7) proceedings:

(1)    SH 168 LLC v. John Doe and Jane Doe, Index No.: LT-051243-19/QU, pending before Civil Court of the City of New York, County of Queens.

(2)    SH 168 LLC v. Ai Yeuh Chang, John Doe and Jane Doe, Index No.: LT-051244-19/QU, pending before Civil Court of the City of New York, County of Queens.

(3)    SH 168 LLC v. John Doe and Jane Doe, Index No.: LT-051245-19/QU, pending before Civil Court of the City of New York, County of Queens.

(4)    SH 168 LLC v. John Doe and Jane Doe, Index No.: LT-051246-19/QU, pending before Civil Court of the City of New York, County of Queens.

(5)    SH 168 LLC v. John Doe and Jane Doe, Index No.: LT-051247-19/QU, pending before Civil Court of the City of New York, County of Queens.

INDEX NO. 704356/2019
RECEIVED NYSCEF: 03/13/2019

(6)    SH 168 LLC v. John Doe and Jane Doe, Index No.: LT-051248-19/QU, pending before Civil Court of the City of New York, County of Queens.

(7)    SH 168 LLC v. John Doe and Jane Doe, Index No.: LT-051249-19/QU, pending before Civil Court of the City of New York, County of Queens.

4).    Enjoining and restraining the Defendant or any third party acting on her behalf or in concert with her from withdrawing, liquidating, selling, transferring, removing, borrowing against, disposing of, pledging or otherwise hypothecating or encumbering any monies, stocks, shares, bonds, financial instruments or corporate assets of any nature, including but not limited to real estate, vehicles, equipment, inventory, supplies, accounts receivable, customer's list, business checking accounts, business savings accounts/certificates of deposit and other financial instruments held in or by any bank, brokerage, financial advisor or similar financial institution, which items are the property of, under the control of, or which are held by and/or for Plaintiff SH 168, LLC;

5).    Compelling and ordering the Defendant to account for all rent and/or additional rent collected from any tenants, occupants, lessees, licensees or anybody occupying any space or unit located at the Building and ordering Defendant to turn over such receipts to the Plaintiff SH 168, LLC;

4.    Award Plaintiffs costs, interest, and attorneys fees in connection with this action; and

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM
NYSCEF DOC. NO. 1

INDEX NO. 704356/2019
RECEIVED NYSCEF: 03/13/2019

5.    Grant such other and further relief as the Court may deem just and

equitable.

Dated: Queens, New York
       March 11, 2019

/s/ William X. Zou
_____
By: William X. Zou, Esq.
Law office of Xian Feng Zou
Attorney for Plaintiffs
136-20 38th Avenue, Suite 10D
Flushing, NY 11354
(718) 661-9562

INDEX NO. 704356/2019
RECEIVED NYSCEF: 03/13/2019

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM
NYSCEF DOC. NO. 1

# VERIFICATION

STATE OF NEW YORK)
COUNTY OF QUEENS)          ss:

Jin Wu Yu,  being duly sworn, says: I am the Managing Member of Plaintiff in the within action, I have read the foregoing Verified Complaint and know the contents thereof, the contents are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true. The source of my information and belief is the books and records maintained by the Plaintiff. This verification is made by deponent because the Plaintiff is a limited liability company and I am the Managing Member thereof.

_____
Jin Wu Yu

Sworn to before me on this
11th   day of March, 2019

_____
Notary Public

XIANFENG ZOU
Notary Public, State of New York
No. 02ZO6003042
Qualified in Queens County
Commission Expires February 23, 20 2 2

# EXHIBIT 5

**FILED: QUEENS COUNTY CLERK 01/27/2020 10:18 PM**
NYSCEF DOC. NO. 140

INDEX NO. 704356/2019

RECEIVED NYSCEF: 01/27/2020

## MEMBERSHIP PURCHASE AGREEMENT
### Of
### SH 168, LLC

THIS AGREEMENT made and effective as of ___10 / 24___, 2018, by and between **Zhi Rong Lin**, residing at 2784 E 16th Street, Brooklyn, NY 11235 (the "Seller") and **Aiguang Chen**, residing at 147-11 3rd Avenue, Whitestone, NY 11357 and **Jinwu Yu**, residing at 142-28 38 Avenue, #7A, Flushing, NY 11354 (hereinafter collectively referred to as the "Buyer").

### WITNESSETH

**WHEREAS,** the Seller owns 100% of the membership interests in **SH 168, LLC,** a New York limited liability company (the "LLC"); and

**WHEREAS,** the Seller desires to sell to the Buyer all of the Seller's interest in the LLC, i.e., 100% membership interest of the LLC owned by the Seller, and the Buyer desires to purchase a 100% membership interest in the LLC (collectively "Purchased LLC Interest"), subject to the provisions of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises herein contained and for other good and valuable consideration, receipt of which is acknowledged, and subject to the terms, conditions, and provisions hereof, the parties agree as follows:

1. <u>Sale of LLC Interest</u>. Subject to the provisions of this Agreement, Seller hereby agrees to sell to Buyer and the Buyer agrees to purchase from the Seller the Purchased LLC Interest with 26% to Buyer Aiguang Chen and 74% to Buyer Jinwu Yu.

2. <u>Purchase Price</u>. The purchase price for the Purchased LLC Interest purchased hereunder shall be **Ten ($10.00)** (the "Purchase Price").

Simultaneously with the execution of this Agreement (a) Seller shall transfer the Purchased LLC Interest duly endorsed, subject to all exiting liens and mortgages against the LLC, in the form of Seller's assignment attached hereto as **Exhibit A** and made a part hereof ("Assignment") and (b) the Buyer shall pay to Seller the Purchase Price.

3. <u>Representation of Value</u>. Neither the Seller nor the Buyer make any representation or warranty as to the value of the membership interest purchased hereunder or the value of the assets and properties of the LLC. No party is relying upon any other party with regard to such matters, other than the warranties of title to the Purchased LLC Interest.

4. <u>Representations and Warranties of Seller</u>. The Seller represent, warrant, and agree for the membership interest they are selling hereunder as follows:

    (a) <u>Title</u>. Seller is the sole owner and holder of the issued and outstanding membership interests in the LLC to be purchased by Buyer hereunder. Such membership

*Sh 168 llc. agreement*




FILED: QUEENS COUNTY CLERK 01/27/2020 10:18 PM

NYSCEF DOC. NO. 140

INDEX NO. 704356/2019

RECEIVED NYSCEF: 01/27/2020

interests are owned by Seller free and clear of any liens, charges, encumbrances, restricting agreements, and assessments, except for existing liens and mortgages against the LLC, including but not limited to, the first mortgage loan encumbering the premises under which the LLC is the obligor (the "Premises"). Upon the transfer and delivery of the Purchased LLC Interest to the Buyer hereunder, the Buyer will receive good and absolute title thereto, subject to the provisions of this Agreement and applicable federal and state securities laws.

(b) _Authority to Perform this Agreement_. Seller has the full power and authority to execute, deliver and perform this Agreement. The party executing this Agreement on behalf of Seller has the power and authority to bind the Seller to the obligations under this Agreement.

(c) _Absence of Other Warranties._ No other representations or warranties, expressed or implied, as to the condition of the LLC, its assets, properties, businesses, or prospects, financially, operationally or otherwise, have been made or are made by the Seller in connection with the transactions contemplated by this Agreement.

5. _Representations and Warranties of the Buyer_. The Buyer makes the following representations and warranties for the benefit of the Seller as of the date hereof:

(a) _Authority to Perform this Agreement_. The Buyer has full power and authority to execute, deliver, and perform this Agreement.

(b) _Investment Representations and Warranties_. The Buyer understands that the offer and sale of the membership interests of the LLC is not registered with the Securities and Exchange Commission or the securities authority of any state or jurisdiction; but the offer and sale is made instead in reliance upon an exemption from registration commonly referred to as the "Private Placement Exemption". The Buyer understands that there is no public market for the sale or other transfer of the LLC's membership interests, that none is expected to develop, and that the sale or other transfer of the LLC's membership interests is restricted by federal and state securities laws and by the terms of the offer and sale. The Buyer understands that he may be required to bear the economic risk of the investment indefinitely. The Buyer is acquiring the membership interest for investment for his own account and not for the purpose of resale, division, fractionalization, or distribution. The Buyer does not have a present or foreseeable need for the cash invested in the membership interests and, if the Buyer has borrowed all or a portion of the cash so invested, he believes that he will have the ability to repay such borrowing without selling the membership interests.

6. _Mutual Representations and Warranties_. Each of the Buyer and Seller represents and warrants that:

(a) he/she/it has had the opportunity to obtain the advice of his/her/its own independent lawyer and accountant before signing this Agreement and any document or instrument related hereto;

_Sh 168 llc. agreement_

FILED: QUEENS COUNTY CLERK 01/27/2020 10:18 PM

NYSCEF DOC. NO. 140

INDEX NO. 704356/2019

RECEIVED NYSCEF: 01/27/2020

(b) the terms and conditions of this Agreement are fair, adequate, reasonable and just; and

(c) neither the execution nor the delivery of this Agreement nor the consummation of the transactions contemplated hereby will conflict with or result in any violation of or constitute a default under any term of the Articles of Organization of the LLC, the Operating Agreement of the LLC or any agreement, contract, loan, mortgage, indenture, license, permit, lease, judgment, decree, order, law, regulation or instrument by which the LLC is bound, except as set forth in this Agreement.

(d) there are no obligations or liabilities, contingent or otherwise, for brokerage or finders' fees or agents' commissions or other similar payment which has or will arise in connection with this Agreement.

(e) any restrictive covenants limiting or restricting competition by and between Buyer and Seller which may be contained in the Operating Agreement of the LLC shall be released.

(f) any income or losses of the LLC which shall accrue on or after the date hereof and which would have been attributable to Seller but for the terms of this Agreement, shall be assigned to Buyer. All related tax obligations, liabilities and benefits arising from such income or losses shall be transferred to and/or assigned to Buyer. To the extent that any income is allocated to Seller after the date hereof but not distributed to Seller, an amount equal to the income tax owed on the allocated amount shall be paid to Seller. Seller shall receive an accounting of all income attributed to it under the preceding sentence.

7. <u>Authority</u>. Each party represents and warrants that he/she/it has the full right, power and capacity to execute and deliver this Agreement and to consummate the transactions contemplated hereby. All authorizations and approvals that are necessary in connection with the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby by the parties will have been obtained prior to the Closing. This Agreement is a valid and binding obligation of each party, enforceable in accordance with its terms.

8. <u>Other Agreements.</u> The parties agree and acknowledge that there are no agreements restricting the Seller' right to freely transfer his/her/its membership interests in the LLC. Accordingly, Seller may transfer his/her/its membership interests in the LLC to Buyer pursuant to this Agreement. If there are such agreement restricting the Seller's right to freely transfer his/her/its membership interests in the LLC, this Agreement is subject to and conditioned upon the consent of the LLC and all members of the LLC.

9. <u>Indemnity</u>: Seller shall indemnify and hold harmless Buyer of and from any third party claims, liability, costs and expenses including, without limitation, reasonable attorneys fees and disbursements incurred by Buyer relating solely to the Purchased LLC Interest arising prior

*Sh 168 llc. agreement*

FILED: QUEENS COUNTY CLERK 01/27/2020 10:18 PM
NYSCEF DOC. NO. 140

INDEX NO. 704356/2019
RECEIVED NYSCEF: 01/27/2020

to the date hereof in connection with the LLC or the Premises or the ownership and management of the Premises or any obligations arising under the Operating Agreement. Buyer shall have the right to offset any sums owing to Buyer under the foregoing indemnity against any income or other sums due and owing to Seller from Buyer or any entity owned and/or controlled by Buyer. Buyer shall indemnify and hold harmless Seller of and from any third party claims, liability, costs and expenses including, without limitation, reasonable attorneys fees and disbursements incurred by Seller relating to the Purchased LLC Interest arising from and after the date hereof in connection with the LLC or the Premises or the ownership and management of the Premises or any obligations arising under the Operating Agreement, including but not limited to claims under Section 13 of the Lien Law, except for any such claims, liabilities costs and expenses arising from any breach by Seller of its warranty and representation in Paragraph 4 of this Agreement. The provisions of this Paragraph shall survive the closing of the transaction contemplated by this Agreement.

10. Waivers and Notices. Any failure by either party to this Agreement to comply with any of its obligations, agreements or covenants hereunder may be waived only in writing by the Seller, in the case of a default by the Buyer or Buyer, and by the Buyer, in the case of a default by the Seller.

11. Amendment and Construction. This Agreement cannot be amended orally but only by a writing executed by the Seller and the Buyer. This Agreement is made and shall be construed under the laws of the State of New York. The paragraph headings used in this Agreement are for convenient reference only and shall not be resorted to for purposes of interpreting any provision of this Agreement. This Agreement shall not be presumptively construed against any party.

12. Benefit. This Agreement is binding upon and shall inure to the benefit of the parties hereto and their respective heirs, successors and assigns.

13. Survival. The representations, warranties, promises, covenants, agreements, indemnities, and undertakings of the parties contained in this Agreement, and certificates and documents delivered hereunder shall survive the Closing.

14. Exhibits; Entire Agreement. All Exhibits to this Agreement are incorporated herein and are made a part of this Agreement. Any reference to "this Agreement" contained in this Agreement shall mean this Agreement and all Exhibits which are attached hereto. This Agreement and the Exhibits which are attached hereto contain the entire Agreement of the parties and supersede and replace all prior Agreements or understandings between the parties, whether written or oral, relating to the subject matter of this Agreement.

15. Counterpart. This Agreement may be executed in counterparts, each of which when executed and delivered as prescribed shall constitute an original, but all of which taken together shall constitute one agreement. This Agreement may be legally delivered when an executed counterpart has been transmitted via telecopier or email by one party to the other or the other's legal counsel.

*Sh 168 llc. agreement*

FILED: QUEENS COUNTY CLERK 01/27/2020 10:18 PM

NYSCEF DOC. NO. 140

INDEX NO. 704356/2019

RECEIVED NYSCEF: 01/27/2020

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals as of the day and year first above written.

**SELLER :**

Zhi Rong Lin

**BUYER:**

Aiguang Chen

Jinwu Yu

*Sh 168 llc. agreement*

## EXHIBIT A
## ASSIGNMENT AND TRANSFER OF MEMBERSHIP INTEREST

This ASSIGNMENT AND TRANSFER OF MEMBERSHIP INTEREST is entered into effective as of the 2 ↑ day of October, 2018 by and between Zhi Rong Lin, an individual having an address at 2784 E 16th Street, Brooklyn, NY 11235 (the "Assignor"), Aiguang Chen residing at 147-11 3rd Avenue, Whitestone, NY 11357 (hereinafter referred collectively as the "Assignee").

## WHEREAS

A.   Assignor currently owns 26% of the issued and outstanding membership interests in **SH 168, LLC , a NEW YORK** limited liability company (the "LLC"); and

B.     Assignor desires to assign to Assignee all his right, title and interest in and to a 26% membership interest in the LLC (collectively "Purchased LLC Interest") pursuant to the terms of that certain LLC Purchase Agreement, dated the date hereof, between Assignor and Assignee (the "Purchase Agreement").

NOW, THEREFORE, in consideration of the mutual benefits to be derived by the parties herein, it is agreed as follows:

1. Assignor hereby transfers, conveys and assigns the Purchased LLC Interest to Assignee in consideration of the sum of **TEN AND 00/100 DOLLARS ($10.00)** (the "Purchase Price") being paid simultaneously with this execution of this Assignment, subject to adjustment as reconciliation as set forth in the Purchase Agreement.

2. Assignee hereby accepts such assignment and agrees to be bound by all of the provisions of the Operating Agreement of the LLC.

ZRL
JWY

*Sh 168 llc. agreement*

FILED: QUEENS COUNTY CLERK 01/27/2020 10:18 PM

NYSCEF DOC. NO. 140

INDEX NO. 704356/2019

RECEIVED NYSCEF: 01/27/2020

3. This Assignment, together with the Purchase Agreement sets forth the entire understanding and agreement between the parties with respect to the subject matter hereof, and shall be governed in accordance with the laws of the State of New York, without giving effect to the principles of conflicts of laws.

4. This Assignment may be executed in counterparts, each of which when executed and delivered as prescribed shall constitute an original, but all of which taken together shall constitute one agreement. This Assignment may be legally delivered when an executed counterpart has been transmitted via telecopier or email by one party to the other or the other's legal counsel.

ASSIGNOR:                                      ASSIGNEE:


_Zhi Rong Lin_                                 _Aiguang Chen_
Zhi Rong Lin                                   Aiguang Chen


_Sh 168 llc. agreement_

FILED: QUEENS COUNTY CLERK 01/27/2020 10:18 PM

NYSCEF DOC. NO. 140

INDEX NO. 704356/2019

RECEIVED NYSCEF: 01/27/2020

# STOCK (MEMBERSHIP INTEREST) POWER
## OF
## SH 168, LLC

For value received, I, Zhi Rong Lin, hereby sell, assign and transfer unto Aiguang Chen 26% Membership Interests represented by a Membership Certificate No. ___, and do hereby irrevocably constitute and appoint, Aiguang Chen as attorney to transfer the said membership units on the books of the within named limited liability company, SH 168, LLC with full power of substitution in the premises.

Dated: _10/2 4/2018_

_____
Zhi Rong Lin

Witness: _____

*Sh 168 llc. agreement*

FILED: QUEENS COUNTY CLERK 01/27/2020 10:18 PM

INDEX NO. 704356/2019

NYSCEF DOC. NO. 140

RECEIVED NYSCEF: 01/27/2020

## ASSIGNMENT AND TRANSFER OF MEMBERSHIP INTEREST

This ASSIGNMENT AND TRANSFER OF MEMBERSHIP INTEREST is entered into effective as of the 2⟨⟨ day of October, 2018 by and between Zhi Rong Lin, an individual having an address at 2784 E 16th Street, Brooklyn, NY 11235 (the "Assignor"), **Jinwu Yu**, residing at 142-28 38 Avenue, #7A, Flushing, NY 11354 (hereinafter referred collectively as the "Assignee").

## WHEREAS

A.  Assignor currently owns 10% of the issued and outstanding membership interests in **SH 168, LLC , a NEW YORK** limited liability company (the "LLC"); and

B.    Assignor desires to assign to Assignee all her right, title and interest in and to a 74% membership interest in the LLC (collectively "Purchased LLC Interest") pursuant to the terms of that certain LLC Purchase Agreement, dated the date hereof, between Assignor and Assignee (the "Purchase Agreement").

NOW, THEREFORE, in consideration of the mutual benefits to be derived by the parties herein, it is agreed as follows:

1. Assignor hereby transfers, conveys and assigns the Purchased LLC Interest to Assignee in consideration of the sum of **TEN AND 00/100 DOLLARS ($10.00)** (the "Purchase Price") being paid simultaneously with this execution of this Assignment, subject to adjustment as reconciliation as set forth in the Purchase Agreement.

2. Assignee hereby accepts such assignment and agrees to be bound by all of the provisions of the Operating Agreement of the LLC.

2 RL

JW Y

*Sh 168 llc. agreement*

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM

NYSCEF DOC. NO. 14

INDEX NO. 704356/2019

RECEIVED NYSCEF: 03/13/2019

Exhibit I

FILED: QUEENS COUNTY CLERK 01/27/2020 10:18 PM
NYSCEF DOC. NO. 140

INDEX NO. 704356/2019
RECEIVED NYSCEF: 01/27/2020

## STOCK (MEMBERSHIP INTEREST) POWER
## OF
## SH 168, LLC

For value received, I, Zhi Rong Lin, hereby sell, assign and transfer unto Jinwu Yu 74% Membership interests and hereby appoint Jinwu Yu as attorney to transfer the said membership units on the books of the within named limited liability company, SH 168, LLC with full power of substitution in the premises.

Dated: 10/24/2018

Zhi Rong Lin

Witness:

*Sh 168 llc. agreement*

AGC                    JWY

FILED: QUEENS COUNTY CLERK 03/13/2019 11:48 AM

NYSCEF DOC. NO. 14

INDEX NO. 704356/2019

RECEIVED NYSCEF: 03/13/2019

Exhibit I

# EXHIBIT 6

INDEX NO. 704356/2019

FILED: QUEENS COUNTY CLERK 01/27/2020 10:18 PM

NYSCEF DOC. NO. 136

RECEIVED NYSCEF: 01/27/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
------------------------------------------------------------X
JINWU YU and SH 168 LLC,

               Plaintiffs,

         -against-

HONG QIN JIANG,

              Defendant.

------------------------------------------------------------X

Index No. 704356/19

AFFIDAVIT IN OPPOSITION
TO MOTION

     STATE OF NEW YORK   )
                       ) SS.:
     COUNTY OF NEW YORK )

     ZHI RONG LIN, being duly sworn, deposes and says:

     1.  I was the sole member of Plaintiff SH 168 LLC at the time of its formation and filing. As such, I have personal knowledge of facts and circumstances alleged herein. I make this affidavit in opposition to Plaintiff's motion.

     2.  I wish to note at the outset that Plaintiffs' allegation that I have transferred membership interest in SH 168 LLC to Jinwu Yu and to Aiguang Chen is an absolute falsehood. **I have never transferred any membership interest in SH 168 LLC to either of those individuals**.

     3.  I have been advised that Plaintiffs have exhibited the following documentation to their moving papers: i) A Membership Purchase Agreement of SH 168 LLC dated on October 24, 2018 in which it is purported that I transferred membership interest to Yu and Chen and which purports to have been signed by myself, Yu and Chen; ii) an Assignment and Transfer of Membership Interest dated on October 24, 2018 in which it is purported that I transferred 26% of the membership interest to Chen and which

# EXHIBIT 7

FILED: QUEENS COUNTY CLERK 06/08/2029 06:33 PM

NYSCEF DOC. NO. 158

INDEX NO. 704356/2019

RECEIVED NYSCEF: 06/08/2029

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-------------------------------------------------------------------X
JINWU YU and SH 168 LLC,

                  Plaintiffs,

         -against-

HONG QIN JIANG,

                  Defendant.

-------------------------------------------------------------------X

Index No. 704356/19

AFFIDAVIT IN OPPOSITION
TO MOTION

      STATE OF NEW YORK    )
                            ) SS.:
      COUNTY OF NEW YORK  )

      HONG QIN JIANG, being duly sworn, deposes and says:

      1.  I am the Defendant in this action. I also manage the affairs of Plaintiff SH 168

LLC. As such, I have personal knowledge of facts and circumstances alleged herein. I

make this affidavit in opposition to Plaintiff's motion.

      2.  It must first be noted that Plaintiffs are pursuing relief before this Court based

upon fraudulent documentation. As can be seen by the accompanying affidavit of Zhi

Rong Lin, he has never transferred membership interest in SH 168 LLC to either Plaintiff

Jinwu Yu (who is the son of my estranged husband) or Aiguang Chen. **The

documentation to the contrary that is submitted by Plaintiffs in support of their

motion is stated by Mr. Lin to be fraudulent, with his signature thereon having been

forged.**

      3.  At the formation of SH 168 LLC, Mr. Lin, who is a friend of my brother and

FILED: QUEENS COUNTY CLERK 06/08/2029 06:33 PM

NYSCEF DOC. NO. 158

INDEX NO. 704356/2019

RECEIVED NYSCEF: 06/08/2029

who had been employed by me, became its sole member. However, it was understood that I would be the person who would control and manage its affairs. Sometime after the formation of SH 168 LLC, I was designated as its registered agent.

4.  On August 22, 2017, SH 168 LLC purchased the property known as and located at 142-28 38th Avenue, Flushing, N.Y. This property is the LLC's principal asset. I attended the closing, as did Mr. Lin. A loan was obtained to complete the transaction and a mortgage was executed as security thereon. In addition to the mortgage proceeds, I personally contributed the sum of $5,000,000.00 toward the sale proceeds. I also paid all closing costs. No individual aside from myself contributed any funds toward the closing costs or the sale proceeds. This is further evidence that I am the individual who was to manage the affairs of the LLC and of the building that is its principal asset. Indeed, I managed the affairs of the building after the closing and I continue to do so.

5.  In August, 2018, Mr. Lin executed a Resolution in which he certified that he had not invested in SH 168 LLC, had not managed SH 168 LLC, had not been a member or manager therein and was not responsible for its operations. This Resolution was intended to be his resignation as a member of the LLC and his transfer to me of the membership interests thereof. Unfortunately, my attorney erred in drafting the paperwork. Instead of drafting a formal transfer of the membership interest from Mr. Lin to myself, he instead had Mr. Lin execute the aforementioned Resolution, which he had drafted. He further drafted an Operating Agreement of SH 168 LLC which listed me as the sole member and which I executed before a notary public. However, notwithstanding this error, it is clear that it was the intention of all concerned that I be the sole member of

SH 168 LLC and that I manage its affairs and the affairs of the property which is its primary asset.

6.    All of the evidence presented clearly demonstrates that I am the true member of SH 168 LLC and that the documentation presented by Plaintiff which purports to give any interests or rights in the LLC or its property to Plaintiff Jinwu Yu and/or Aiguang Chen is fraudulent. As such, Plaintiffs' motion should be denied in its entirety.

WHEREFORE, it is respectfully requested that this Court issue an Order denying Plaintiffs' motion in all respects and granting to Defendant such other and further relief which this Court finds to be just and proper.

HONG QIN JIANG

Sworn to before me on April 18, 2019

NOTARY PUBLIC

JULIA ...
Notary Public, ... of New York
Reg. No. 01L ...
Qualified in New York County
Commission Expires July 10, 2021

# EXHIBIT 8

INDEX NO. 704088/2020

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM

NYSCEF DOC. NO. 1                                   RECEIVED NYSCEF: 03/09/2020

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF QUEENS**

------------------------------------------------------------x

ZHI RONG LIN and SH 168, LLC,                    Index No.:
                                                 Dated Filed:

                              Plaintiff,

                                                 **SUMMONS**

            -against-

                                                 Plaintiff designates Queens
JIN WU YU and AIGUANG CHEN,                      County as the place of trial.

                                                 The basis of venue: CPLR 503

------------------------------------------------------------x

            To the above named defendants:

            **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to
serve a copy of your answer, or, if the complaint is not served with this summons, to serve a
notice of appearance, on the plaintiff's attorney within 20 days after the service of this
summons, exclusive of this day of service (or within 30 days after the service is complete if
this summons is not personally delivered to you within the State of New York); and in case
of your failure to appear or answer, judgment will be taken against you for the relief
demanded in the complaint.

Dated: New York, New York
       February 29, 2020

                                    LAW OFFICES OF BING LI, LLC
                                    Attorneys for Plaintiff
                                    *Zhi Long Lin and SH 168, LLC*

                                    By:*/s/ Bing Li*_____
                                        Bing Li
                                        1430 Broadway, Suite 1802
                                        New York, NY 10018-3354
                                        (212) 967-7690
                                        bli@blillc.com

**Defendants' Addresses:**

**JIN WU YU**
38 Kensington Circle
Manhasset, NY 11030

**AI GUANG CHEN**
147-11 3rd Avenue
Whitestone, NY 11357

INDEX NO. 704088/2020

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 03/09/2020

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF QUEENS**
-------------------------------------------------------------------x
ZHI RONG LIN and SH 168, LLC,                         Index No.:

                     Plaintiffs,

                                          **VERIFIED COMPLAINT**

    -against-

JINWU YU and AIGUANG CHEN,

                    Defendants.
-------------------------------------------------------------------x

       ZHI RONG LIN ("Lin") and SH 168, LLC (the "LLC") (jointly "Plaintiffs"), by

their undersigned attorneys, for their Verified Complaint against JINWU YU ("Yu") and

AIGUANG CHEN ("Chen"), Defendants herein, allege at all time and upon information and

belief as follows:

               **NATURE OF ACTION AND CONTROLLING LAW**

    1.     Plaintiff Lin commences this action seeking a declaratory judgment declaring

that a document entitled **"Membership Purchase Agreement of SH 168, LLC"**

purportedly entered into by Lin on the one hand and Yu and Chen on the other hand and

purportedly dated **October 24, 2018**, and the Agreements attached thereto as Exhibit A

(together the "Membership Purchase Agreement"), is void *ab initio* by reason of

Defendants' forgery of Lin's signatures, and that the purported transfer of seventy-four

percent (74%) interest of Plaintiff Lin in the LLC to Defendant Yu and twenty-six percent

(26%) interest of Plaintiff Lin in the LLC to Defendant Chen respectively is void *ab inito*

as a result of Defendants' forgery of Lin's signatures.  A true copy of the Membership

Purchase Agreement together with the Exhibit A attached thereto is attached hereto as

**Exhibit 1**.

- 2 -

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM
NYSCEF DOC. NO. 1

INDEX NO. 704088/2020
RECEIVED NYSCEF: 03/09/2020

2.    **"Under State law and general contract law, a forged signature renders a contract void *ab initio*."** *Orlosky v. Empire Sec. Sys., Inc.*, 230 A.D.2d 401, 403 (3d Dept. 1997) (emphasis added). *See also Lee v. ADJMI 936 Realty Assocs.*, 46 A.D.3d 629 (2d Dept. 2007) (affirming Supreme Court order granting plaintiff's cross-motion for summary judgment for a judgment declaring that a contract was void *ab initio* because plaintiff's signature on the contract was forged) (citing *Orlosky, supra*); *Faison v. Lewis*, 25 N.Y.3d 220, 403 (2015), reiterating the long established principle that a forged deed was void *ab initio* and holding that a claim against a forged deed is not subject to a statute of limitations defense.[1]

### PARTIES, JURISDICTION AND VENUE

3.    Plaintiff Lin is a natural person residing at 2784 E. 16th Street, Brooklyn, NY 11235.

4.    Plaintiff LLC is a limited liability company organized in June 2017 under the laws of the State of New York with its principal registered address at 2784 E. 16th Street, Brooklyn, NY 11235.

5.    Defendant Yu is a natural person residing at 38 Kensington Cir, Manhasset NY 11030.

---

[1] Citing a century old precedent *Marden v. Dorthy*, 160 N.Y. 39, 53 (1899), the *Faison* Court stated (25 N.Y.3d at 403):

> In *Marden v. Dorthy,* this Court held that a forged deed was void at its inception, finding it to be a "spurious or fabricated paper" (160 N.Y. 39, 53, 54 N.E. 726 [1899]), a forgery characterized by "the fraudulent making of a writing to the prejudice of another's rights" (*id.*). As *Marden* noted, a forged deed lacks the voluntariness of conveyance (*see id.* at 54, 54 N.E. 726). Therefore, it holds a unique position in the law; a legal nullity at its creation is never entitled to legal effect because "[v]oid things are as no things" (*id.* at 56, 54 N.E. 726).

- 3 -

INDEX NO. 704088/2020

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 03/09/2020

6.     Defendant Chen is a natural person residing at 147-11 3rd Avenue, Whitestone, NY 11357.

7.     The Court has jurisdiction over the defendants pursuant to sections 301 and 302 of the Civil Practice Law and Rules ("CPLR").

8.     Venue is proper in the Supreme Court of the State of New York, County of New York, pursuant to CPLR 501.

## FACTS

### A. Lin, Jiang, and Liu

9.     Plaintiff Lin has been a New York licensed real estate sales agent since 2005.

10.     In or about 2006, Lin came to know Mr. Dinghua Jiang, who at that time operated a dry cleaner and contacted Lin to sell a condo unit of his.

11.     Ms. Hong Qin Jiang ("Jiang"), also known as Sandy Tang, is Mr. Dinghua Jiang's younger sister, living in New York.

12.     In or about 2016, Mr. Dinghua Jiang recommended Lin to his younger sister Jiang to help her with her Property management tasks.

13.     In or about July 2017, Lin came to know Mr. Xi Liang Liu ("Liu"), also known as Xi Long Yu, who was also known to Lin was married to Jiang.

14.     At the time when Lin became acquainted with Jiang and Liu, they were a married couple and were involved in real estate purchase and sale transactions.

### B. Shirokia and the Property

15.     In or about October 2004, Jiang and Liu formed Shirokia Development LLC ("Shirokia") and were the equity owners of the company.

- 4 -

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM

NYSCEF DOC. NO. 1

INDEX NO. 704088/2020

RECEIVED NYSCEF: 03/09/2020

16.    In or about May 2005, Shirokia purchased a piece of property located at 142-32 38th Avenue, Flushing (the "142-32 38th Avenue Property" or the "Property").

17.    Thereafter, Shirokia constructed the Property for a condominium building of eleven (11) stories, containing twenty-three (23) residential units, four (4) commercial units, and forty-seven (47) parking spaces.

18.    In or about 2007, Shirokia submitted an offering plan to the Office of the Attorney General of New York ("OAG") for approval to convert the building to a condominium. In connection with the condominium application, Shirokia also submitted for and eventually approved for New York City real estate tax exemption.

19.    In the process of applying for condominium approval and real estate tax exemption, the OAG investigated Shirokia's business transactions and found that Shirokia was not in compliance with the rent registration requirement and New York state rent Stabilization Law, Rent Stabilization Code, and other applicable rent regulations.

### B. Chapter 11 Plan, the Private Sale of the Property, and the LLC

20.    In December 2015, Shirokia entered into loan agreements with W Financial Fund, LP ("WFF") in the sums of $18,000,000 (the "First Loan") and $4,000,000 (the "Second Loan") respectively.

21.    In March 2016, WFF commenced a foreclosure action asking to foreclose on the First Loan and the Second Loan.

22.    In December 2016, Shirokia filed for Chapter 11 petition under the U.S. Bankruptcy Code to avoid an imminent foreclosure of the Property by WFF.

- 5 -

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM

NYSCEF DOC. NO. 1

INDEX NO. 704088/2020

RECEIVED NYSCEF: 03/09/2020

23.     The OAG submitted an claim of $910,750.00 in the bankruptcy proceeding which OAG represented was the sum total of the real estate tax abatements improperly received by Shirokia.

24.     Shirokia filed a motion in the bankruptcy court objecting to the OAG's claim.

25.     On June 21, 2017, the debtor submitted an amended Chapter 11 Plan of Reorganization (the "Plan") which provides, *inter alia*, that the "Debtors shall have the right to sell the Property pursuant to a private sale, provided such private sale shall be conditioned upon the payment in full of all unclassified and classified claims" (the "Private Sale").

26.     The Private Sale of the Property would serve the best interest of the creditors of Shirokia because it would pay in full of all unclassified and classified claims.

27.     In preparation for the Private Sale, Jiang obtained Lin's agreement to form a company to participate in the Private Sale to purchase the Property.

28.     Therefore, on June 28, 2017, Lin formed SH 168, LLC (the "LLC") using his home address as the registration address of the LLC.

29.     Lin also signed an initial Operating Agreement on June 29, 2017, which designated him as the sole member of the LLC, holding 100% of the membership interest therein, and the Managing Member of the LLC.

30.     The purchase of the Property through the Private Sale would be (and was) founded with proceeds from a mortgage and other loans obtained by Jiang.

31.     By order dated August 9, 2017, the Bankruptcy Court (Hon. Carla E. Craig, U.S.B.J.) approved the Chapter 11 Plan, which provides, *inter alia*, that the "Debtors shall

- 6 -

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM

NYSCEF DOC. NO. 1

INDEX NO. 704088/2020

RECEIVED NYSCEF: 03/09/2020

have until August 18, 2017 to close on the private sale of a portion of the Property pursuant to a pending contract of sale with SH 168, LLC for $25,000,000."

32.    As part of Debtor's bankruptcy Plan, Shirokia, another holding company owned by Jiang, and Jiang entered into an Assurance of Discontinuance with the OAG dated August 21, 2017.

### C. The LLC's purchase of the Property

33.    On August 22, 2017, the LLC purchased the Property.

34.    Lin, on behalf of the LLC, executed at the closing a mortgage agreement with MIOF Credit LLC for the amount of $15,000,000.

35.    In addition to the mortgage proceeds, Jiang personally contributed the sum of $5,000,000 to the LLC for the purchase and paid all closing related costs.

36.    After the closing, Jiang mainly managing the affairs of the building.

### D. The Resolution on Zhi Rong Lin's Capacity with SH 168 LLC

37.    On August 14, 2018, Lin executed a "Resolution on Zhi Rong Lin's Capacity with SH 168 LLC" (the "Resolution").

38.    The Resolution was drafted by an attorney, Wei Zhu, Esq., who also acknowledged Lin's execution of the document.

39.    Lin certified in the Resolution that he had not invested in the LLC, had not managed the LLC, had not been a member or Manager and was not responsible for its operations.

40.    However, Lin did not sign any formal membership interest and, despite the Resolution, Lin remained and still is the sole member of the LLC with 100% membership interest of the LLC.

- 7 -

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM
NYSCEF DOC. NO. 1

INDEX NO. 704088/2020
RECEIVED NYSCEF: 03/09/2020

### E. Yu's Civil Action against Jiang and the forged Membership<br>Transfer Agreement and Assignment Agreements

41.      On or about March 13, 2019, Defendant Yu and the LLC (SH 168, LLC)

commenced a civil action in the Supreme Court of the State of New York, Queens County,

against Jiang, Index No. 704356/2019, for a declaratory judgment that Jiang is not a

member of the LLC and for accounting (the "Yu Action").

42.      In the Yu Action, Yu alleges that "[o]n or about October 24, 2018, Mr. Lin

[Plaintiff herein] transferred all his membership interest to YU [Defendant Yu herein] and

Mr. Aiguang Chen [Defendant Chen herein] with 74% to YU and 26% to Mr. Aiguang

Chen." (Complaint, Doc. No. 1, ¶ 24)

43.      Yu also moved for an restraining order and preliminary injunctions to enjoin

Jiang from interfering with the business of the LLC, from collecting rent or additional rent

payments from the LLC's tenants, and for a stay of certain summary proceedings

commenced by Jiang on behalf of the LLC in the Civil Court of the City of New York,

Housing Part, against certain tenants of the LLC.

44.      Jiang, through counsel, opposed the motion.

45.      By order dated August 20, 2019 (Doc. No. 84), the Court, Hon. Cheree A.

Buggs, J.S.C., granted Yu's motion for injunctions and a stay.

46.      In support of his motion for injunctions, Yu stated under oath in his affidavit

dated February 29, 2019, *inter alia*, that "[o]n or about October 24, 2018, Mr. Lin

transferred all his membership interests to me and Mr. Aiguang Chen with 74% to me and

26% to Mr. Aiguang Chen.  Annexed hereto as Exhibit H is a copy of a Membership

Purchase Agreement of SH 168," (Yu Affidavit, Doc. No. 5, ¶ 18)

- 8 -

INDEX NO. 704088/2020
FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM
NYSCEF DOC. NO. 1                                                     RECEIVED NYSCEF: 03/09/2020

47.    A copy of the Membership Purchase Agreement is reproduced herein and annexed hereto as **Exhibit 1**.

48.    On April 18, 2019, Lin signed an affidavit in the Yu Action in opposition to Yu's motion for injunctions.

49.    Lin stated in the Affidavit that he **never signed** the purported Membership Purchase Agreement, or the purported Assignment and Transfer of Membership Interest to Yu or Chen respectively as Exhibit A attached thereto purportedly transferring 74% of his interest to YU and 26% of his interest to Chen respectively.  (Lin Aff., Doc. No. 46, ¶ 3)

50.    The Membership Purchase Agreement and the attached Assignments and Transfers of Membership Interest were all forged.

### (i) Lin's relationship with Chen and Yu

51.    Lin, prior to becoming aware of the forged Membership Purchase Agreement, never knew who Defendant Chen was and, to date, has never met or seen Chen before.

52.    Lin, at the time of the purported Membership Purchase Agreement of October 24, 2018, knew that Defendant Yu was Liu's son from his prior marriage, had limited contact with Yu regarding the business of the Property, and never had any interaction of personal nature.

53.    Lin had never had any meetings or discussions regarding his sale and Defendants Yu and Chen's purchase of his interest in the LLC.

- 9 -

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM
NYSCEF DOC. NO. 1

INDEX NO. 704088/2020
RECEIVED NYSCEF: 03/09/2020

## (ii) Ten dollar ($10.00) consideration for the purported transfer

54. At the time of the purported Membership Purchase Agreement of October 24, 2018, the Property was worth about $30,000,000, with a fair market net equity of about $15,000,000.

55. However, the forged Membership Purchase Agreement provides that Lin transferred his 100% interest in the LLC to Defendants Yu and Chen for a total consideration of Ten ($10.00) dollars.

56. Lin did not receive any monetary payment from either Yu or Chen for the purported membership purchase, not even the nominal $10.00.

57. There is a complete absence of any consideration running to Lin.

## (iii) Jiang's consistent management of the LLC post 10/24/2018

58. Despite the purported Membership Purchase Agreement, Jiang, with the knowledge of Lin, continued, without any interruption from either Yu or Chen, to perform her duties of management of the LLC, including serving notices to the LLC's tenants upon their default.

59. On or about December 4, 2018, Jiang, on behalf of Shirokia (mistakenly), through counsel, issued seven (7) Ten (10) Day Notice to Quit upon about seven tenants leasing premises from the Property.

60. On or about December 13, 2018, Jiang, on behalf of the LLC, through counsel, re-issued the Ten (10) Day Notice to Quit upon the tenants leasing premises from the Property.

- 10 -

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM

INDEX NO. 704088/2020

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 03/09/2020

61.    On or about January 14, 2019, Jiang, on behalf of the LLC, through counsel, commenced seven (7) summary proceedings in the Civil Court of the City of New York, County of New York, to evict about seven tenants of the LLC.

62.    Yu was fully aware of Jiang's continued management of the LLC, the issuance of the Ten Day Notice to Quit on December 4, 2018 and then on December 13, 2018.

63.    Yu did not file the civil action seeking injunctions and stay until March 13, 2019.

### (iv)  Liu's divorce action against Jiang

64.    At the time of the purported Membership Purchase Agreement of October 24, 2018, Liu and Jiang had been separated because of Liu's domestic violence and physical abuse of Jiang.  Numerous police complaints had been filed against Liu.

65.    In or about March 2019, several months after his son forged Lin's signature to make a non-existent Membership Purchase Agreement (Exhibit 1 hereto), Liu filed a divorce action against Jiang without identifying the Property as a marital asset.

66.    The forged Membership Purchase Agreement was a scheme conceived and carried out by Liu, Yu, and Chen to deprive Jiang's ownership interest in the Property and to steal the Property from Jiang in broad daylight.

### (v)  Clear signs of forgery of Lin's signatures

67.    Defendants Yu and Chen had skillfully imitated Lin's signatures to made them appear similar to Lin's authentic signatures.

68.    However, upon closer look, the forged signatures are distinctly different from Lin's genuine signatures even to an untrained eye, for example, the ending upward stroke

- 11 -

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM
NYSCEF DOC. NO. 1

INDEX NO. 704088/2020
RECEIVED NYSCEF: 03/09/2020

in the letter "g," the connection between the two letters "z" and "h," the connection

between the two letters "o" and "n," the letter "r," and the connection between the letters

"n" and "g."

69.    A side-by-side comparison of the forged signatures with Lin's genuine

signatures shows as follows:

| Forged signatures of Lin | Lin's genuine signatures |
|---|---|
|  Zhi Rong Lin **Membership Purchase Transfer 10/24/2018** |  Zhi Rong Lin **Mortgage Agreement 8/22/2017** |
|  Zhi Rong Lin **Assignment and Transfer (74%) 10/24/2018** |  Zhi Rong Lin **Mortgage & Security Agreement 8/22/2017** |
|  Zhi Rong Lin **Assignment and Transfer (26%) 10/24/2018** |  Zhi Rong Lin **Operating Agreement 6/29/2017** |

### F.  Lin's attempt to intervene in the Yu Action

70.    On October 23, 2019, Lin, by counsel, Schiller Law Group, P.C. (Chaim

Howard Berglas, Esq. appearing), submitted a motion for leave to intervene in the Yu

Action.

71.    Yu, through counsel, submitted his opposition on January 27, 2020.

72.    The motion has been submitted and is presently pending.

- 12 -

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM
NYSCEF DOC. NO. 1

INDEX NO. 704088/2020
RECEIVED NYSCEF: 03/09/2020

### G. Yu and Chen's knowledge of Lin's forgery claim against them

73.    Lin has submitted in the Yu Action that he never signed the purported Membership Purchase Agreement and the Assignment and Transfer Agreements attached thereto as Exhibit A and that these documents are forged.

74.    Jiang has submitted in the Yu Action that she contributed money to the purchase of the Property by the LLC and "[n]o individual aside from myself contributed any funds toward he closing costs or the sale proceeds."

75.    Yu is fully aware of Lin's forgery claim against him.

76.    Chen is fully aware of Lin's forgery claim against him.

77.    Despite their participation in committing the criminal forgery and their actual knowledge of Lin's forgery claim against them, Yu and Chen have refused to revoke their claims asserted in the Yu Action but persist to pursue their claims based on forged and fabricated documents.

78.    Yu and Chen have committed a colossal fraud upon this honorable Court and should not be condoned without impunity.

79.    Yu and Chen engaged in the fraudulent scheme and criminal forgery for the purpose of depriving other people's lawful property rights and evince a high degree of their moral turpitude and wanton dishonesty, for which Plaintiffs are entitled to recover punitive damages.

### AS AND FOR A FIRST COUNTERCLAIM
#### (Declaratory Judgment: Forged Agreements Void *ab initio*)

80.    Plaintiffs repeat and reallege each and every allegation made in Paragraphs "1" through "79" as if fully set forth herein.

- 13 -

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM
NYSCEF DOC. NO. 1

INDEX NO. 704088/2020
RECEIVED NYSCEF: 03/09/2020

81.    Plaintiff Lin did not sign the purported Membership Purchase Agreement, or the purported Assignment and Transfer of Membership Interest to Yu or Chen respectively, or the Stock (Membership Interest) Power of SH 168, LLC to Yu and Chen respectively, attached to the Membership Purchase Agreement as Exhibit A, purportedly transferring 74% of his interest to Yu and 26% of his interest to Chen respectively.

82.    Lin's signatures appearing on the Membership Purchase Agreement and the attached agreements were all forged by Defendants Yu and Chen.

83.    Under the law of New York State and general contract law, a forged signature renders a contract void *ab initio*.

84.    The foregoing constitutes a justifiable controversy whether or not further relief is or could be claimed.

85.    Plaintiff Lin therefore demands judgment pursuant to CPLR § 3001, declaring that the purported escrow agreement is void *ab initio*.

## AS AND FOR A SECOND COUNTERCLAIM
### (Unjust Enrichment)

86.    Plaintiffs repeat and reallege each and every allegation made in Paragraphs "1" through "85" as if fully set forth herein.

87.    Defendants Yu and Chen commenced the Yu Action in March 2019 based on the forged Membership Purchase Agreement and, by false pretense, obtained a preliminary injunction order from the Court enjoining Jiang from, at Lin's consent and approval, managing the business of the LLC and, *inter alia*, collecting monthly rental payments from the tenants.

- 14 -

INDEX NO. 704088/2020

RECEIVED NYSCEF: 03/09/2020

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM

NYSCEF DOC. NO. 1

88.   At the same time, Defendants Yu and Chen, armed with the Court's injunction order against Jiang, have been collecting all monthly rental payments from the tenants and acquiring other benefits to which they are not entitled.

89.   As a result of the foregoing, Yu and Chen have been enriched at the expense of Plaintiff in the amount to be determined at trial but no less than Two Hundred Thousand Dollars ($200,000) per month since March 2019.

90.   It is against equity and good conscience to permit Yu and Chen to retain what is sought to be recovered herein.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment against Defendant Yu and Defendant Chen as follows:

(a)   On the First Cause of Action, declaring that the Membership Purchase Agreement and the Agreements attached thereto as Exhibit A (together the "Membership Purchase Agreement") (**Exhibit 1** attached hereto) is void *ab initio* by reason of Defendants' forgery of Lin's signatures, and that the purported transfer of seventy-four percent (74%) interest of Plaintiff Lin in the LLC to Defendant Yu and twenty-six percent (26%) interest of Plaintiff Lin in the LLC to Defendant Chen respectively is void *ab initio* as a result of Defendants' forgery of Lin's signatures;

(b)   On the Second Cause of Action, awarding Plaintiff SH 168, LLC monetary judgment in the amount to be determined at trial, but no less than $200,000 per month from March 2019;

(c)   Permanently enjoining Defendants Yu and Chen and all other individuals acting in concert therewith from acting on behalf of SH 168, LLC, interfering in the business operations of SH 168, LLC, collecting any rents from and tenants and/or occupants at the Property, withdrawing, transferring, selling, pledging, utilizing, or affecting the Property or any of the assets of SH 168, LLC;

(d)   Awarding Plaintiffs punitive damages in the amount to be determined at trial but no less than five million dollars ($5,000,000);

(e)   Awarding Plaintiff costs including reasonable attorney's fees in commencing this action; and

- 15 -

INDEX NO. 704088/2020

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 03/09/2020

(f)    Awarding Plaintiffs such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: New York, New York
       February 29, 2020

LAW OFFICES OF BING LI, LLC
Attorneys for Plaintiffs
*Zhi Rong Lin and SH 168, LLC*

By:*/s/ Bing Li*
    Bing Li
    1430 Broadway, Suite 1802
    New York, NY 10018-3354
    (212) 967-7690

- 16 -

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM

INDEX NO. 704088/2020

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 03/09/2020

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF QUEENS**

-------------------------------------------------------------------x

ZHI RONG LIN and SH 168, LLC,                    Index No.: _____

　　　　　　　　　　Plaintiffs,

　　　-against-

JINWU YU and AIGUANG CHEN,

　　　　　　　　　　Defendants.

-------------------------------------------------------------------x

## VERIFICATION

STATE OF NEW YORK　　　)
COUNTY OF _Queens_　　　) ss.:

　　　ZHI RONG LIN, himself and on behalf of SH 168, LLC, being duly sworn, deposes and says:

　　　I have read the foregoing Complaint and know the contents thereof, which have been explained to me in the language I fully understand, and hereby verify that same is true to my personal knowledge except as to the matters stated to be alleged upon information and belief, and as to those matters, I believe it to be true.

　　　　　　　　　　　　　　　　　　　_Zhi Rong Lin_
　　　　　　　　　　　　　　　　　　　ZHI RONG LIN

Sworn to before me this
_29th_ day of February, 2020

_____
Notary Public

BING LI
Notary Public, State of New York
No. 02LI6020984
Qualified in Queens County
Commission Expires Mar. 8, 20__ 6/11/2023

- 17 -

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM
NYSCEF DOC. NO. 1

INDEX NO. 704088/2020
RECEIVED NYSCEF: 03/09/2020

## PART 130-1 CERTIFICATION

The undersigned, an attorney admitted to practice before the courts of New York states, certifies that, pursuant to 22 NYCRR §130-1.1a(b), to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the papers herein or the contentions therein are not frivolous as defined in 22 NYCRR §130-1.1(c).

Dated: February 29, 2020

/s/ Bing Li
Bing Li

- 18 -

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM
NYSCEF DOC. NO. 1

INDEX NO. 704088/2020
RECEIVED NYSCEF: 03/09/2020

## Exhibit 1

**Membership Purchase Agreement of SH 168, LLC** and the Agreement attached thereto as Exhibit A purportedly dated October 24, 2018 with Plaintiff Lin's signatures forged by Defendants Yu and Chen

FILED: QUEENS COUNTY CLERK 03/09/2020 01:09 PM

# MEMBERSHIP PURCHASE AGREEMENT
## Of
## SH 168, LLC

THIS AGREEMENT made and effective as of ___10 / 24___, 2018, by and between Zhi Rong Lin, residing at 2784 E 16th Street, Brooklyn, NY 11235 (the "Seller") and Aiguang Chen, residing at 147-11 3rd Avenue, Whitestone, NY 11357 and Jinwu Yu, residing at 142-28 38 Avenue, #7A, Flushing, NY 11354 (hereinafter collectively referred to as the "Buyer").

## WITNESSETH

**WHEREAS**, the Seller owns 100% of the membership interests in **SH 168, LLC**, a New York limited liability company (the "LLC"); and

**WHEREAS**, the Seller desires to sell to the Buyer all of the Seller's interest in the LLC, i.e., 100% membership interest of the LLC owned by the Seller, and the Buyer desires to purchase a 100% membership interest in the LLC (collectively "Purchased LLC Interest"), subject to the provisions of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises herein contained and for other good and valuable consideration, receipt of which is acknowledged, and subject to the terms, conditions, and provisions hereof, the parties agree as follows:

1. Sale of LLC Interest. Subject to the provisions of this Agreement, Seller hereby agrees to sell to Buyer and the Buyer agrees to purchase from the Seller the Purchased LLC Interest with 26% to Buyer Aiguang Chen and 74% to Buyer Jinwu Yu.

2. Purchase Price. The purchase price for the Purchased LLC Interest purchased hereunder shall be **Ten ($10.00)** (the "Purchase Price").

Simultaneously with the execution of this Agreement (a) Seller shall transfer the Purchased LLC Interest duly endorsed, subject to all exiting liens and mortgages against the LLC, in the form of Seller's assignment attached hereto as **Exhibit A** and made a part hereof ("Assignment") and (b) the Buyer shall pay to Seller the Purchase Price.

3. Representation of Value. Neither the Seller nor the Buyer make any representation or warranty as to the value of the membership interest purchased hereunder or the value of the assets and properties of the LLC. No party is relying upon any other party with regard to such matters, other than the warranties of title to the Purchased LLC Interest.

4. Representations and Warranties of Seller. The Seller represent, warrant, and agree for the membership interest they are selling hereunder as follows:

(a) Title. Seller is the sole owner and holder of the issued and outstanding membership interests in the LLC to be purchased by Buyer hereunder. Such membership

*Sh 168 llc. agreement*

INDEX NO. 704088/2020
RECEIVED NYSCEF: 03/09/2020

**FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM**

NYSCEF DOC. NO. 15

interests are owned by Seller free and clear of any liens, charges, encumbrances, restricting agreements, and assessments, except for existing liens and mortgages against the LLC, including but not limited to, the first mortgage loan encumbering the premises under which the LLC is the obligor (the "Premises"). Upon the transfer and delivery of the Purchased LLC Interest to the Buyer hereunder, the Buyer will receive good and absolute title thereto, subject to the provisions of this Agreement and applicable federal and state securities laws.

(b) Authority to Perform this Agreement. Seller has the full power and authority to execute, deliver and perform this Agreement. The party executing this Agreement on behalf of Seller has the power and authority to bind the Seller to the obligations under this Agreement.

(c) Absence of Other Warranties. No other representations or warranties, expressed or implied, as to the condition of the LLC, its assets, properties, businesses, or prospects, financially, operationally or otherwise, have been made or are made by the Seller in connection with the transactions contemplated by this Agreement.

5. Representations and Warranties of the Buyer. The Buyer makes the following representations and warranties for the benefit of the Seller as of the date hereof:

(a) Authority to Perform this Agreement. The Buyer has full power and authority to execute, deliver, and perform this Agreement.

(b) Investment Representations and Warranties. The Buyer understands that the offer and sale of the membership interests of the LLC is not registered with the Securities and Exchange Commission or the securities authority of any state or jurisdiction; but the offer and sale is made instead in reliance upon an exemption from registration commonly referred to as the "Private Placement Exemption". The Buyer understands that there is no public market for the sale or other transfer of the LLC's membership interests, that none is expected to develop, and that the sale or other transfer of the LLC's membership interests is restricted by federal and state securities laws and by the terms of the offer and sale. The Buyer understands that he may be required to bear the economic risk of the investment indefinitely. The Buyer is acquiring the membership interest for investment for his own account and not for the purpose of resale, division, fractionalization, or distribution. The Buyer does not have a present or foreseeable need for the cash invested in the membership interests and, if the Buyer has borrowed all or a portion of the cash so invested, he believes that he will have the ability to repay such borrowing without selling the membership interests.

6. Mutual Representations and Warranties. Each of the Buyer and Seller represents and warrants that:

(a) he/she/it has had the opportunity to obtain the advice of his/her/its own independent lawyer and accountant before signing this Agreement and any document or instrument related hereto;

*Sh 168 llc. agreement*

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM

NYSCEF DOC. NO. 15

INDEX NO. 704086/2020

RECEIVED NYSCEF: 03/09/2020

(b) the terms and conditions of this Agreement are fair, adequate, reasonable and just; and

(c) neither the execution nor the delivery of this Agreement nor the consummation of the transactions contemplated hereby will conflict with or result in any violation of or constitute a default under any term of the Articles of Organization of the LLC, the Operating Agreement of the LLC or any agreement, contract, loan, mortgage, indenture, license, permit, lease, judgment, decree, order, law, regulation or instrument by which the LLC is bound, except as set forth in this Agreement.

(d) there are no obligations or liabilities, contingent or otherwise, for brokerage or finders' fees or agents' commissions or other similar payment which has or will arise in connection with this Agreement.

(e) any restrictive covenants limiting or restricting competition by and between Buyer and Seller which may be contained in the Operating Agreement of the LLC shall be released.

(f) any income or losses of the LLC which shall accrue on or after the date hereof and which would have been attributable to Seller but for the terms of this Agreement, shall be assigned to Buyer. All related tax obligations, liabilities and benefits arising from such income or losses shall be transferred to and/or assigned to Buyer. To the extent that any income is allocated to Seller after the date hereof but not distributed to Seller, an amount equal to the income tax owed on the allocated amount shall be paid to Seller. Seller shall receive an accounting of all income attributed to it under the preceding sentence.

7. **Authority.** Each party represents and warrants that he/she/it has the full right, power and capacity to execute and deliver this Agreement and to consummate the transactions contemplated hereby. All authorizations and approvals that are necessary in connection with the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby by the parties will have been obtained prior to the Closing. This Agreement is a valid and binding obligation of each party, enforceable in accordance with its terms.

8. **Other Agreements.** The parties agree and acknowledge that there are no agreements restricting the Seller' right to freely transfer his/her/its membership interests in the LLC. Accordingly, Seller may transfer his/her/its membership interests in the LLC to Buyer pursuant to this Agreement. If there are such agreement restricting the Seller's right to freely transfer his/her/its membership interests in the LLC, this Agreement is subject to and conditioned upon the consent of the LLC and all members of the LLC.

9. **Indemnity:** Seller shall indemnify and hold harmless Buyer of and from any third party claims, liability, costs and expenses including, without limitation, reasonable attorneys fees and disbursements incurred by Buyer relating solely to the Purchased LLC Interest arising prior

*Sh 168 llc. agreement*

INDEX NO. 704088/2020
FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM
NYSCEF DOC. NO. 15
RECEIVED NYSCEF: 03/09/2020

to the date hereof in connection with the LLC or the Premises or the ownership and management of the Premises or any obligations arising under the Operating Agreement. Buyer shall have the right to offset any sums owing to Buyer under the foregoing indemnity against any income or other sums due and owing to Seller from Buyer or any entity owned and/or controlled by Buyer. Buyer shall indemnify and hold harmless Seller of and from any third party claims, liability, costs and expenses including, without limitation, reasonable attorneys fees and disbursements incurred by Seller relating to the Purchased LLC Interest arising from and after the date hereof in connection with the LLC or the Premises or the ownership and management of the Premises or any obligations arising under the Operating Agreement, including but not limited to claims under Section 13 of the Lien Law, except for any such claims, liabilities costs and expenses arising from any breach by Seller of its warranty and representation in Paragraph 4 of this Agreement. The provisions of this Paragraph shall survive the closing of the transaction contemplated by this Agreement.

10.  Waivers and Notices.  Any failure by either party to this Agreement to comply with any of its obligations, agreements or covenants hereunder may be waived only in writing by the Seller, in the case of a default by the Buyer or Buyer, and by the Buyer, in the case of a default by the Seller.

11.  Amendment and Construction.  This Agreement cannot be amended orally but only by a writing executed by the Seller and the Buyer.  This Agreement is made and shall be construed under the laws of the State of New York.  The paragraph headings used in this Agreement are for convenient reference only and shall not be resorted to for purposes of interpreting any provision of this Agreement.  This Agreement shall not be presumptively construed against any party.

12.  Benefit.  This Agreement is binding upon and shall inure to the benefit of the parties hereto and their respective heirs, successors and assigns.

13.  Survival.   The representations, warranties, promises, covenants, agreements, indemnities, and undertakings of the parties contained in this Agreement, and certificates and documents delivered hereunder shall survive the Closing.

14.  Exhibits; Entire Agreement.  All Exhibits to this Agreement are incorporated herein and are made a part of this Agreement.  Any reference to "this Agreement" contained in this Agreement shall mean this Agreement and all Exhibits which are attached hereto.   This Agreement and the Exhibits which are attached hereto contain the entire Agreement of the parties and supersede and replace all prior Agreements or understandings between the parties, whether written or oral, relating to the subject matter of this Agreement.

15.  Counterpart.  This Agreement may be executed in counterparts, each of which when executed and delivered as prescribed shall constitute an original, but all of which taken together shall constitute one agreement.  This Agreement may be legally delivered when an executed counterpart has been transmitted via telecopier or email by one party to the other or the other's legal counsel.

*Sh 168 llc. agreement*

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM

NYSCEF DOC. NO. 15

INDEX NO. 704088/2020

RECEIVED NYSCEF: 03/09/2020

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals as of the day and year first above written.

SELLER :

_____

Zhi Rong Lin

BUYER:

_____

Aiguang Chen

_____

Jinwu Yu

FILED: QUEENS COUNTY CLERK 03/03/2020 01:03 AM
NYSCEF DOC. NO. 15

INDEX NO. 704733/2020
RECEIVED NYSCEF: 03/03/2020

## EXHIBIT A
## ASSIGNMENT AND TRANSFER OF MEMBERSHIP INTEREST

This ASSIGNMENT AND TRANSFER OF MEMBERSHIP INTEREST is entered into effective as of the 2·4 day of October, 2018 by and between Zhi Rong Lin, an individual having an address at 2784 E 16th Street, Brooklyn, NY 11235 (the "Assignor"), Aiguang Chen residing at 147-11 3rd Avenue, Whitestone, NY 11357 (hereinafter referred collectively as the "Assignee").

### WHEREAS

A. Assignor currently owns 26% of the issued and outstanding membership interests in SH 168, **LLC , a NEW YORK** limited liability company (the "LLC"); and

B. Assignor desires to assign to Assignee all his right, title and interest in and to a 26% membership interest in the LLC (collectively "Purchased LLC Interest") pursuant to the terms of that certain LLC Purchase Agreement, dated the date hereof, between Assignor and Assignee (the "Purchase Agreement").

NOW, THEREFORE, in consideration of the mutual benefits to be derived by the parties herein, it is agreed as follows:

1. Assignor hereby transfers, conveys and assigns the Purchased LLC Interest to Assignee in consideration of the sum of TEN AND 00/100 DOLLARS ($10.00) (the "Purchase Price") being paid simultaneously with this execution of this Assignment, subject to adjustment as reconciliation as set forth in the Purchase Agreement.

2. Assignee hereby accepts such assignment and agrees to be bound by all of the provisions of the Operating Agreement of the LLC.

ZRL
JwY

*Sh 168 llc. agreement*

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM

NYSCEF DOC. NO. 15

INDEX NO. 704088/2020

RECEIVED NYSCEF: 03/09/2020

3. This Assignment, together with the Purchase Agreement sets forth the entire understanding and agreement between the parties with respect to the subject matter hereof, and shall be governed in accordance with the laws of the State of New York, without giving effect to the principles of conflicts of laws.

4. This Assignment may be executed in counterparts, each of which when executed and delivered as prescribed shall constitute an original, but all of which taken together shall constitute one agreement.  This Assignment may be legally delivered when an executed counterpart has been transmitted via telecopier or email by one party to the other or the other's legal counsel.

ASSIGNOR:

ASSIGNEE:

Zhi Rong Lin

Aiguang Chen

Sh 168 llc. agreement

FILED: QUEENS COUNTY CLERK 03/09/2020 01:09 PM
NYSCEF DOC. NO. 15

INDEX NO. 704086/2020
RECEIVED NYSCEF: 03/09/2020

STOCK (MEMBERSHIP INTEREST) POWER
OF
SH 168, LLC

    For value received, I, Zhi Rong Lin, hereby sell, assign and transfer unto Aiguang Chen 26% Membership Interests represented by a Membership Certificate No. ____, and do hereby irrevocably constitute and appoint, Aiguang Chen as attorney to transfer the said membership units on the books of the within named limited liability company, SH 168, LLC with full power of substitution in the premises.

Dated: _10/24/2018_

                               Zhi Rong Lin

Witness:

*Sh 168 llc. agreement*

INDEX NO. 704088/2029
FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM
NYSCEF DOC. NO. 15
RECEIVED NYSCEF: 03/09/2029

## ASSIGNMENT AND TRANSFER OF MEMBERSHIP INTEREST

This ASSIGNMENT AND TRANSFER OF MEMBERSHIP INTEREST is entered into effective as of the 2 day of October, 2018 by and between Zhi Rong Lin, an individual having an address at 2784 E 16th Street, Brooklyn, NY 11235 (the "Assignor"), Jinwu Yu, residing at 142-28 38 Avenue, #7A, Flushing, NY 11354 (hereinafter referred collectively as the "Assignee").

### WHEREAS

A.   Assignor currently owns 10% of the issued and outstanding membership interests in SH 168, LLC , a NEW YORK limited liability company (the "LLC"); and

B.   Assignor desires to assign to Assignee all her right, title and interest in and to a 74% membership interest in the LLC (collectively "Purchased LLC Interest") pursuant to the terms of that certain LLC Purchase Agreement, dated the date hereof, between Assignor and Assignee (the "Purchase Agreement").

NOW, THEREFORE, in consideration of the mutual benefits to be derived by the parties herein, it is agreed as follows:

1. Assignor hereby transfers, conveys and assigns the Purchased LLC Interest to Assignee in consideration of the sum of TEN AND 00/100 DOLLARS ($10.00) (the "Purchase Price") being paid simultaneously with this execution of this Assignment, subject to adjustment as reconciliation as set forth in the Purchase Agreement.

2. Assignee hereby accepts such assignment and agrees to be bound by all of the provisions of the Operating Agreement of the LLC.

*Sh 168 llc. agreement*

INDEX NO. 704088/2020

FILED: QUEENS COUNTY CLERK 03/09/2020 04:09 PM

NYSCEF DOC. NO. 15

RECEIVED NYSCEF: 03/09/2020

3. This Assignment, together with the Purchase Agreement sets forth the entire understanding and agreement between the parties with respect to the subject matter hereof, and shall be governed in accordance with the laws of the State of New York, without giving effect to the principles of conflicts of laws.

4. This Assignment may be executed in counterparts, each of which when executed and delivered as prescribed shall constitute an original, but all of which taken together shall constitute one agreement. This Assignment may be legally delivered when an executed counterpart has been transmitted via telecopier or email by one party to the other or the other's legal counsel.

ASSIGNOR:                                ASSIGNEE:

_Zhi Rong Lin_                           _Jinwu Wu_
Zhi Rong Lin                             Jinwu Wu

2PL

JWY

_Sh 168 lic. agreement_

FILED: QUEENS COUNTY CLERK 03/09/2020 01:09 PM

NYSCEF DOC. NO. 15

INDEX NO. 704088/2020

RECEIVED NYSCEF: 03/09/2020

### STOCK (MEMBERSHIP INTEREST) POWER
### OF
### SH 168, LLC

For value received, I, Zhi Rong Lin, hereby sell, assign and transfer unto Jinwu Yu 74% Membership interests and hereby appoint Jinwu Yu as attorney to transfer the said membership units on the books of the within named limited liability company, SH 168, LLC with full power of substitution in the premises.

Dated: _10/24/2018_

_Zhi Rong Lin_
Zhi Rong Lin

Witness:

*Sh 168 llc. agreement*

# EXHIBIT 9

FILED: QUEENS COUNTY CLERK 08/18/2020 09:35 PM
NYSCEF DOC. NO. 507

INDEX NO. 704088/2020
RECEIVED NYSCEF: 08/18/2020

SUPREME COURT OF STATE OF NEW YORK
COUNTY OF QUEENS
----------------------------------------------------------X   Index No.: 704088/2020
ZHI RONG LIN and SH 168, LLC,

        Plaintiffs

   -against-

                               **AFFIDAVIT IN SUPPORT OF
                               DEFENDANTS' MOTION TO
                               DISMISS AND IN OPPOSITION
                               TO PLAINTIFFS' CROSS
                               MOTION**

JIN WU YU and AIGUANG CHEN,

              Defendants
----------------------------------------------------------X

STATE OF NEW YORK    )
COUNTY OF QUEENS    )        ss:

    Xi Liang Liu, being duly sworn, deposes and says:

   1.    I am the Managing Agent of SH 168 LLC (the "LLC"), a named Plaintiff in this action, I am fully familiar with the facts, circumstances and pleadings herein.

   2.    I submit this Affidavit in Support of Defendants' instant to dismiss and to cancel the Notice of Pendency filed by the Plaintiff LIN in this matter and in opposition to Plaintiff's Cross Motion.

   3.    I am the husband of Hong Qin Jiang, the defendant in Action 1 and father of Defendant Jinwu Yu, plaintiff in Action 1 and a defendant in this action.

FILED: QUEENS COUNTY CLERK 08/18/2020 09:35 PM

INDEX NO. 704088/2020

NYSCEF DOC. NO. 587

RECEIVED NYSCEF: 08/18/2020

4.    First of all, as demonstrated in Defendants' moving papers, Plaintiff LIN has no authority, power, standing or capacity or any rights to bring and/or maintain this action on behalf of SH 168 LLC. He never invested any money into SH 168 LLC, nor did he ever manage or operate the LLC. He was not an officer either, he was merely an employee terminated as of October 15, 2018 as admitted by him.

4.    Secondly, Plaintiff LIN himself admitted that he has no interest whatsoever in SH 168 LLC or its property, he simply helped to fie the Articles of Incorporation with the Secretary of State for SH 168 LLC. He subsequently signed the Membership Purchase Agreement and transferred membership interests of SH 168 LLC to my son Jinwu and Mr. Aiguang Chen. He did not invest any money, never managed SH 168 LLC, he was not responsible for the operation or liability of SH 168 LLC, he has no authority to act on behalf of the LLC.

5.    The sole reason for LIN to file this action is because my wife's adopted daughter Jing Huang and her husband hired him and their attorney Bing Lin to represent my wife, without her consent and authorization, and to represent LIN to commence this action with the sole purpose to hurt me and my son Jinwu who was born from my prior marriage.

6.    Exhibit A to my Affidavit is an affidavit from my wife Hong Qin Jiang attesting to my statement. In her such Affidavit, she clearly stated that she did not authorize her daughter or her husband to hire Mr. Bing Li, did not want her friend Zhi Rong Lin to commence this new action, does not and did not want to continue to litigate Action 1 or this matter because SH 168 LLC has not been able to pay any mortgage payments, is facing foreclosure, that continuing to litigate will lead to foreclosure.

7.    She further stated that Mr. Zhi Rong Lin already transfer the membership interests of SH 168 LLC to my son Jinwu and the other Defendant Aiguang Chen herein, that Mr. Lin no

FILED: QUEENS COUNTY CLERK 08/18/2020 09:45 PM
NYSCEF DOC. NO. 507
RECEIVED NYSCEF: 08/18/2020

longer has any relationship with SH 168 LLC and that he has no power to take any legal action on behalf of SH 168 LLC.

8. My wife voluntarily wanted to submit her affidavit to be annexed to my affidavit because she does not want my son and Mr. Chen to lose the Property to the bank.

9. The Property consists of 23 residential apartments, 4 commercial community facility units and 47 parking spaces. It requires a lot of expertise in managing real properties and substantial amount of funds to maintain the Property. I have been managing the Property since early 2019 on behalf of SH 168 LLC under the supervision of Jinwu and Mr. Chen. I know how to make repairs and how to communicate and work with tenants and collect rent from them.

10. It is a huge responsibility and obligation to maintain the Property, the monthly mortgage payment is over $190,000.00 while the income is only about $50,000.00 if all tenants pay rent. Due the pandemic, the income is far short to pay its expenses, all commercial units are not paying rent, some residential tenants refused to pay rent as well, Jinwu and Mr. Chen had to pay from their own pocket to maintain and carry the Property. SH 168 LLC had to enter into several forbearance agreements with its lenders.

11. As admitted in Plaintiff LIN's several Affidavits and the Resolution, he did not "invest in SH 168, LLC or manage SH 168, LLC", that he is "not a member of manager of SH 168, LLC and that" he is "not responsible for the business operation and liability of SH 168 LLC", he is a person fit for managing or operating SH 168 LLC and the Property, he is not willing, nor able or ready to manage or operate SH 168 LLC and the Property, he is not entitled to any of the injunctive relief sought herein.

12. The *status quo* is that me, Jinwu and Mr. Chen have been managing the Property with our own out of pocket funds. Had Plaintiff LIN been put in charge of the management, it is

highly unlikely that he will put up any funds from his own pocket to maintain and manage the Property, he would probably leave the Property in despair, let the lender foreclose the Property.

13.    Again, Mr. LIN has no interests whatsoever in SH 168 LLC or the Property, he does not care about SH 168 LLC or the Property, he is filing this action solely for the hidden agenda of my wife's adopted daughter Jing Huang and her husband.

13.    The Plaintiff's filing of a Notice of Pendency is also ill-intended.

14.    The Property's title has been detrimentally clouded by Plaintiffs' Notice of Pendency. The Property's current loan has matured, SH 168 LLC is in the process of refinancing and securing a loan, such loan was put on halt because of this Notice of Pendency.

15.    The Notice of Pendency has subjected the Defendants to substantial prejudice and damage. Our lender has threatened to default us under the current loan. The current lender was in the process of extending an extension of the current loan but now has refused to extend the loan, new prospective lenders are hesitant because of such Notices of Pendency. Defendants' credit worth are jeopardized, their likelihood of refinancing were diminished by such notice of pendency.

16.    Without a refinance, SH 168 are facing default interests as high as 24% and will face foreclosures as it has not been able to pay its monthly mortgage payments.

17.    As of the date of this Affidavit, SH 168 LLC has already been in arrears under its mortgages for over $1,000,000.00 dollars and will face foreclosure if the Notice of Pendency cannot be cancelled promptly.

18.    Plaintiff LIN and his attorney should be held responsible for the damage caused to SH 168 LLC by his filing of a frivolous Notice of Pendency.

FILED: QUEENS COUNTY CLERK 08/18/2020 09:45 PM    INDEX NO. 704088/2020

NYSCEF DOC. NO. 587    RECEIVED NYSCEF: 08/18/2020

WHEREFORE, it is respectfully requested that Defendants' instant motion be granted in its entirety, Plaintiffs' Cross Motion be dismissed in its entirety, the Complaint be dismissed in its entirety, the Notice of Pendency be cancelled forthwith, Defendants be awarded legal fees and costs and such other and further relief as the Court deems just and proper be granted.

Dated: Queens, New York
      August 17 , 2020

                                Xi Liang Liu

    Sworn to before me on this
17th Day of August, 2020

_____
Notary Public

               XIANFENG ZOU
         Notary Public, State of New York
           No. 02ZO6003042
         Qualified in Queens County
     Commission Expires February 23, 2022

FILED: QUEENS COUNTY CLERK 08/18/2020 09:45 PM

NYSCEF DOC. NO. 107

INDEX NO. 704088/2020

RECEIVED NYSCEF: 08/18/2020

# Exhibit A

尊敬的法官大人：

我叫 Jiang Hong Qing，我的丈夫的名字叫 Liu Xi Liang，关于这个 S H 168 LLC 的两个案件（案件号码 704356/19 和 704088/20），我的女儿 Jing Huang 和她的先生在我不知道的情形下找了 Bing Li 律师来代表我，还有我的朋友 Zhi Rong Lin，并开了这个新案子 704088/2020，都没经过我的授权也没经过我的同意。

Zhi Rong Lin 已经将 SH 168 LLC 的股份转给了我丈夫的儿子 Jinwu Yu 和另外一位 Aiguang Chen，他跟 SH 168 LLC 已经没有任何关系，他没有权利代表 S H 168 LLC 采取任何法律行动。

SH 168 LLC 已经没有任何能力支付贷款，现在面临被拍卖，我不想要 BingLi 律师继续代表我，也不想打这两个官司，再打下去只有被银行拍卖的下场。

我能阅读中文，我明白这里面写的所有意思，这是我的意愿，我自愿签署这份文件。

2020 年 8 月 8 日

姜鸿钦，  Jiang Hong Qing

Sworn to before me on this 8 Day of August, 2020

Notary Public

WING TAK CHEUNG
NOTARY PUBLIC, State of New York
NO. 01CH6145924
Qualified in Queens County
Commission Expires July 3rd, 2022

Translation


Honorable Judge:

My name is Jiang Hong Qin, my husband's name is Liu Xi Liang. Regarding the two cases of SH 168 LLC (Case No.: 704356/19 and 704088/20), my daughter Jing Huang and her husband hired lawyer Bing Li to represent me without my knowledge, also hired my friend Zhi Rong Li and commenced this new case 704088/20, all done without my authorization or consent.

Zhi Rong Li already transferred the membership interests of SH 168 LLC to my husband's son Jinwu Yu and another, Aiguang Chen. He has nothing to do with SH 168 LLC anymore, he has no power to represent SH 168 LLC to take any legal action.

SH 168 LLC already has not ability to pay its mortgages, is now facing foreclosure, I do not want lawyer Bing Li to represent me, I do not want to litigate this two cases. Continue to litigate will end up foreclosure by the bank.

I can read Chinese, I understand the contents of this paper, this is my idea and wishes, I voluntarily signed this documents.

August 8, 2020.

                                                        (signature)

                                                        _____
                                                        Jiang Hong Qin


Notary Public
(signature)

INDEX NO. 704886/2020

RECEIVED NYSCEF: 08/18/2020

**FILED: QUEENS COUNTY CLERK 08/18/2020 09:15 PM**

NYSCEF DOC. NO. 587

## TRANSLATION CERTIFICATION

I, May Hong,  being duly sworn, deposes and says that: I reside in Nassau County of New York State, I hereby certify that I am fluent with both English and Chinese and that the attached translations are true and accurate translations into English of documents written in Chinese to the best of my knowledge.

May Hong

Sworn to before me on this

17th   day of August, 2020

Notary Public

XIANFENG ZOU
Notary Public, State of New York
No. 02ZO6063042
Qualified in Queens County
Commission Expires February 23, 20 2 2